**BURRIS & MACOMBER, PLLC**
2478 East River Road
Tucson, Arizona 85718
Telephone:    (520) 775-2000
Facsimile:    (520) 775-2001

**D. Rob Burris, Esq.**
State Bar No. 024961
Email: rob@burrismacomber.com

**Jeremy T. Shorbe**
State Bar No. 026920
Email: jeremy@burrismacomber.com
*Attorneys for Defendant Jeffrey Lindsay*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Stangel, | Case No. CV-25-471-JCH |
| Plaintiff, | |
| v. | **DEFENDANT JEFFERY LINDSAY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| Jeffery Lindsay, | |
| Defendant. | Hon. John C. Hinderaker |

Defendant Jeffery Lindsay ("Defendant" or "Mr. Lindsay") hereby submits his Motion to Dismiss (the "MTD") the First Amended Complaint ("1AC") filed by Plaintiff Cameron Stangel ("Plaintiff") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1-3) & (6), and the following memorandum. Mr. Lindsay respectfully requests the Court enter an order dismissing the 1AC, and the payment of his fees and costs incurred herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

This is a Texas case involving a Texas contract (the "Texas Contract"), signed by two Texas Parties, wholly negotiated in Texas, for travel coordination services provided in Texas to the Texas Defendant, paid for from his Texas bank accounts to fund the Parties'

1    international travels accompanied by Texas witnesses. The Plaintiff's 1AC admits that

2    Plaintiff *still* longs to visit and work in Texas – likely from her and her partner, Beau

3    Reichert's ("Mr. Reichert"), $1.34 million Austin, Texas property (the "Sekrit Theater")

4    from which Plaintiff currently runs a wedding venue and photography studio still taking

5    bookings to this day. None of the alleged "challenged conduct" took place in Arizona, nor

6    did any alleged material events underlying Plaintiff's claims occur in Arizona: all that

7    implicates Arizona is that Plaintiff selected and asked Mr. Lindsay to buy the Property at 6

8    Naco Road, Bisbee, AZ (the "Property") in exchange for her performance of travel

9    coordinator services arising from the Texas Contract.

10       Plaintiff alleges that, while on these ***international trips*** (never in Arizona), Mr.

11   Lindsay breached the implied duty of the Texas Contract via a slew of alleged torts involving

12   alleged sexual harassment Plaintiff contorts into federal sex trafficking, IIED, and Unjust

13   Enrichment.[1] The problem is: under these facts, this Court cannot exercise jurisdiction over

14   Mr. Lindsay and must dismiss the matter for lack of jurisdiction, for improper venue, and

15   for failure to state claims upon which relief may be granted where the 1AC improperly relies

16   on Arizona law instead of Texas law. The allegations are false and especially salacious; but

17   the Court must not let Plaintiff confuse the issues here: this case must be dismissed for purely

18   legal reasons—lack of jurisdiction, venue, and failure to state a claim.  Mr. Lindsay also

19   seeks to recover attorney's fees and costs as permitted by law.

20   **II.    FACTUAL BACKGROUND.**

21       Mr. Lindsay categorically denies the truth of Plaintiff's allegations in the 1AC but

22   relies on them only to the extent required by law solely for the purposes of this MTD and

23   hereby incorporates the same by reference for this purpose. Both Parties worked and lived

24

---

25   [1] Although, Plaintiff admits that "[Mr.] Lindsay repeatedly told Stangel that she would ***not***

26   have to repay him through 'sex' … because he was a 'gentleman'." *Document #6*, *1AC*, *at ¶¶ 64-65* (emphasis added).

1  in Texas prior to execution of the Texas Contract. *Document #6*, 1AC, ¶¶ 6-22; *See Mr.*
2  *Lindsay's Copy of the April 12, 2024, Texas Contract attached as* **EXHIBIT A** (Plaintiff lists
3  her residence as the Sekrit Theater address). The only Arizona events alleged in the 1AC
4  are the signing of the Texas Contract/Property closing and Mr. Reichert's unrelated
5  violation of the lease thereof. *Id. at ¶¶ 24-26, 124*.  Plaintiff and Mr. Reichert desire to, and
6  still do, work and live in Texas from their $1.34 million wedding venue and photography
7  studio—the Sekrit Theater. *Id. at ¶ 126* ("Stangel and Reichert want to continue renting
8  booth space at the twice-yearly Round Top, [Texas] Antique shows[.]"); *See also Sekrit*
9  *Theater Website Printout, attached as* **EXHIBIT B**; *see also Travis County, Texas Sekrit*
10 *Theater Appraisal District Summary Report attached as* **EXHIBIT C** (showing Mr. Reichert
11 currently owns the Sekrit Theater as an exempt "Homestead," requiring him to aver to "own
12 and **reside** on the property."); *see also Plaintiff's 36.5 acre "Canyon Lake" Property*
13 *information, attached as* **EXHIBIT D** (listing Mr. Reichert as owner, but Plaintiff held herself
14 out to Defendant as selling the $1.89 million Canyon Lake herself).

15      The parties negotiated the Texas Contract in Texas. *Document #6*, *1AC*, *¶¶ 19-22*;
16 *see also* **EXHIBIT A** (listing Plaintiff's address at the Sekrit Theater). The Texas Contract
17 was directed toward Mr. Lindsay in Texas or for services provided to Mr. Lindsay in every
18 corner of the world **but** Arizona. *Id. at ¶¶ 19-22, ¶ 33* (travel expenses elsewhere), *¶ 38*
19 (accommodations while traveling outside of Arizona), *¶ 41* (submitting reports to Mr.
20 Lindsay in Texas), *¶¶ 43-115* (critical alleged acts all occurred outside of Arizona); *See*
21 *also Time Sheets Plaintiff gave to Mr. Lindsay purportedly reporting work completed under*
22 *the Texas Contract attached as* **EXHIBIT E** (showing 22/41 days of Plaintiff's "work" being
23 travel outside of Arizona and the other 19 days coordinating travel outside of Arizona).

24      Both parties to the Texas Contract signed in their capacity as Texas residents listing
25 properties the Parties still own as their residences. *Document #6*, *1AC*, *¶ 26*; *see also Exhibit*
26 *A to the 1AC* ("This agreement … is entered into … between Jeff Lindsay, located at [Texas

1  address] … and Cameron Stangel, located at 1145 Perry Road, Austin, TX [the Sekrit

2  Theater].”). Plaintiff directed all of her communications to Mr. Lindsay in Texas. *Document

3  #6, 1AC, ¶¶ 37-41*. All expenses were paid from Texas. *Id. at ¶¶ 44, 46, 56-57*.

4      None of the 1AC’s allegations include any claims sounding in real property but,

5  rather, in contract or tort. *See generally, Id*. All potential witnesses are Texas residents or

6  are located anywhere **but** Arizona. *See Id. at ¶ 2* (Mr. Lindsay, Texas), *¶ 41* (Crystal Slade,

7  Texas), *¶ 44* (Russ & Peggy Salcido, Texas), *¶¶ 6-22* (Texas real estate and antique

8  witnesses), *and ¶¶ 77 & 106* (the Four Seasons staff).

9  **III.    LEGAL STANDARD**.

10     As further outlined below, this Court lacks jurisdiction over Mr. Lindsay and the

11  controversy at issue, requiring dismissal. To survive a motion to dismiss, a plaintiff's

12  complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that

13  is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,

14  1964-1965. The allegations must be more than mere labels, formulaic recitations of

15  elements, and the court need not accept legal conclusions disguised as facts. *Id*.

16     “Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

17  the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.”

18  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where based

19  on written materials, the Plaintiff must make a prima facie showing of jurisdictional facts.

20  *Id*. “Although the plaintiff cannot ‘simply rest on the bare allegations of its complaint,’

21  *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th

22  Cir.1977), uncontroverted allegations in the complaint must be taken as true.” *Id*.

23          a. *The Court Should Dismiss the Present Action for Lack of Jurisdiction*.

24     For a court to exercise personal jurisdiction over a nonresident defendant, that

25  defendant must have at least “minimum contacts” with the relevant forum such that the

26  exercise of jurisdiction “does not offend traditional notions of fair play and substantial

1    justice." *Schwarzenegger*, 374 F.3d 797, 801 (internal citations omitted). "Federal courts

2    ordinarily follow state law in determining the bounds of their jurisdiction over persons."

3    *See Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1141 (9ᵗʰ Cir. 2017) (*quoting Daimler*

4    *AG v. Bauman*, 571 U.S.117, 125, 134 S.Ct. 746, 753 (2014)). Arizona law permits the

5    exercise of personal jurisdiction to the extent permitted under the United States

6    Constitution. *See Ariz. R. Civ. P. 4.2(a)*. "Therefore, the determination whether the District

7    Court had personal jurisdiction over Defendants is subject to the terms of the Due Process

8    Clause of the Fourteenth Amendment." *See Morrill*, 873 F.3d 1136, 1141.

9
       (1) **Defendant in this Case Lacks the Continuous & Systematic Contacts**
           **Required for this Court to Exercise General Jurisdiction over**
10         **Plaintiff's Tort and Contract Claims**.

11         "For an individual, the paradigm forum for the exercise of general jurisdiction is the

12   individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

13   924, 131 S.Ct. 2846, 2853 (U.S. 2011). For general jurisdiction to exist over a nonresident

14   defendant, the defendant must engage in "continuous and systematic general business

15   contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct.

16   1868 (U.S. 1984). "General personal jurisdiction, which enables a court to hear cases

17   unrelated to the defendant's forum activities, exists if the defendant has 'substantial' or

18   'continuous and systematic' contacts with the forum state." *Brand v. Menlove Dodge*, 796

19   F.2d 1070, 1073 (9ᵗʰ Cir. 1986). The affiliations must be "so 'continuous and systematic'

20   as ***to render [Defendant] essentially at home in the forum***." *Goodyear*, 564 U.S. 915, 919.

21   (emphasis added).

22         Jurisdiction cannot be based solely on the presence of a defendant's property unless

23   the property underlies the central claims of the controversy. *See Shaffer v. Heitner*, 433 U.S.

24   186, 213, 97 S.Ct. 2569, 2584 (U.S. 1977) *Id*. at 213 ("Yet that property is not the subject

25   matter of this litigation, nor is the underlying cause of action related to the property.").

26         "'Substantial' is intended to be a fairly high standard mere purchases taking place

within the state, even if occurring at regular intervals, are not enough to establish general jurisdiction." *See Id.* (*citing Helicopteros*, 466 U.S. at 416 (no jurisdiction over foreign corporation that sent officer to forum for one negotiating session, accepted checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained)); *see also Cubbage v. Merchent*, 744 F.2d 665, 667–68 (9th Cir.1984), (no jurisdiction over doctors despite significant numbers of patients in forum, use of forum's state medical insurance system and telephone directory listing that reached forum), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, (1985); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330–31 (9th Cir.1984) (no jurisdiction over defendants despite several visits and purchases in forum, solicitation of contract in forum which included choice of law provision favoring forum, and extensive communication with forum), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, (1985); *see also Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1243 (9th Cir.1984) (developing sales force in forum state insufficient).

Here, Plaintiff sued Mr. Lindsay as an individual. *See Document #6, 1AC, at ¶ 2.* Mr. Lindsay is a "west-Texas Rancher," does not do business in Arizona, and merely purchased the Property as an incident to the Texas Contract. *Id.* at ¶¶ 17 & 23. As discussed further, *infra*, neither Mr. Lindsay's interest in the Property nor any real property related issues exist in this action. *See Generally, Id.* Therefore, there is no basis for Mr. Lindsay to expect that the mere purchase of the Property would overcome the "high standard," required by *Brand*, and lead to a finding that Mr. Lindsay has "substantial" or "continuous and systematic" business contacts with Arizona sufficient to be hauled into this District Court on tort and contract allegations having nothing to do with Arizona. *Brand, Supra.* Any other result violates the requirements that the Court's exercise of jurisdiction over Mr. Lindsay comport with "traditional notions of fair play and substantial justice." *Schwarzenegger*, *supra*.

//

(2) **Importantly, Neither Do the Alleged Facts Imbue this Court with Specific Jurisdiction over Plaintiff's Tort and Contract Claims**.

"We have established a three-factor test to determine when a state may constitutionally exercise specific jurisdiction over a defendant: **(1)** The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; **(2)** The claim must be one which arises out of or results from the defendant's forum-related activities; and **(3)** Exercise of jurisdiction must be reasonable." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073; *see also Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *See Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (*quoting Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "***We generally apply the <u>purposeful availment</u> test when the underlying claims arise from a contract***, and the ***<u>purposeful direction</u> test when they arise from alleged tortious conduct***." *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (emphasis added); *see also Id.* at 1149 (However, "merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction[.]") (internal quotations omitted)).

***It is the interests of the defendant—here, Mr. Lindsay—these rules are designed to protect***. *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 1122 (U.S. 2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties.").

*//*

(3) **The Alleged Facts of this Case Show Plaintiff Fails the "Purposeful Availment" Test of the First Prong and Fails the Second Prong Disallowing this Court to Exercise Specific Jurisdiction over Plaintiff's Contract Claims**.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d 797, 802 (*citing Coté v. Wadel*, 796 F.2d 981, 984 (7th Cir.1986) ("[p]ersonal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident"). In *Goodyear Dunlop*, the U.S. Supreme Court held there was no basis for jurisdiction despite the fact that the contract had been negotiated in the forum, checks issued from a forum-sited bank, asset purchases occurred in forum, and equipment and training acquisition occurred in forum. *See Goodyear Dunlop*, 564 U.S. 915, 917 (U.S. 2011). Even continuous in-state activity *unrelated* to the claim is insufficient to support jurisdiction. *Id*. at 927.

In *Morrill*, the 9th Circuit held that a purposeful availment analysis is inappropriate where—as here—the claims of breach are premised on alleged tortious conduct stating:

> Plaintiffs' arguments fail for two reasons. *First, **the claims at issue are premised on alleged tortious conduct by Defendants**. **Therefore, the purposeful availment test does not apply**. See Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) ("[W]e apply different purposeful availment tests to contract and tort cases. ... [M]erely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort cases, however, jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." (citations omitted)).

> *Second*, even if the test applied, ***Plaintiffs' allegations as to the relevant conduct are insufficient to show purposeful availment***. For the reasons stated earlier with respect to the application of the purposeful direction test, Defendants' contacts with Plaintiffs arose from the [conduct in the Nevada] Litigation in which the principal parties here were opposing counsel. ***These contacts were related not to Plaintiffs' status as residents of Arizona, but to***

***their role as counsel in the [] Litigation, which was pending in Nevada***. Therefore, Defendants' actions did not create a "substantial connection" with Arizona, or give rise to any "ongoing obligations" there. [emphasis added, citations omitted].

*See Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1149 (9th Cir. 2017). "when a defendant's relationship to the forum state arises from the fortuity of where the plaintiff resides … it does not provide the basis for specific jurisdiction there." *Id. at 1148.*

Here, the primary allegations of wrongdoing against Mr. Lindsay are allegations predicated on torts—not contracts. *See Document #6, 1AC, at Count I* (breach of implied duty based upon accusations of alleged theft, sexual coercion, intolerable work environment, criminal acts, and alleged sexual advances), *Count IV* (wrongful termination), *Count V* (the tort of Federal Sex Trafficking), *Count VI* (the tort of IIED), and *Count VII* (the tort of unjust enrichment). If the Court omits the allegations of tortious conduct, the entire Complaint fails to state a claim this Court may lawfully decide. *Id*. This means that the purposeful availment test does not apply here, any more than it did in *Morrill*.

Also like in *Morrill*, even *if* the test *did* apply (it does not), Mr. Lindsay's alleged violative acts were not, in any way, directed at or related to Arizona. Just as the *Morrill* court held that Arizona contacts arising out of a Nevada lawsuit failed to establish a "substantial connection," there can be no finding of "substantial connection" here, when all of the alleged acts were undertaken as directed everywhere **but** Arizona:

1.      Both Parties worked and lived in Texas prior to and at the time of the execution of the Texas Contract. *Document #6, 1AC, ¶¶ 6-22.*

2.      Plaintiff and Mr. Reichert desire to, and still do, work and live in Texas from their $1.34 million wedding venue and photography studio—the Sekrit Theater, and the $1.89 million Canyon Lake Property. *Id*. at ¶ 126; *See also EXHIBIT B*; *see also EXHIBIT C*; *see also EXHIBIT D.*

3.    The Parties negotiated the Texas Contract in Texas. *Document #6, 1AC, ¶¶ 19-22.*

4.    The Texas Contract was directed toward Mr. Lindsay in Texas or for services provided to Mr. Lindsay in every corner of the world ***but*** Arizona. *Id. at ¶¶ 19-22, ¶ 33* (travel expenses elsewhere), ¶ 38 (accommodations while traveling outside of Arizona), ¶ 41 (submitting reports to Mr. Lindsay in Texas), ¶¶ 43-115 (critical alleged acts all occurred outside of Arizona); *See also EXHIBIT E* (showing 22/41 days of Plaintiff's reported "work" was active travel outside of Arizona and 19 days coordinating travel outside of Arizona).

5.    Both Parties to the Texas Contract ***signed in their capacity as Texas residents***, listing properties the Parties still own as their residences. *Document #6, 1AC, ¶ 26; see also Exhibit A to the 1AC; see also EXHIBITS B-D hereto.*

6.    Plaintiff directed all of her communications to Mr. Lindsay in Texas. *Document #6, 1AC, ¶¶ 37-41.*

7.    All expenses were paid from Texas (including potentially unauthorized expenses Mr. Lindsay may seek to vindicate in any legal action). *Id. at ¶¶ 44, 46, 56-57.*

8.    None of the 1AC's allegations include any claims sounding in real property but, rather, in contract or tort. *See generally, Id.*

9.    All potential witnesses are Texas residents or are located anywhere ***but*** Arizona. *See Id. at ¶ 2* (Mr. Lindsay, Texas), ¶ 41 (Crystal Slade, Texas), and ¶ 44 (Russ & Peggy Salcido, Texas), ¶¶ 6-22 (Texas real estate and antique witnesses), and ¶¶ 77 & 106 (the Four Seasons staff).

There are no substantial contacts with Arizona as the alleged acts were ***not*** related to Plaintiff's status as a resident of Arizona. So, barring the fact that the "purposeful availment test" does not apply because the action is premised on torts, Plaintiff still cannot prove the high bar of showing a "substantial connection" otherwise. As a result, neither can Plaintiff establish the second prong (that the claims arise from Mr. Lindsay's forum-related

1    activities) because none of the alleged conduct forming the claims arose in Arizona at all.

2       (4) **The Facts of this Case Show Plaintiff Fails the "Purposeful Direction"**
3       **Test of the First Prong and Fails the Second Prong Disallowing this**
        **Court to Exercise Specific Jurisdiction over Plaintiff's Tort Claims**.
4

5       Purposeful direction—applied, as here, in tort contexts—"requires that the defendant
6    ... have (1) committed an intentional act, (2) *expressly aimed at the forum state*, (3) *causing*
7    *harm* that the defendant knows is likely to be suffered in the forum state." *See Morrill v.*
8    *Scott Financial Corp.*, 873 F.3d 1136, 1142 (*citing Schwarzenegger v. Fred Martin Motor*
9    *Co.*, 374 F.3d at 803) (emphasis added)). The acts giving rise to a finding of personal
10   jurisdiction must, again, be the intentional alleged bad acts that create the basis of the cause
11   of action. *See Morrill*, 873 F.3d 1136, 1144 (stating that the alleged publishing of the
12   newspaper in *Calder* was both the basis of the alleged bad act and the act upon which
13   personal jurisdiction was primarily based); *see also Id. at 1149* (Personal jurisdiction was
14   more properly exercised in Nevada—rather than Arizona—because "[t]he alleged *tortious*
15   *conduct* was a component part of the litigation in Nevada.").

16      The "challenged conduct" in the Complaint must be the basis of the acts
17   substantiating jurisdiction and that "bad alleged conduct" must be "aimed" at the forum
18   state. *Id.* at 1144; *see also Id. at 1145* ("It obscures the reality that none of [the] *challenged*
19   *conduct* had anything to do with [the forum state] itself."); *see Schwarzenegger v. Fred*
20   *Martin Motor Co.*, 374 F.3d 797, 803 (the alleged bad conduct was the publishing of a
21   photo, which the 9th Circuit held needed to have happened in California—instead of in Ohio
22   as it was—to give California personal jurisdiction over Schwarzenegger's case against the
23   Ohio defendant); *see also Id. at 807* (No California jurisdiction permitted because the
24   "intentional act" was "expressly aimed at Ohio rather than California[,]" despite the fact
25   that the Ohio defendant might know that harm may be felt in California by Schwarzenegger:
26   it still was not enough to confer jurisdiction on California).

1          In *Walden v. Fiore*, the U.S. Supreme Court refused to find personal jurisdiction in

2    the forum-state of Nevada when "none of [defendant's] ***challenged conduct*** had anything

3    to do with Nevada itself." *Walden v. Fiore*, 571 U.S. 277, 278 (U.S. 2014) (emphasis

4    added). Furthermore, The forum state cannot be merely implicated by the "happenstance of

5    Plaintiff's residence." *Morrill*, 873 F.3d 1136, 1146 (holding there was no personal

6    jurisdiction—in part—because if the rules relied upon by Plaintiff to establish personal

7    jurisdiction in Arizona were similar in any other state where Plaintiff might have been

8    located, Plaintiff would have "experienced the same alleged tortious conduct … wherever

9    else they may have resided.") (internal quotations omitted); *see also Id. at 1146* ("Nor do

10   the actions taken by defendant in Arizona … provide ***a sufficient basis to show that the***

11   ***alleged torts were 'expressly aimed' at Arizona.***" (emphasis added)).

12         Here, absolutely zero of the alleged bad conduct was "aimed at" Arizona in any way.

13   As stated in Section III(a)(3), *supra*, none of the alleged bad acts occurred in Arizona and

14   the Complaint does not include the purchase of the Property as "challenged conduct." *See*

15   *Generally Document #6*, *1AC*. Even if the allegations of the 1AC were true (they are not),

16   the alleged bad conduct concerned a Texas Contract negotiated in Texas by contractually

17   avowed Texas residents (who still live and work in Texas), for the benefit of Mr. Lindsay

18   (a Texan), to Travel anywhere but Arizona, on funds paid by Mr. Lindsay out of Texas, and

19   observed primarily by Texan witnesses (or at least non-Arizonan witnesses). *Id.*

20         None of the alleged sexual harassment, or IIED, underlying the claims took place in,

21   or were aimed at, Arizona. *See Document #6*, 1AC, *at ¶¶ 43-121, 155-163, & 168-174* (the

22   trip around the world was the setting for the critical (false) allegations of Plaintiff's story).

23   None of the alleged discussions on expenditure classifications, termination, or "intolerable

24   work environment" happened in, or were aimed at, Arizona. *Id. at ¶¶127-134, 154-166, or*

25   *183-188*. The only acts that took place in Arizona were the closing on the Texas Contract

26   and an ancillary Special Detainer action on Mr. Reichert's breach of the lease after notice

___and___ Mr. Reichert's failure to cure. *Id*. *at ¶¶ 24-26, & 124*.[2] But none of those acts that allegedly took place in Arizona were "challenged conduct" "expressly aimed" at Arizona. *Morrill*, 873 F.3d 1136, 1146; *see also Document #6, 1AC, at ¶ 124*. This causes Plaintiff to fail the second prong, necessarily: none of the alleged bad acts occurred in Arizona.

(5) **The Facts of this Case Show the Exercise of Jurisdiction is Not Reasonable in Arizona as Required by the Third Prong of the Specific Jurisdiction Test**.

"We examine seven factors to determine whether exercise of jurisdiction is reasonable: (1) existence of an alternative forum; (2) burden on the defendant; (3) convenience and effectiveness of relief for the plaintiff; (4) most efficient judicial resolution of the dispute; (5) conflict with sovereignty of the defendant's state; (6) extent of purposeful interjection; and (7) the forum state's interest in the suit." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) (internal citations omitted).

First, Texas is the available alternate forum and much better suited as Ms. Stangel and Mr. Reichert already own real property in Texas, work there, and seek to continue working there. *See EXHIBITS B-D*; *see also Document #6, 1AC, at ¶ 126* (Stangel and Mr. Reichert want to continue renting booth space at the twice-yearly Round Top[, Texas] Antique shows[.]"). Second, this should pose no burden to Ms. Stangel as she and Mr. Reichert need not cross state lines to attend court from Plaintiffs residence at the Sekrit Theater, which is just minutes away from the Western District of Texas District Court. *Id*.

Third, there is little to no inconvenience to Ms. Stangel to litigate in Texas given her stated willingness and desire to go there. *Id*.; *see also Brand*, 796 F.2d 10170, 1075 ("It should not be significantly more difficult for appellees, Phoenix residents, to try this case

---

[2] Paragraphs 24 & 26 of the 1AC state that Mr. Lindsay traveled to Bisbee to close on the sale of the Property and implies that the Parties executed the Texas Contract in Bisbee by stating that they signed it that day. As discussed, *infra*, federal Courts place little weight on the location of execution when all other facts occurred outside that forum.

in Utah[.]" Noting that the forum where most of the events took place is or "where most of the evidence is located, will usually be the most efficient."). Fourth, as discussed further, *infra*, because Texas law most appropriately applies here; the most efficient judicial resolution would be had in Texas. All of the witnesses proffered by Mr. Lindsay are non-Arizona residents; as are the witnesses Plaintiff would proffer aside from herself and Mr. Reichert – who are admittedly Texas residents but claim to live in Bisbee. *See Document #6*, *1AC*, *at* ¶ 2 (Mr. Lindsay, Texas), ¶ 41 (Crystal Slade, Texas), and ¶ 44 (Russ & Peggy Salcido, Texas), ¶¶ 6-22 (Texas real estate and antique witnesses), and ¶¶ 77 & 106 (the Four Seasons staff).

Fifth, as discussed *infra*, Texas has the biggest dog in the fight of state interests as this Texas Contract was negotiated there by Texas residents. The Texas Contract was for services to a Texas resident accused of running afoul of alleged employment requirements placed on the Texas signatories to that Texas Contract. Sixth, Mr. Lindsay engaged in no purposeful interjection into Arizona: Plaintiff was the one who picked the Arizona Property and—as far as Mr. Lindsay is concerned—she could have picked property anywhere else. *See Brand*, 796 F.2d 10170, 1075 (Noting that the purposeful interjection was limited when a seller merely sold a product to a buyer who indicated he would resell in the forum); *see also Document #6*, *1AC*, *at* ¶¶ 6-7, 9, 13, 16, & 22 (Stangel and Reichert discovered the Property, desired to move there, and "widely shared their goal to purchase the Property[.]").

Seventh, Arizona has virtually no interest in this suit. A Property closing happened in Bisbee where, ostensibly, the Parties also executed the Texas Contract. These acts are in no way the gravamen of this suit: neither Plaintiff nor Arizona suffered any harm in those acts. *Id. at* ¶¶ 24-26. Arizona **does** have an interest in the ongoing landlord-tenant dispute pending before the Cochise County Superior Court, but that suit is being litigated separately, does not involved Plaintiff, and is not a part of this federal lawsuit. *See Cochise County Superior Court Case CV2025-00667*. Should the Court find that Plaintiff satisfied the first

and second prongs, Mr. Lindsay respectfully requests leave to supplement this argument as to "reasonableness."

b. *The Court Should Dismiss the Present Action for Improper Venue*.

The Court should dismiss this case for improper venue, pursuant to FRCP 12(b)(3), 28 U.S.C.A. §§ 1391 & 1406(a). "A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" *28 U.S.C.A. § 1391(b)*. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss[.]" *28 U.S.C.A. § 1406(a)*.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper[.]" *Atlantic Marine Const. Co., Inc. v. U.S.*, 571 U.S. 49, 56, 134 S.Ct. 568, 577 (U.S. 2013). "[V]enue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district." *Myers v. Bennet Law*, 238 F.3d 1068, 1075-1076 (9th Cir. 2001).

"[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Leroy v. Great Western United Corp.*, 443 U.S. 173,184-185, 99 S.Ct. 2710, 2717 (U.S. 1979). "Rather, it restricted venue either to the residence of the defendants or to a place which may be more convenient to the litigants—i.e., both of them—or to the witnesses who are to testify in the case." *Id.* (quotations omitted).

Here, the proper venue is Texas, where Mr. Lindsay resides, for multiple reasons. *28 U.S.C.A. § 1391(b)(1)*. Texas is where the most substantial part of the events giving rise to the claims occurred. *Id. at (b)(2)*. The parties signed the Texas Contract as Texans (where Plaintiff still seeks to travel, work, and owns property), Texas is where the parties negotiated

1   the Texas Contract for services provided in Texas, paid for in Texas, and where the bulk of

2   all of the relevant witnesses are located.  While the Property is located in Arizona, it not the

3   subject of this tort/contract action. *Section III(a)(3), supra*.

4

5              c.   <u>*The Court Should Dismiss the Present Action for Failure to State a Claim*</u>
                    <u>*when Arizona Law is Inapposite to this Texas Contract between Texans*</u>.

6        Because Texas law, not Arizona law, applies to this case, the causes of action brought

7   under Arizona law fail to state a claim upon which relief can be granted. *FRCP 12(b)(6)*. In

8   the absence of an explicit choice of law by the parties—as is the case here—the contractual

9   rights and duties of the parties are determined by the local law of the state having the "most

10  significant relationship" to the parties and the transaction. *Cardon v. Cotton Lane Holdings*

11  *Inc.*, 173 Ariz. 203, 207 (Ariz. 1992) (*citing Rstmt (2nd) of Conflict of Laws* § 188). In

12  diversity cases, "the district court must apply the choice-of-law rules of the state in which

13  it sits." *Labertaw v. Chartis Property Casualty Co.*, 363 F.Supp.3d 1031, 1036 (9th Cir.

14  2019). "Arizona follows the Restatement's 'most significant relationship' test." *Id*.

15       "Section 188 provides additional contract-specific factors, including the (1) place of

16  contracting; (2) place of negotiation of the contract; (3) place of performance; (4) location

17  of the subject matter of the contract; and (5) domicile, residence, nationality, place of

18  incorporation, and place of business of the parties." *Id. at 1038*. "***If the place of negotiating***

19  ***the contract and the place of performance are in the same state, the local law of this state***

20  ***will usually be applied.***" *Rstmt (2nd) of Conflict of Laws § 188(3)*. "Standing alone, the

21  <u>***place of contracting is a relatively insignificant contact***</u>. *Id. at ¶ e*. "The place where the

22  parties negotiate and agree on the terms of their contract is a significant contact. Such a

23  state has an obvious interest in the conduct of the negotiations and in the agreement

24  reached." *Id*. "***A state [where negotiations and performance occurred] will usually be the***

25  ***state that has the greatest interest*** [.]" *Id. at ¶ f*.

26       Here, while the parties spent a couple days in Bisbee to close on the Property and

sign the Texas Contract, the Contract was negotiated and performed in Texas. *Id.*; *see also Section III(a)(3)*, *supra*. Texas is the location of the subject matter of the Texas Contract because provision of travel coordination services to Mr. Lindsay in Texas was the subject matter. *Id.* Plaintiff consulted Mr. Lindsay in Texas regarding destinations. She submitted her ideas and documentation to Texas for approval, payment into Texas. *Id.* Plaintiff **still** works (and resides) at the Sekrit Theater, which she listed as her domicile in the Texas Contract. *Id.* The Restatement § 188(3) and the application of the factoring test mandate that Texas is the proper law to apply in this action.[3] Therefore, even if those uncontroverted facts of the 1AC are taken as true, they cannot substantiate a cause of action under Arizona's laws, as alleged, and must be dismissed. *FRCP 12(b)(6).*

## IV.    ATTORNEY'S FEES AND COSTS.

Defendant is entitled to an award against Plaintiff of his reasonable attorney's fees and costs incurred herein pursuant to, *inter alia*, 28 U.S.C.A. §§ 1919, 1927; and Tex. Civ. Prac. & Rem. Code Ann. § 38.001 or—if the Court finds that any part of Arizona law applies to this case, but that Mr. Lindsay prevails—any Arizona analogue of these listed statutes or those otherwise allowing recovery of Attorney's fees and costs in Arizona.

---

[3] *Labertaw*, does include factors for the Court to consider in determining which choice of law applies in tort actions like: (a) place of injury, (b) place of injurious conduct, (c) domicile of the parties, and (d) place where the Parties' relationship is centered. *Labertaw*, 363 F.Supp.3d 1031, 1039. But for all of the facts outlined in Section III(a)(3) above, and the facts as alleged in this case, Texas is the nearly axiomatic answer to the choice of law question even in the tort space. If the allegations were true (they are not), (a) the alleged injury did not occur in Arizona; (b) none of the alleged injurious conduct occurred in Arizona; (c) the parties (and majority of witnesses) were domiciled in Texas and still are or have profound connections thereto; and (d) the Texas Contract is the Texas center of the relationship, even as alleged. The analysis of torts in the specific jurisdiction context— Section III(a)(4), *supra*—compels this conclusion here as well.

1     **WHEREFORE**, Defendant respectfully requests that this Court enter an order

2  dismissing Plaintiff's Complaint and further requests that he be awarded his reasonable

3  legal fees and costs for having to defend in this action.

4        RESPECTFULLY SUBMITTED this 17th day of November 2025.

5
                                                BURRIS & MACOMBER, PLLC
6

7                                               */s/ Jeremy T. Shorbe*
                                                D. Rob Burris, Esq.
8                                               Jeremy T. Shorbe, Esq.
                                                *Attorneys for Defendant*
9

10
   ORIGINAL e-filed this
11 17th day of November 2025 to:

12
   Clerk of the United States District Court
13 405 West Congress Street, Suite 1500
   Tucson, AZ 85701
14

15 Copy of the foregoing to be e-served
   this 17th day of November 2025 to:
16

17 Silence Law Group, PLLC
   20235 N. Cave Creek Rd., Ste. 104 # 460
18 Phoenix, AZ 85204
   Jeffrey Silence, Esq.
19 jeff@silencelaw.com
   Trevor Cook, Esq.
20 trevor@silencelaw.com

21
   Shields Petitti & Zoldan, PLC
22 James Burr Shields
   burr@shieldspetitti.com
23 *Attorneys for Plaintiff*

24
   By: */s/Jo Lynn Goldener*
25

26