SILENCE LAW GROUP

1  **Silence Law Group PLLC**
   20235 N. Cave Creek Rd. Ste 104 # 460
2  Phoenix, AZ 85024

3  **Jeffrey Silence** (029143)
   Direct Dial: (602) 932-8358
4  Email: jeff@silencelaw.com

5  **Trevor Cook** (037952)
   Direct Dial: (602) 932-5868
   Email: trevor@silencelaw.com
6

7  **Shields Petitti & Zoldan, PLC**

8  **James Burr Shields**
   Direct Dial : (602) 718-3331
9  Email: burr@shieldspetitti.com

10 *Attorneys for Plaintiff*

11

12              **UNITED STATES DISTRICT COURT**

13             **FOR THE DISTRICT OF ARIZONA**

14 Cameron Stangel,                    Case No.  CV-25-471-JCH

15            Plaintiff,

16      v.                             **PLAINTIFF'S MOTION FOR LEAVE
                                        TO AMEND**
17 Jeffery Lindsay,

18            Defendant.               (Hon. John C. Hinderaker)

19

20

21      Plaintiff Cameron Stangel respectfully moves this Court for leave to amend her

22 complaint pursuant to Fed. R. Civ. P. 15(a)(2) and LRCiv 15.1(a). Plaintiff proposes this

23 Second Amended Complaint ("SAC") to add claims of retaliation and allege supporting

24 facts. Justice requires that Stangel be permitted to amend her complaint because some of

25 the facts supporting these claims happened after she filed her First Amended Complaint.

26 Also, this case is at the early stages. Plaintiff has not yet even responded to Defendants'

27 Motion to Dismiss. The proposed SAC is attached as **Exhibit 1**. *See* LRCiv 15.1(a). A

28 proposed order accompanies this filing.

SILENCE LAW GROUP

## I.        Factual and Procedural Background

Plaintiff Cameron Stangel, and her long-term partner Beau Reichert, dreamed for years of finding a rural location with a thriving arts scene where they would run a nonprofit foundation promoting the photographic arts. They found their dream property in Bisbee, Arizona (the "Property") in 2022 and immediately set to work to acquire it, planning sale of their land, raising money through antique sales, and even seeking to strike a deal with the Property's owner where he might convey the Property on favorable terms based on its intended nonprofit use.

Stangel met Defendant Jeffery Lindsay at an antique sale in Texas in 2023. From that first meeting, Lindsay tried to impress Stangel with his great wealth—"more money than God"—and expressed great interest in her and Reichert's goal of settling themselves and their nonprofit in Bisbee. Lindsay exploited his knowledge of Stangel's aspirations and the disparity between their wealth to lure Stangel into an "employment agreement" where Stangel would perform three years of service as a "travel coordinator" for Lindsay in return for title to the Property. As part of the arrangement, Lindsay entered into a residential lease agreement with Reichert over the Property so Reichert and Lindsay could live there while Stangel performed her travel coordinator services.

From the start, Lindsay intended to use the agreement to force Stangel into spending time with him and to obtain sexual favors from her. Lindsay exposed his real motive through increasingly predatory and demanding behavior toward Stangel as they traveled together. Lindsay terminated the employment agreement after Stangel refused his escalating sexual advances and could not fulfill his request to procure drugs and prostitutes.

Stangel retained counsel in December 2024 and through them sent a letter to Lindsay asserting federal claims of trafficking and state breach-of-contract claims. Lindsay replied through his own counsel at Burris & MacOmber, PLLC, denying Stangel's claims and threatening to assert counterclaims against her.

SILENCE LAW GROUP

1      Two weeks later, Lindsay's attorneys at Burris & MacOmber sent a letter to

2 Reichert (even though Lindsay was well aware Stangel also lived in the Property) alleging

3 breach of the lease agreement. Reichert and Stangel engaged counsel to represent them in

4 the dispute. Lindsay ignored their attempts to cure the alleged breach and filed an eviction

5 action through his Burris and MacOmber counsel naming Reichert and "John Does I–III"

6 and "Jane Does I–III" as defendants, even though he was well aware that Stangel also

7 lived in the Property. The justice court dismissed the groundless eviction action, and

8 Lindsay appealed. The appeal is pending.

9      Lindsay's eviction action ostensibly targeted only Reichert, but Lindsay has known

10 since he met them that Reichert and Stangel are a couple. Lindsay arranged for them to

11 live at the Property during the term of the Employment Agreement before the Property

12 was to be transferred to Stangel. Lindsay's counsel at the eviction hearing acknowledged

13 Stangel's residence at the Property and that she drafted the lease agreement. They also

14 included in their fee invoice filed in the eviction action line items for work performed in

15 *this* action. The invoices show they view this litigation as interrelated with the lease

16 agreement litigation. For example, one time entry states: "Communications to/from

17 opposing counsel (LL/T [landlord and tenant] & TVPRA [Trafficking Victims Protection

18 Reauthorization Act] counsel) **(.4);** Receive review response letter from TVPRA counsel,

19 research legal assertions, and outline claims (1.3); Emails to/from client ( .4); Conference

20 with attorney Rob Burris regarding timing and strategy (.4)."

21      The timing and time entries show Lindsay brought the eviction in retaliation against

22 Stangel's threats of legal claims and to intimidate her from pursuing them. Despite his

23 intimidation tactics, Stangel filed her first complaint on August 19, 2025, alleging various

24 claims including—critically for this motion—failure to pay Arizona minimum wage and

25 failure to pay Arizona sick time. She filed an amended complaint as a matter of course on

26 September 29, 2025, solely to narrow the relief she sought.

27      Through his Burris & MacOmber counsel, Lindsay filed a motion to dismiss this

28 action for lack of personal jurisdiction on November 17, 2025. Three days later, the same

3

SILENCE LAW GROUP

1  counsel sent a "Notice of Inspection" to Reichert asking him to confirm one of four dates

2  during which, between 9:00 a.m. and 5:00 p.m., Lindsay's Burris & MacOmber counsel

3  would enter and inspect the Property. Through their lease agreement counsel, Stangel and

4  Reichert responded with a date and asked for clarification about the purpose of the

5  inspection. Lindsay's counsel gave none.

6      Ultimately, two non-lawyer staff of Burris & MacOmber conducted an "inspection"

7  of the Property. On arrival, they explained that one of Lindsay's counsel in this action,

8  who had planned to conduct the inspection, had to cancel at the last minute. One of the

9  "inspectors" carried a checklist and legal pad, but she rarely referred to the checklist and

10  never marked or noted any item on it. Nor did she visibly record or take any notes of

11  Reichert's detailed answers to her questions or his descriptions of various concerns with

12  the Property. Instead, the other "inspector" followed at a distance or entered nearby rooms

13  to take photographs and video mostly unrelated to the topics Reichert and the first

14  "inspector" discussed.

15      Stangel believes the inspection, similar to the eviction action, was done in

16  retaliation for her filing her complaint, which alleged claims of failure to pay Arizona

17  minimum wage and failure to pay Arizona sick time. A.R.S. § 23-364.B provides a right

18  of action for any retaliation against a plaintiff who asserts such claims. Stangel seeks to

19  amend her complaint to add claims of unlawful retaliation under A.R.S. § 23-364.

20  **II.    Legal Standard**

21      Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ.

22  P. 15(a)(2). Courts in this Circuit apply that policy "with extreme liberality." *See Owens*

23  *v. Kaiser Found. Health Plan., Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Their liberality

24  effects the "underlying purpose of Rule 15—to facilitate decision on the merits rather than

25  on the pleadings or technicalities. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186

26  (9th Cir. 1987) (citation omitted).

27      Leave to amend is denied only for the amending party's undue delay, bad faith,

28  repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of

4

**SILENCE LAW GROUP**

1    amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts also consider the number

2    of times amendment has already been allowed. *See Schwartz v. Miller*, 153 F.4th 918, 932

3    (9th Cir. 2025). The "crucial factor" is whether the defendants would be prejudiced.

4    *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *Eminence Cap., LLC v.*

5    *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent "prejudice or a strong showing

6    of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in

7    favor of granting leave to amend." *Eminence Cap., LLC.*, 316 F.3d at 1052. The party

8    opposing leave to amend bears the burden to show prejudice or reasons under the *Foman*

9    factors to deny leave amend. *See DCD Programs v. Leighton*, 833 F.2d 183, 187 (9th Cir.

10   1987).

11       The Court should grant Stangel leave to amend her complaint because Lindsay

12   cannot show undue delay, bad faith, repeated—or any—failure to cure deficiencies, undue

13   prejudice, or futility of amendment. The complaint was amended only once to narrow the

14   relief sought. The prior amendment left all claims and factual allegations untouched.

15       **No Undue Delay.** After Stangel filed her complaint alleging claims under

16   Arizona's minimum wage and sick time statutes, Lindsay continued pursuing his appeal

17   of the dismissed eviction action and began threatening a retaliatory property inspection.

18   The inspection took place on December 17, 2025, just a few days ago.  Notably, Stangel

19   recognizes that she cannot seek relief for the retaliatory efforts to evict her and her

20   boyfriend out of the Property because she did not assert claims for failure to pay sick time

21   and minimum wage in her prior counsel's demand letter. Her retaliation claims are limited

22   to the retaliatory inspection and retaliatory continued appeal of the dismissed eviction

23   action.

24       In any case, "delay alone is not sufficient to justify the denial of a motion requesting

25   leave to amend." *DCD Programs*, 833 F.2d at 187.

26       **No Bad Faith.** Arizona's minimum wage and sick leave statutes provide a private

27   right of action against an employer or former employer's retaliation against an employee

28   for asserting or exercising their rights under the statutes, including by filing legal claims.

SILENCE LAW GROUP

1    *See* A.R.S. § 23-364.B ("No employer or other person shall discriminate or subject any

2    person to retaliation for asserting any claim . . . under [the minimum wage statute].");

3    A.R.S. § 23.A–.B ("An employer shall not engage in retaliation against . . . [a] former

4    employee because the person has exercised rights under [the earned paid sick time statute].

5    Such rights include . . . the right to file a complaint with the . . . courts."); *cf. Robillard v.*

6    *Opal Labs, Inc.*, 337 F. Supp. 3d 962, 972 (D. Or. 2018) (agreeing with "the significant

7    weight of authority holding that a counterclaim filed in ongoing litigation can serve as an

8    adverse action to support a retaliation claim" and listing cases).

9        When filing her complaint, which included claims under those statutes, Stangel

10   anticipated further retaliation from Lindsay based on his previously targeting her and

11   Reichert in the (dismissed) eviction action. Once Stangel confirmed the retaliatory nature

12   of the December 17 inspection, Stangel sought leave to amend her complaint to add her

13   retaliation claims. There is nothing to indicate a "wrongful motive" for Stangel seeking to

14   amend her complaint. *See DCD Programs*, 833 F.2d at 187.

15       **No Repeated Failure to Cure Deficiencies.** The only supposed deficiencies

16   related to Stangel's pleading are whether this Court has personal jurisdiction, whether

17   venue is proper, and whether Arizona or Texas law applies. Lindsay raised these issues in

18   his motion to dismiss filed within days of the signing counsels' notice to Reichert of the

19   retaliatory property inspection. Stangel maintains that this Court has personal jurisdiction

20   over Lindsay in this matter and that venue is proper and that, for the same reasons, Arizona

21   law applies. She will soon file her response. Regardless, there is no evidence of any

22   "repeated failure to cure deficiencies."

23       **No Undue Prejudice.** The addition of claims alone is insufficiently prejudicial for

24   a court to deny leave to amend; there must be something more. *DCD Programs*, 833 F.2d

25   at 186. Courts within the jurisdiction of the Ninth Circuit usually evaluate such prejudice

26   "in terms of, *e.g.*, whether discovery cut-offs have passed, how close trial is, and so forth."

27   *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013). The Court of Appeals will

28   affirm denial of leave to amend when it would force a reopening of discovery that would

1  delay the proceedings. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d
2  980, 986 (9th Cir. 1999).

3      This case is in the pleading stage—Lindsay has not even answered the complaint.
4  He cannot show he would be prejudiced by the Court's granting leave to Stangel to amend
5  her complaint.

6      **No Futility of Amendment.** "[A] proposed amendment is futile only if no set of
7  facts can be proved under the amendment to the pleadings that would constitute a valid
8  and sufficient claim." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 60 (D. Airz.
9  2021) (quoting *Miller v. Rykoff-Sexton, Inc.*, 345 F.2d 209, 214 (9th Cir. 1988). Stangel's
10  new claims are supported by new factual allegations, which she learned of since filing her
11  earlier complaints. Lindsay cannot show the amendment is futile.

12      **One Previous Amendment to Relief Sought.** Stangel has amended her complaint
13  once by right. The amendment narrowed the relief Stangel sought from the Court and left
14  all claims and factual allegations unchanged. This previous amendment should have no
15  bearing on the Court's decision to grant leave here.

16 **III.    Conclusion**

17      Stangel's Second Amended Complaint is timely, submitted in good faith, and will
18  not prejudice Lindsay. It raises valid new claims with supporting factual allegations of
19  events occurring after Stangel filed her first amended complaint. Granting Stangel leave
20  to amend is not futile and is appropriate. Her only previous amendment merely narrowed
21  the relief sought and left all other claims and factual allegations substantively unchanged.

22      For these reasons, the Court should grant Stangel's Motion for Leave to Amend
23  and enter the attached order granting her leave to file her Second Amended Complaint.

24
25
26
27
28

SILENCE LAW GROUP

SILENCE LAW GROUP

1    RESPECTFULLY SUBMITTED this 22nd day of December, 2025.

2                                          **Silence Law Group PLLC**

3

4                                          */S/ Trevor Cook*
                                           Jeffrey Silence
5                                          Trevor Cook
                                           James Burr Shields
6
                                           *Attorneys for Plaintiff*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8