**BURRIS & MACOMBER, PLLC**
2478 East River Road
Tucson, Arizona 85718
Telephone:  (520) 775-2000
Facsimile:   (520) 775-2001

**D. Rob Burris, Esq.**
State Bar No. 024961
Email: rob@burrismacomber.com

**Jeremy T. Shorbe**
State Bar No. 026920
Email: jeremy@burrismacomber.com
*Attorneys for Defendant Jeffrey Lindsay*

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cameron Stangel, | Case No. CV-25-471-JCH |
| Plaintiff, | **DEFENDANT JEFFERY LINDSAY'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| v. | |
| Jeffery Lindsay, | |
| Defendant. | Hon. John C. Hinderaker |

Defendant Jeffery Lindsay ("Defendant" or "Mr. Lindsay") hereby submits his Opposition to Plaintiff's Motion for Leave to file Second Amended Complaint (the "2AC"). Defendant's Opposition is supported by the following memorandum. Mr. Lindsay respectfully requests the Court deny Plaintiff's Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

Plaintiff is judicially estopped from asserting claims surrounding the Eviction Action (the "EA") that Mr. Lindsay has against Beau Reichert ("Mr. Reichert"). This is so because EA counsel ("Mr. Tucker") for Mr. Reichert *and* Plaintiff, Cameron Stangel ("Plaintiff" or "Ms. Stangel") has already argued vehemently that the Services Contract at issue here (the

"Texas Contract") between Ms. Stangel and Mr. Lindsay is a wholly separate and is completely divorced from the EA. Mr. Tucker argued that the EA is **only** against Mr. Reichert for his alleged breaches of the lease (the "Lease") that does not include Ms. Stangel. Mr. Tucker argued that: (1) the EA only concerns Mr. Reichert's rights created under the Lease; (2) only Mr. Reichert is an obligee of the Lease; (3) that this federal suit is totally separate from the EA; (4) that Ms. Stangel is ***not*** a tenant, and ***not*** granted occupancy rights under either document; and (5) that only the Lease controls the right of possession of the Property held by Mr. Reichert alone.

Furthermore, Ms. Stangel cannot be allowed to so amend the First Amended Complaint (the "1AC") because no actions Mr. Lindsay takes to secure his rights under the Lease with Mr. Reichert involve her or are rights she holds that may be retaliated against. Allowing the proposed Second Amended Complaint (the "2AC") does constitute an **undue delay** because it expands the facts addressed in Mr. Lindsay's pending Motion to Dismiss ("MtD") that will hamper the expeditious ruling on the matter.

It constitutes **bad faith** as Ms. Stangel *knows* that she is judicially estopped to argue a 180° different position here than in the EA when it serves to muddy the issues before this Court. Further, the 2AC would make counsel undersigned witnesses (if not co-defendants), which might cause a conflict of interest that would preclude this firm's further representation of Mr. Lindsay. It is an attempt to strip Mr. Lindsay of the ability to take any rightful actions to vindicate his landlord rights in the Property even though Mr. Lindsay has bent over backward to afford every tenant right to Mr. Reichert. Ms. Stangel has no dog in the fight if Mr. Reichert (as tenant) fails to cure his violations of his Lease with Mr. Lindsay, which is exactly what happened after Mr. Reichert failed to timely cure after due notice.

It is wrong to insinuate to this Court that Ms. Stangel needed to be present—at all—for the EA or any inspection of the Property under the Lease with only Mr. Reichert: she is not a tenant, but Mr. Reichert's guest. It cannot be "harassment" of a tenant's guest when

the landlord merely seeks Lease compliance from the tenant and the guest has no possessory rights in the Property at all.

It shows bad faith in that Mr. Reichert *requested* Mr. Lindsay undertake tens of thousands of dollars in repair work at the Property and then Ms. Stangel uses Mr. Lindsay's good faith effort to inspect the Property and make the repairs as new claims of "harassment." It is also bad faith in that it attempts to allow Mr. Reichert to live—not only rent-free per the Lease—but with the ability to shirk his obligation to obtain his own insurance listing Mr. Lindsay as an "additional insured" and to timely pay the property taxes, when the 2AC serves to penalize Mr. Lindsay for acting as a landlord. Ms. Stangel should not be permitted to wrongfully supplement the factual assertions of her Opposition to the Motion to Dismiss (the "Opposition") and needlessly expand this litigation.

Ms. Stangel's 2AC *does* exhibit **a wrongful motive** in that she knows that she has argued in the EA the exact opposite of what she now argues here (to wit: to the EA Mr. Tucker argues the two documents are completely divorced and here that the Texas Contract and Lease are essentially one document creating a basis for retaliation against Ms. Stangel). The motive is to obfuscate the issues before the Court in deciding the MtD, to delay the Court's disposition of the MtD, and to needlessly expand the issues before the Court. Ms. Stangel's 2AC is **Futile** because she knows she is judicially estopped to equate the two contracts. It's also futile because Mr. Reichert (as tenant) has asked Mr. Lindsay (as his landlord) to undertake expensive repairs that still have yet to be completed at the Property: will each such encounter invited by Mr. Reichert be grounds for another Amended Complaint?

The **undue prejudice** is extremely clear: Mr. Lindsay will have to expand briefing and defense expenses to address judicially estopped arguments employed to deceive this Court. It will destroy Mr. Lindsay's representation by counsel undersigned. It will destroy Mr. Lindsay's rights as landlord without due process and based on an estoped argument.

It might even exponentially expand litigation costs and time for Mr. Lindsay having to find new attorneys to start representation from scratch because of the potential conflict created by the 2AC and allegations against counsel. For all of these reasons, the 2AC ought to be denied outright. Ms. Stangel is playing games, not only with Mr. Lindsay here, but with this Court and justice cannot allow such gamesmanship against either.

**II.     RELEVANT FACTS**.

It is imperative for the Court to note what the two relevant documents say, and do, to realize that the EA, and any lawful landlord privileged activity, is irrelevant to this action. The Texas Contract where Mr. Lindsay agrees to purchase the travel coordination services offered by Ms. Stangel ***does not confer a possessory interest in the Property to her***. *See Texas Contract (Doc. 8-1) pp. 3-4*. The Texas Contract strictly sets up a situation where Ms. Stangel may succeed to an *ownership* interest *after* she has completed five-hundred twenty (520) days of travel coordinator services over a span of three (3) years (i.e., 1,095 days' time): there is no right of possession conferred to her in that document. *Id*. The Texas Contract for services makes Ms. Stangel separately responsible to ensure that the taxes are paid and that insurance is covered: without granting a possessory interest as a tenant. *Id*.

The Lease, by contrast, is the only document that grants a possessory interest in the Property—and that interest is granted *solely* to Mr. Reichert as tenant-signatory. *See Lease (Doc. 13-1) pp. 16-17*. Thus, any and all tenant rights that exist, only flow to Mr. Reichert (and Mr. Reichert alone) as he is the only tenant-signatory and obligee thereunder. *Id*. Mr. Reichert, under the Lease, is responsible to obtain his own Property insurance (naming Mr. Lindsay as an "additional insured") and to pay real property taxes as obligations undertaken in exchange for the possessory interest in the Property. *Id*. The EA and the inspection were undertaken solely under the Lease and as to obligations created thereunder and placed onto Mr. Reichert and Mr. Lindsay *alone*. *See 2AC (Doc. 12) at p. 3:1-5* (affirming that the enforcement of the Lease terms was solely as to Mr. Reichert and not Ms. Stangel).

Taken together, the Texas Contract and the Lease set up two separate sets of rights/obligations and create a situation where—had Ms. Stangel completed her services within the first 520 days and succeeded then to ownership—Ms. Stangel would have been the owner-landlord of Mr. Reichert (as continuing tenant) for the additional 575 days left on the Lease. *See Texas Contract (Doc. 8-1) pp. 3-4*; *see also Lease (Doc. 13-1) pp. 16-17*. Ms. Stangel and Mr. Reichert are not husband and wife. *1AC (Doc. 6), ¶ 6*. So, if they ended their relationship, there would be no community property ownership interest in Mr. Reichert by virtue of the Texas Contract. *Id*. Similarly, Mr. Reichert could oust Ms. Stangel as a mere guest of the Property under the Lease, because only Mr. Reichert had a rightful possessory interest under the Lease. *Id*. As owner, Ms. Stangel would have the absolute right to enforce against Mr. Reichert's Lease violations, would have the right to give statutory notice to inspect the Property, and would bear any obligation to undertake repair work requested by Mr. Reichert. The two documents are wholly separate.

    a. *<u>EA Counsel for Ms. Stangel and Mr. Reichert has Already Admitted that the Actions in the EA and Pursuant to the Lease Do Not Implicate Ms. Stangel or this Federal Action</u>*.

Mr. Tucker, as counsel for Mr. Reichert and Ms. Stangel, has admitted as much. *See Mr. Tucker's May 16, 2025, Representation Letter*, attached as **EXHIBIT A** *at p. 1* ("This firm represents … Cameron Stangel[.]"; *see also December 26, 2025, "Appellee's Additional Briefing on Appeal as Ordered by the Court" (the "<u>EA Brief</u>") attached as* **EXHIBIT B***, hereto*. The EA Brief does not mince words in stating, "[T]he eviction action concerns only the Lease between Mr. Lindsay (as landlord) and Mr. Reichert (as tenant)[.]" *Id*. *at p. 2:23-24*. Through Mr. Tucker, Ms. Stangel has admitted, "***The separate agreement [Texas Contract]*** in which it was contemplated that Mr. Lindsay would convey title to the property occupied by Mr. Reichert and Ms. Stangel ***was a separate and independent employment/services contract that is currently the subject of separate litigation in federal court[.]***" *Id*. *at p. 3:4-8* (emphasis added).

Mr. Tucker argued that "[T]he Lease obligates Mr. Reichert … Ms. Stangel is not a party to the Lease, though she occupies the Property with Mr. Reichert." *Id. at p. 4:1-13*. He went on to state, "This agreement between Ms. Stengel [sic] and Mr. Lindsay ***is not integrated into the Lease***, ***does not involve Mr. Reichert as a party***, and is conditional on Ms. Stangel's performance of services." *Id. at p. 4:14-25* (emphasis added). Mr. Tucker argued that the EA only alleges violations by Mr. Reichert. *Id. at p. 5:5-20*. Counsel for Ms. Stangel/Mr. Reichert argued that *this* action involves totally different claims "address[ing] title and conveyance issues under the separate agreement but ***it does not involve eviction or possession rights under the Lease***." *Id. at* p. 5:21-25 (emphasis added).

Mr. Tucker vigorously argued that "The governing agreement for occupancy is the Lease, which creates a landlord-tenant relationship … ***Ms. Stangel is not the named tenant*** [.]" *Id. at p. 8:7-18* (emphasis added). Mr. Tucker argued that, "Here, no equitable interest vests until (if ever) Ms. Stangel completes services, and ***the Lease controls possession independently***, ***and she is not the identified tenant in the lease agreement***." *Id. at p. 8:21-24* (emphasis added).

Mr. Tucker vehemently insisted that, "While Ms. Stangel co-occupies, ***she is not a Lease party***, ***and the eviction targets Mr. Reichert*** and 'all occupants' under the Lease, not the separate [Texas Contract]. Ms. Stangel does not "succeed" to a purchaser's interest under the Lease; ***her claims are separate***." *EXHIBIT A hereto at p. 9:1-8*. Mr. Tucker neatly summed up Ms. Stangel's position in the EA asserting that "The eviction action involves a residential lease governed by ARLTA, separate from Ms. Stangel's title-related claims in federal court." *Id. at p. 10:5-6*. The Lease related actions only involve Mr. Reichert.

    b. *The Timing Involved in the EA and Inspection Do Not Show Retaliation, but a Landlord Seeking to Vindicate Lawful Landlord Rights of Inspection and Remedies for Mr. Reichert's Violations of the Lease*.

On top of Ms. Stangel's admissions that the Lease and related activity has nothing to do with any rights created under the Texas Contract (and therefore cannot constitute

retaliation under that contract), the Lease related actions show Mr. Lindsay dealing only with Mr. Reichert's violations and requests for repairs. On April 23, 2025, Mr. Lindsay sent a Notice of Default ("Default Notice") specifically to Mr. Reichert alleging his failure to obtain (and provide proof of) proper insurance under his own name while naming Mr. Lindsay as an "additional insured," and for failure to reimburse Mr. Lindsay for taxes Mr. Lindsay was forced to pay on Mr. Reichert's behalf. *See April 23, 2025, Default Notice attached as **EXHIBIT C**.*

The Default Notice gave Mr. Reichert the statutorily required ten (10) days to cure these violations, making the cure date end at 11:59pm Saturday, May 3, 2025 (moved to Monday, May 5, 2025, to avoid the weekend). *Id*. Mr. Reichert received the Default Notice on April 29, 2025, according to the return receipt, which Mr. Lindsay undertook to restart the ten-day clock from Mr. Reichert's receipt even though the statute does not require this; Mr. Lindsay just wanted the violations cured. *See April 29, 2025, Return Receipt attached as **EXHIBIT D**.* From April 29th, the voluntarily extended cure period gave Mr. Reichert until 11:59pm Friday, May 9, 2025, to cure. *Id*.

Far from retaliation, Mr. Lindsay had not heard a single word from Mr. Reichert and Mr. Lindsay gave until Monday, May 12, 2025, before taking any action and to allow Mr. Reichert to give ***any*** response whatsoever. *See May 13, 2025, Notice of Termination attached as **EXHIBIT E**.* Hearing none, Mr. Lindsay sent Mr. Reichert a Notice of Termination and Notice to Vacate (the "Termination Notice") on May 13, 2025—20 days after sending the Notice of Default and receiving no communication from anyone. *Id*. The termination notice stated that the failure to cure (even within the grants of extra time) meant that Mr. Lindsay would retake possession and be at the Property to collect the keys and inspect the same on Thursday, May 22, 2025. *Id*.

The first word Mr. Lindsay ever received on behalf of Mr. Reichert (or anyone) was Mr. Tucker's May 16, 2025, letter (the "Representation Letter"). *Exhibit A*, *hereto*. In the

Representation Letter, Mr. Tucker ***admits*** that Mr. Reichert, needed to come into compliance with the Lease, had not cured within the statutory cure period, but rather, was "prepared to: 1. Obtain a new insurance policy compliant with the Lease … [and] 2. Reimburse the 2024 property taxes[.]" *Id*. So, Mr. Reichert received far more leniency and time than the statutes require of a landlord for him to cure his admitted breaches and he failed to timely do so. *Id*. After some communication between Mr. Tucker and counsel for Mr. Lindsay, it became clear that Mr. Reichert would not amicably return possession, and this office notified Mr. Tucker the inspection would be postponed to a later date. *See May 21, 2025, Email from D. Rob Burris to Mr. Tucker attached as **EXHIBIT F***.

On September 3, 2025, Mr. Reichert (alone) wrote a letter (the "HVAC Demand") to Mr. Lindsay demanding his tenant's rights that Mr. Lindsay undertake approximately $31,500.00 in HVAC repairs or risk a lawsuit for uninhabitability. *See September 3, 2025, HVAC Demand attached as **EXHIBIT G***. Arizona law dictates that such request for repair negates any need for notice prior to inspections and Mr. Lindsay notified Mr. Reichert of the same. *See October 30, 2025, Email attached as **EXHIBIT H**, at p. 2* (explaining to Mr. Tucker, that a repair request waives inspection notices under A.R.S. § 33-1343). After lengthy discussions and attempts to get approvals from the Town of Bisbee, Mr. Lindsay notified Mr. Reichert that he would be inspecting the Property as he had not seen it since April of 2024 and such a large project was impending based on his request. *See November 20, 2025, Notice of Inspection ("Inspection Notice") attached as **EXHIBIT I***.

The November 20th Inspection Notice cited to laws that allow the landlord access to inspect or make agreed repairs without notice—due to the tenant's request for repairs (A.R.S. § 33-1343) but still gave Mr. Reichert weeks of notice with a menu of dates from which Mr. Reichert could conveniently choose. *Id*. Despite this explanation for the inspection, Mr. Tucker accused Mr. Lindsay of entering the premises for "ethically

inappropriate" harassment purposes. *See November 20, 2025, Email Chain between Mr. Tucker and Counsel for Mr. Lindsay attached as **EXHIBIT J**.*

Counsel undersigned responded, explaining: (1) a landlord has 48-hour rights of inspection (Mr. Lindsay gave weeks' notice) and was amicably trying to work out a mutually agreeable date; (2) Mr. Lindsay would not be present to prevent any allegations of harassment; (3) the inspection was in response to the tens of thousands of dollars in repairs to be done; (4) the inspection was also noticed in the May 21, 2025 email as forthcoming; and (5) Mr. Lindsay was unaware of the current status of the Property since April of 2024. *Id*. On November 21, 2025, thereafter, Mr. Tucker agreed to a December 17, 2025, inspection date but still pretended as though Mr. Lindsay had failed to provide an explanation for the inspections. *See November 21, 2025, Email from Mr. Tucker attached as **Exhibit K*** ("I would appreciate receiving a written clarification regarding the specific purpose of the requested entry[.]"). The inspection took place on December 17, 2025, with Mr. Tucker, as all had agreed, with work crews scheduled to complete HVAC work in January of 2026. *2AC (Doc. 12) p. 5:18.*

**III.   LEGAL STANDARD.**
  a. *Ms. Stangel is Judicially Estopped to Add Claims that the EA or Lease-Related Actions are Retaliation or Bad Conduct in this Matter When She Argued Both Were Wholly Unrelated to this Action*.

The Doctrine of Judicial Estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (U.S. 2001) (*Quoting 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000)*). "Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory[.]" *Id*. (*quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981)*).

The purpose is "to protect the integrity of the judicial process, … by prohibiting parties from deliberately changing positions according to the exigencies of the moment" *Id. at 749-750* (internal quotations and citations omitted). Courts look at whether the later position is clearly inconsistent, whether there was success on that prior position, and whether such inconsistent later position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id. at 750-751*. "[W]e do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id*. "Additional considerations may inform the doctrine's application in specific factual contexts." *Id*.

Given Ms. Stangel's arguments in the EA, through Mr. Tucker, it is clear that she intends to shift her view of the truth depending on which case and when it suits her. Mr. Tucker unequivocally argued that (1) Mr. Reichert is the only one with possessory interests and is the only one party to the Lease, (*EXHIBIT B, hereto at pp. 2:23-24, 4:1-13*, & 5:5-20); (2) the Eviction Action is only aimed at Mr. Reichert (*Id. at pp. 2:23-24, 3:4-8, & 9:1-8*); (3) the two contracts are entirely separate and in no way able to be construed together (*Id. at pp. 3:4-8, 4:19-25*); (4) the Texas Contract neither involves the Lease nor grants Ms. Stangel possessory rights (*Id. at pp. 5:21-25*); and (5) Ms. Stangel is not named as a tenant and is not the focus of the EA or any rights or obligations pursuant to the Lease. (*Id. at pp. 8:7-18, and 8:21-24*).

Being that Ms. Stangel is merely Mr. Reichert's guest, has no possessory rights against which retaliation could even accrue, was not required to be present for any inspection or involved in the EA, then none of the actions related to the EA or the Lease have to do with her outside of the fact that her "partner" is the lessee. The truth-claims in the EA Brief are mutually exclusive – and diametrically opposed – to the claims in the 2AC. So, either Ms. Stangel is lying to the EA Court or here, but neither should be permitted.

As discussed in more detail below, allowing these mutually exclusive statements to stand together will not protect judicial integrity and will absolutely pose an unfair detriment to Mr. Lindsay in his administration of the Property as landlord (including the $31,000.00+ requested repairs still to be completed). Every new attempt to lawfully function as landlord will be the subject of, yet another motion to amend for retaliation. It is absurd. Further, because counsel undersigned is a large focus of the new allegations, this could disqualify counsel because such firm members would be witnesses and advocates at the same time, which is impermissible. Therefore, refusing to estop the inter-court deception would expand litigation, cause Mr. Lindsay to have to search for new counsel, and unduly impinge on this Court's determination of the MtD.

  b. *<u>Ms. Stangel's 2AC Fails to Meet the Forman Standards and Must Be Denied</u>*.

While Rule 15(a) does allow the Court to exercise discretionary approval of amendments after the first amended complaint, case law qualifies when such leave should ***not*** be granted—as here. *FRCP 15(a)(2)*. Leave is discretionary and should be denied for (a) undue delay, (b) bad faith, (c) dilatory motive, (d) undue prejudice to the defendant, and (d) futility of such amendment. *See Forman v. Davis*, 371 U.S. 178, 182 (U.S. 1962); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373, (9th Cir. 1990) (citing Foman factors, as well as 'previous amendment'). Denials of leave to amend are reviewed for an "abuse of discretion." *Id*.

  1. **Granting the 2AC Will Cause Mr. Lindsay Extreme Prejudice**.

"Prejudice is the 'touchstone' of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In the absence of prejudice, the opposing party may make a strong showing of the remaining *Forman* factors to affect denial of a motion for leave to amend. *Id*. The Ninth Circuit has similarly denied motions for leave to amend that were later upheld due to wide expansions of litigation costs and time caused by the new theories. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-1388 (9th Cir. 1990)

(noting that having to re-litigate a related matter is also disqualifying as the EA would need to be relitigated here).

Permitting the 2AC will expand the scope of the argumentation in the MtD and will cause any relief granted by the Court to be partial unless, and until, Mr. Lindsay spends far more in litigation costs and time to address arguments that fail due to judicial estoppel and general fairness. *See proposed 2AC (Doc. 12-1)*, *at p. 3 and ¶¶ 137-181*. The 2AC is nothing more than Ms. Stangel's attempt to bolster her facts section of her MtD Opposition by adding additional allegations that some kind of bad conduct occurred in Arizona. *Id.* Nothing could be farther from the truth: the timeline presented above shows that Mr. Tucker does not see the EA or Lease-related activity as implicating the Texas Contract at all. It also proves that Mr. Lindsay has bent over backward to accommodate Mr. Reichert and stay far away from Ms. Stangel. It would prejudice Mr. Lindsay to permit these blatantly untrue allegations.

This would deeply prejudice Mr. Lindsay's ability to lawfully exercise his landlord rights and obligations without being punished for "retaliation" in this action. Mr. Reichert asked Mr. Lindsay to conduct $31,000.00+ in repairs. Mr. Lindsay had representatives inspect the Property in preparation for this massive work and to see what the current state of the Property was in the "before work" condition. For Mr. Lindsay to bear ever-increasing allegations of "retaliation" for doing what Mr. Reichert asked and exercising his lawful right to enforce the Lease (as against Mr. Reichert) cannot be the law because Mr. Reichert's girlfriend is his guest at the Property and nothing more. Failing to deny the 2AC will strip Mr. Lindsay (functionally) of all of his lawful landlord rights and ability to act on obligations free of "retaliation" claims.

It would further cause Mr. Lindsay prejudice because his attorneys might have to remove themselves from the case to serve as witnesses against the new fallacious allegations in the 2AC. If sending lawful Default Notices (that Mr. Tucker admitted went uncured

within the time allowed) and seeking to vindicate his rights under the Lease is alleged bad conduct, then counsel undersigned would have to take the stand to refute such allegations. It cannot be the law that such absurd results come to pass and cause Mr. Lindsay exceedingly more in time and costs to restart the matter with new counsel.

Furthermore, allowing the 2AC will prejudice Mr. Lindsay to (essentially) have to relitigate the EA here in this federal court. The 2AC puts this Court in a position where it will have to determine whether Mr. Lindsay had the landlord rights he claimed to assert and then to determine whether he lawfully executed on those rights and/or lawfully executed his obligations under the Lease. If Mr. Lindsay acted lawfully, then there can be no retaliation. But the Court will have to endeavor to make such a determination even though Mr. Tucker has already vehemently argued that the EA and the Lease have no bearing on this action. But if the Court allows the 2AC, Mr. Lindsay will have to re-litigate every step of the EA.

2. **Granting the 2AC Will Cause Undue Delay**.

Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Clearly, Ms. Stangel ought to have known the date of closing added on page three to five of the Proposed 2AC. *(Doc. 12-1)*, *at p. 3-5*. All of these new allegations regard when the parties arrived in Bisbee for the signing, that the Texas Contract was signed that day, the drafting of the Lease and Texas Contract, and whether Ms. Stangel felt at "home" at the Property in April of 2024. *Id*. These clearly fail the "knew or should have known" test applied to undue delay as they predate the 1AC.

While the inspection arose after the September 29, 2025, 1AC, the underlying facts surrounding the EA and the Lease-Related activities arose in 2024 and through Mr. Reichert's September 3, 2025, HVAC Demand for $31,000.00+ in HVAC repairs. *See EXHIBITS A, C-G attached hereto*. Being that Ms. Stangel is judicially estopped to argue that

the Texas Contract is unified to the Lease—and Lease activity to enforce rights against Mr. Reichert is tantamount to retaliatory activity against her—this should also be a ground for denying the 2AC as simply a dilatory tactic.

### 3. **Granting the 2AC Will Permit Ms. Stangel's Bad Faith Conduct and Wrongful Motive**.

The diametrically opposed positions Ms. Stangel's counsel takes here versus in the EA shows rank bad faith conduct that this Court is permitted to exclude by judicial estoppel. Ms. Stangel knows full-well that she is not a party to the Lease and that the Texas Contract does not afford her any possessory rights in the Property. So, for her to assert here that a completely separate action against the tenant at the Property is somehow aimed at her (who has no equitable or possessory rights in the Property) is the kind of bad faith the Court must preclude from passing.

Expanding the exposure of Mr. Lindsay for undertaking prudent and lawful means to exercise his rights and duties as landlord is also an attempt to use this Court as a cudgel against Mr. Lindsay in the EA Action: this is bad faith. Mr. Lindsay was entitled to reimbursement for sums he paid that Mr. Reichert was supposed to pay (remember: neither Mr. Reichert nor Ms. Stangel pay any rent to Mr. Lindsay). He was also entitled to enforcement of the Lease provision that required Mr. Reichert to obtain *his own insurance policy naming Mr. Lindsay as "additional insured."* Arizona law unequivocally grants Mr. Lindsay the right to inspect the Property with forty-eight (48) hours' notice and *especially when Mr. Reichert requested he enter and make costly repairs*. There is no other category of behavior but "bad faith" to describe attempts to penalize Mr. Lindsay for simply doing what Arizona law allows all landlords to do. This is just Ms. Stangel's bad faith attempts to unlawfully strip Mr. Lindsay of his landlord rights.

It also exhibits bad faith that Ms. Stangel is attempting to unduly supplement the facts section of her MtD Opposition with the unlawful additions to the 2AC. The rules allow Mr. Lindsay to move to dismiss the operative complaint and such right cannot be

circumvented by Ms. Stangel's use of judicially estopped new allegations that fly in the face of fairness and justice by any measure.

Imagine living rent free in the $1.2 million Bisbee Firehouse, Mr. Reichert refusing to honor his few lease obligations to get his own insurance and pay taxes, and then using Mr. Lindsay's good faith attempts to bring Mr. Reichert into compliance and to address Mr. Reichert's repair requests as "bad conduct" in Arizona to defeat a MtD for lack of jurisdiction. The bad faith is rife and does not pass the "smell test" or any test for that matter. Mr. Lindsay has been very patient and afforded Mr. Reichert more than the statutorily mandated time to cure and Mr. Reichert failed utterly to cure. Ms. Stangel should not be permitted to use this Court as an attack dog to strip Mr. Lindsay of rights he attempts to obtain as to Mr. Reichert (who is not party to this action).

4. **Granting the 2AC Will Be Futile**.

Given that Ms. Stangel is judicially estopped to assert her claims in the 2AC, it would be futile to grant leave for such amendment. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The *Bonin* court further stated that it is not an abuse of discretion to deny a motion for leave to amend for futility shown by no new facts, only new theories, and a failure to explain why plaintiff failed to assert the claims originally. *Id*. The *Bonin* court upheld the denial of the motion for leave to amend, *inter alia*, because some claims were duplicative, patently frivolous, or both. *Id. at 846*.

Here, the new claims are futile because they are patently frivolous. Ms. Stangel has no possessory rights in the Property by her own admission in the EA. The Texas Contract for her travel coordinator services does not create any possessory rights in the Property. She no more needed to participate in the inspection (undertaken pursuant to Mr. Reichert's request for repairs) than she was to participate in the EA that only involved Mr. Reichert and not her. When you add to this that Arizona law will not strip Mr. Lindsay of his lawful

and prudently exercised landlord rights simply because she has made wildly fallacious allegations, you come to the result that it would be futile to allow Ms. Stangel to amend her Complaint a second time to include such improper allegations.

Mr. Reichert requested major repairs be done on the Property. Mr. Lindsay obliged and, as a result, undertook to have the Property inspected by agents rather than himself for the purpose of not disturbing any occupants. Indeed, Mr. Tucker has threatened further lawsuits against Mr. Lindsay for—what Mr. Tucker feels is—excessive delay in getting the half of the HVAC system back up to his liking. Mr. Lindsay cannot win if the Court allows the 2AC. He will be penalized for fixing the Property and he will be penalized for not fixing the Property. He will be disallowed to get any benefit of the Lease or be hit with "retaliation" claims here. He will get no rent (per the no-rent Lease), and he will be forced to endure any treatment Mr. Reichert or Ms. Stangel put the Property to if the 2AC is granted. This cannot be the law in Arizona or in the federal district courts.

Instead, the law will vindicate Mr. Lindsay's rights to demand Mr. Reichert timely cure, and this will make *futile* Ms. Stangel's claims that attempts to do so are "bad acts." The law will show that Mr. Lindsay *did* have a right to inspect the Property given the year and a half (plus) since he'd last had anyone look at the Property prior to major work requested by Mr. Reichert. This will make Ms. Stangel's 2AC allegations futile. The law will vindicate Mr. Lindsay's rights to enforce contracts (like the Lease) that have zero to do with Ms. Stangel (by Mr. Tucker's own admission) and Ms. Stangel cannot interfere: this will make the 2AC futile. The law will vindicate the fact that Mr. Lindsay more-than-generously allowed time for Mr. Reichert to cure, and Mr. Reichert failed to timely do so. That will make the 2AC futile. Because the law will not hold that a landlord loses all landlord rights or contract rights once the girlfriend of a tenant lobs wild allegations at him: the 2AC is futile.

**WHEREFORE**, Defendant respectfully requests that this Court enter an order denying Plaintiff's Motion for Second Amended Complaint.

RESPECTFULLY SUBMITTED this 5th day of January 2026.

BURRIS & MACOMBER, PLLC

*/s/ Jeremy T. Shorbe*
D. Rob Burris, Esq.
Jeremy T. Shorbe, Esq.
*Attorneys for Defendant*

ORIGINAL e-filed this
5th day of January 2026 to:

Clerk of the United States District Court
405 West Congress Street, Suite 1500
Tucson, AZ 85701

Copy of the foregoing e-served
this 5th day of January 2026 to:

Silence Law Group, PLLC
20235 N. Cave Creek Rd., Ste. 104 # 460
Phoenix, AZ 85204
Jeffrey Silence, Esq.
jeff@silencelaw.com
Trevor Cook, Esq.
trevor@silencelaw.com

Shields Petitti & Zoldan, PLC
James Burr Shields
burr@shieldspetitti.com
*Attorneys for Plaintiff*

By: */s/Jo Lynn Goldener*