*Exhibit "A "*



**Mark A. Tucker**
admitted in AZ
**J. McKay Tucker**
admitted in AZ

**TUCKER LAW**

TUCKER LAW GROUP P.C.
40 N Center, Suite 104
Mesa, Arizona 85201
(480)633-9466, tuckerlawaz.com

**Mark A. Tucker, Esq.**
mark@tuckerlawaz.com
480-633-9466
Arizona Office

<u>*Sent Via Certified Mail First-Class Mail and E-mail To:*</u>

May 16, 2025

Jeremy T. Shorbe, Esq.
Burris & Macomber, PLLC
2478 E. River Road
Tucson, Arizona 85718
Email: jeremy@burrismaoomber.coen

  Re: 6 Naco Rd., Bisbee, Arizona 85603 APN: 103-62-273A & 103-62-459A
    Response to Invalid Notice of Termination and Notice to Vacate

This firm represents Beau Reichert and Cameron Stangel, tenants of the property at 6 Naco Road, Bisbee, Arizona 85603 (the "Property"), owned by your client, Jeff Lindsay. We write in response to your letters dated April 23, 2025, and May 13, 2025, which allege a default, purport to terminate the Residential Lease Agreement dated April 12, 2024 (the "Lease") (Exhibit 1), and demand vacation of the premises. For the reasons outlined below, both notices are procedurally and substantively invalid under the Arizona Residential Landlord and Tenant Act, A.R.S. § 33-1301 et seq. (the "Act"), and the Lease. We respectfully request that your client withdraw these notices and refrain from further interference with our clients' tenancy.

The Lease, a fixed-term agreement from April 12, 2024, to April 9, 2027, remains in effect with nearly two years remaining. Your May 13, 2025, notice relies on the April 23, 2025, letter, which alleges breaches for failure to provide proof of insurance and pay property taxes, demanding $6,341.34. The April 23rd notice is defective under A.R.S. § 33-1368(B), which requires a five-day notice for non-payment, specifying the amount and basis for the demand. The ten-day notice provided misapplies A.R.S. § 33-1368(A), which governs material breaches, not monetary defaults, and lacks the specificity and opportunity to cure required by A.R.S. § 33-1368(B). As a result, the May 13th termination notice is invalid, as Arizona law requires proper notice and a court-filed eviction action for termination of the lease.

Our clients fulfilled their Lease obligations to maintain insurance and pay property taxes. Beau Reichert fulfilled his lease obligation by paying for a comprehensive home insurance policy, naming Lindsay as an additional insured. Thereafter, without notice, your client canceled this policy, reversed the our client's payment, and obtained a duplicate insurance policy in its place. Similarly, Mr. Lindsay paid the 2024 property taxes on October 31, 2024 (Exhibit 2), without first providing the tax bill to our client, or requesting reimbursement, despite knowing their obligation under the Lease. The Lease does not authorize Mr. Lindsay to cancel insurance or pay taxes on their behalf. By obstructing their performance and then alleging breach, Mr. Lindsay's actions violate the implied covenant of good faith and fair dealing, which requires parties to act honestly and fairly without undermining the contract's purpose (*Rawlings v. Apodaca*, 151 Ariz. 149 and

the statutory duty of good faith set forth in the Ariona Residential Landlord and Tenant Act, A.R.S. § 33-1310(5) and A.R.S. § 33-1311.

By canceling the insurance policy and paying taxes without notice, Lindsay actively prevented our client from fulfilling his lease obligations. This sabotage constitutes bad faith, as it obstructs their performance *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420. Your clients bad faith is underscored by the timing of your notices and raises concerns about retaliatory intent.

On December 6, 2024, Ms. Stangel, through counsel, sent a demand letter to Mr. Lindsay asserting claims for breach of her employment contract and sexual harassment (Exhibit 4). This contract, dated April 12, 2024, promises Ms. Stangel ownership of the Property upon completing 520 days of travel coordination or by April 10, 2027. Mr. Lindsay's lease termination attempt, following Ms. Stangel's lawful refusal to engage in illegal activities he requested, may be an effort to evade this obligation, violating A.R.S. § 33-1381(A), which prohibits retaliatory actions against tenants pursuing legal remedies.

The April 23rd demand for payment and inspection lacks the five-day notice required by A.R.S. § 33-1368(B) for payment and the specific timing mandated by A.R.S. § 33-1343 for inspections. The May 13th demand for immediate vacation and surrender of keys contravenes A.R.S. § 33-1375, which protects tenants' quiet enjoyment.

To resolve this matter, our clients are prepared to:

1.  Obtain a new insurance policy compliant with the Lease, provided Mr. Lindsay does not interfere further

2.  Reimburse the 2024 property taxes upon receipt of the tax bill and a proper demand.

We respectfully request written confirmation by May 31, 2025, that the April 23rd and May 13th notices are withdrawn and that no further action will be taken to disrupt our clients' tenancy. Please direct all future communications to this office. Thank you.

Yours truly,

Mark A. Tucker
Attorney for Beau Reichert and Cameron Stangel

cc: Clients

Enclosures:      Exhibit 1 (Lease),
                 Exhibit 2 (Tax Receipts)
                 Exhibit 3 (State Farm Insurance)
                 Exhibit 4 (Stangel Demand Letter)



**40 N. CENTER, SUITE 104, MESA AZ 85201**
**PHONE: 480-633-9466**
**E-MAIL: ATTORNEY@TUCKERLAWAZ.COM**

**Lease**

# EXHIBIT 1

**Residential Lease Agreement**

**Parties:** This Lease Agreement is entered into on April 12, 2024, between Jeff Lindsay, hereinafter referred to as "Landlord," and Beau Reichert, hereinafter referred to as "Tenant."

**Property:** The Landlord hereby leases to the Tenant the property located at 6 Naco Rd. Bisbee, AZ, including all fixtures and furnishings, for a period of three (3) years, commencing on 4/12/2024 and ending on 4/9/2027.

**Utilities:**

- The Tenant shall be responsible for paying all utility bills, including but not limited to electricity, water, gas, and internet, for the duration of the lease term.
- The Tenant shall also be responsible for maintaining utility accounts in their name and ensuring timely payment of all utility bills.

**Insurance and Taxes:**

- The Tenant shall obtain and maintain comprehensive home insurance throughout the lease term, with coverage for personal property and liability, with the Landlord named as an additional insured party.
- The Tenant shall be responsible for paying any property taxes associated with the leased premises during the lease term, directly to the relevant tax authority.

**Maintenance and Repairs:**

- The Tenant shall be responsible for routine maintenance and minor repairs to the leased premises, including but not limited to lawn care, cleaning, and replacing light bulbs.

**Governing Law:** This Lease Agreement shall be governed by and construed in accordance with the laws of Arizona.

**Entire Agreement:** This Lease Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures:** The parties hereto have executed this Lease Agreement as of the date first above written.

[Landlord's Signature]                                    [Tenant's Signature]

[Landlord's Name]                                         [Tenant's Name]

Jeff Lindsay                                              Beau Reichert

[Date]                                                    [Date]

4/15/2024                                                 4/15/2024

## Residential Lease Agreement

**Parties:** This Lease Agreement is entered into on April 12, 2024, between Jed Lindsay, hereinafter referred to as "Landlord," and Beau Reichert, hereinafter referred to as "Tenant."

**Property:** The Landlord hereby leases to the Tenant the property located at 6 Main Rd. Bisbee, AZ, including all fixtures and furnishings, for a period of three (3) years, commencing on 4/12/2024 and ending on 4/9/2027.

### Utilities:

- The Tenant shall be responsible for paying all utility bills, including but not limited to electricity, water, gas, and internet, for the duration of the lease term.
- The Tenant shall also be responsible for maintaining utility accounts in their name and ensuring timely payment of all utility bills.

### Insurance and Taxes:

- The Tenant shall obtain and maintain comprehensive home insurance throughout the lease term, with coverage for personal property and liability, with the Landlord named as an additional insured party.
- The Tenant shall be responsible for paying any property taxes associated with the leased premises during the lease term, directly to the relevant tax authority.

### Maintenance and Repairs:

- The Tenant shall be responsible for routine maintenance and minor repairs to the leased premises, including but not limited to lawn care, cleaning, and replacing light bulbs.

**Governing Law:** This Lease Agreement shall be governed by and construed in accordance with the laws of Arizona.

**Entire Agreement:** This Lease Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures:** The parties hereto have executed this Lease Agreement as of the date first above written.

[Landlord's Signature]                                    [Tenant's Signature]

[Landlord's Name]                                         [Tenant's Name]



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

**Cochise County Tax Receipts**

# EXHIBIT 2



# Cochise County Treasurer
## Tax Receipt

Paid By:  LINDSAY JEFF
PO BOX 133
PECOS , TX 79772

| Batch: | 7003496 |
| --- | --- |
| Payment Date: | 10/31/2024 |
| Interest Date: | 10/31/2024 |
| DUPLICATE Printed: | 5/15/2025 |
| As Of Date: | 5/15/2025 |

| Parcel Number | Description | | Amount Paid | Rate | Certificate |
| --- | --- | --- | --- | --- | --- |
| 10362273A8 | 2024 | TAX | $4,938.78 | | |
| | | **Total Paid:** | **$4,938.78** | **2024 Due:** | **$0.00** |
| | SURFACE TO DEPTH OF 40' OF COPPER JACK LODE MINING CLAIM MS#1047 WARREN MNG DIST DESC BY M&B BEG N89DEG 30MIN 58SEC W425.06' FROM COR #2 N35DEG 23MIN 45SEC E60.10' N46DEG 21MIN 16SEC E12.57' THN S41DEG 30MIN 45SEC E10.78' S43DEG 22MIN 14SEC E35.58' THN ALONG CURVE TO RIGHT 9.94' THN S46DEG 30MIN W69.94' N43DEG 50MIN W44.57' TO POB AKA REP OF SURVEY BK6 PG10 PCL I & III .084AC | | | | | |
| **Totals** | | **Total Paid:** | **$4,938.78** | | |
| | | **Receipt Balance:** | **$0.00** | | |

Date: 5/15/2025 9:42:43 PM; UTC



# Cochise County Treasurer
## Tax Receipt

Paid By: LINDSAY JEFF
PO BOX 133
PECOS , TX 79772

Batch: 7003496
Payment Date: 10/31/2024
Interest Date: 10/31/2024
DUPLICATE Printed: 5/15/2025
As Of Date: 5/15/2025

| Parcel Number | Description | Amount Paid | Rate | Certificate |
|---|---|---|---|---|
| 10362459A2 | 2024 TAX | $304.76 | | |
| | Total Paid: | $304.76 | 2024 Due: | $0.00 |
| | REC OF SUB PLAT BK13 PG95 CHIHUAHUA HILL ADDN LOT 10 EXCPT THE FLLWING DESC PCL COMM AT THE NE COR LOT 10 THN N73DEG 06MIN 13SEC W18.40' TO THE POB S27DEG 43MIN 45SEC W6.66' N64DEG 05MIN 44SEC W23.57' N27DEG 43MIN 45SEC E2.90' S73DEG 06MIN 13SEC E23.99' TO THE POB SEC 9-23-24 .079AC | | | |
| Totals | Total Paid: | $304.76 | | |
| | Receipt Balance: | $0.00 | | |

Date: 5/15/2025 9:44:20 PM; UTC



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

## Proof of Insurance Payment

# EXHIBIT 3

6:54     LTE  

‹    Adv Plus Banking – 3678

**5 items found**

Dec 13, 2024
STATE FARM RO 27 DES:CPC-
CLIENT ID:24 J XXXXX81262
INDN:JEFF LINDSAY CO
ID:XXXXX13004 WEB

$1,098.00
$0.00

Nov 13, 2024
STATE FARM BILLG
DES:PAYMENTS ID:DN9UN9K0
INDN:REICHERT BEAU CO
ID:XXXXX00009 TEL

-$284.00
$0.00

Nov 13, 2024
STATE FARM BILLG
DES:PAYMENTS ID:DN9UP8GX
INDN:LINDSAY JEFF CO
ID:XXXXX00009 TEL

-$1,098.00
$0.00

May 29, 2024
STATE FARM RO 08 DES:CPC-
CLIENT ID:24 J XXXXX81262
INDN:JEFF LINDSAY CO
ID:XXXXX13400 TEL

-$1,098.00
$0.00

May 24, 2024
STATE FARM RO 08 DES:CPC-
CLIENT ID:24 J XXXXX73262
INDN:BEAU REICHERT CO
ID:XXXXX13400 TEL

-$284.00
$0.00

Investment, insurance and annuity products:

• Are Not FDIC Insured
• Are Not Bank Guaranteed
• May Lose Value



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

## DECEMBER 5, 2024 DEMAND LETTER

# EXHIBIT 4



Advocates for Workplace Fairness

Gregory S. Chiarello, Esq.
gchiarello@outtengolden.com

December 6, 2024

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

**Via E-mail**
Jeffery A. Lindsay
Angeles Ranch
P.O. Box 133
Pecos, TX 79772
jeff@angelesranch.com

> **Re:    Cameron Stangel / Jeffery A. Lindsay and Angeles Ranch**

Dear Mr. Lindsay,

We represent Cameron Stangel regarding her employment relationship with you. Ms. Stangel has described for us a continuing course of alarming predatory and illegal behaviors perpetrated by you, including sexual misconduct, verbal harassment, and repudiation of the employment contract. Your conduct, as detailed below, gives rise to claims of assault and other tortious conduct, breach of contract, and violations of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1989 *et seq.*, all of which carry significant penalties. We write to explore whether you are interested in discussing a pre-suit resolution of Ms. Stangel's legal claims. In any event, all further communication from you or your representative should be directed to our attention.

**Background**

We understand that Ms. Stangel met you in or around October 2023, and that you immediately pursued a personal relationship with her. We have reviewed numerous text messages from you to Ms. Stangel complimenting her appearance, expressing that you miss her, and offering to make her "rich and famous." Ms. Stangel responded politely to those messages, but firmly ignored the flirtations contained therein.

In early 2024, Ms. Stangel and her partner, Beau Reichert, discovered a unique property for sale in Bisbee, Arizona (the "Bisbee Property," located at 6 Naco Rd., Bisbee, AZ 85603) that they sought to purchase. Exploiting Ms. Stangel's interest in the Bisbee Property, you made her an offer she could hardly refuse: you would purchase the Bisbee Property yourself and, in exchange for Ms. Stangel's travel coordination services for a period of up to three years, you would convey the Bisbee Property to her. In the meantime, Ms. Stangel would pay costs associated with the Bisbee Property.

You and Ms. Stangel memorialized this agreement in a contract executed by all parties in Arizona and commencing on April 12, 2024 (the "Service Agreement"). Through a separate residential tenancy

Jeffery A. Lindsay
December 6, 2024
Page 2 of 7

contract, you leased the Bisbee Property to Mr. Reichert for a period of three years beginning on April 12, 2024. Promptly thereafter, Ms. Stangel and Mr. Reichert moved into the Bisbee Property. In doing so, they incurred substantial costs, as they expected the move to be permanent.

## You Exploited the Service Agreement to Compel Ms. Stangel to Accept Your Sexual Advances

Pursuant to the Service Agreement, Ms. Stangel coordinated your travel throughout the spring and summer of 2024. She planned detailed itineraries and arranged for transportation and accommodations – not only for you, but also for herself, as you insisted that Ms. Stangel accompany you on your travels.

Taking advantage of the unequal power dynamic and exploitive nature of the Service Agreement, you frequently and increasingly placed Ms. Stangel in sexually vulnerable positions. For example, although unrelated to the travel coordination services contemplated by the Service Agreement, you frequently instructed Ms. Stangel to purchase new clothing to wear during these trips. You disapproved of her clothing choices and told her to "slut it up." You attempted to schedule couples' massages with Ms. Stangel and expressed anger when she refused. And more than once, you asked Ms. Stangel to share a hotel room with you, which she firmly refused.

Upon embarking on the Four Seasons Ancient Explorer Trip ("Four Seasons Trip"), an international travel experience spanning multiple countries from August 28 to September 20, 2024, your sexually inappropriate behavior intensified. On the trip, you repeatedly asked Ms. Stangel to privately model swimsuits for you in your hotel room and to share accommodations with you during the trip, despite her unwavering response that she did not want to do so. (You implied to others that Ms. Stangel was in a romantic relationship with you by joking that you did not share a hotel room only because Ms. Stangel snored.) Nevertheless, you required Ms. Stangel to collect you from your hotel room each morning, answering the door in varying states of undress – including shirtless with your pants low and unzipped, or in just your underwear with an open robe. On an almost a daily basis, you demanded that Ms. Stangel wait inside your hotel room while you dressed in front of her. Ms. Stangel averted her gaze and attempted to leave, causing you to anger, accuse her of "making things awkward," and insist that she remain in your room while you dressed. Ms. Stangel, who felt she had no choice but to comply, was deeply traumatized by these experiences.

In response to Ms. Stangel's rebuffs to your advances, you became increasingly hostile towards her and sought to coerce her compliance with your demands for sexual intimacy through more forceful tactics. On or about September 5, 2024, while in Bora Bora, you accused Ms. Stangel of misusing funds you had expressly told her to use for the trip and that she had documented through daily expense reports she duly provided to your secretary, Crystal Slade. You then claimed that Ms. Stangel owed you $20,000 and demanded repayment under explicit threat of legal action.

Your unfounded demands and needless yelling threatened Ms. Stangel's physical, financial, and emotional safety. This was by your design, as you ensured Ms. Stangel would be financially dependent upon you during the Four Seasons Trip by insisting that she rely only upon the cash and credit card you provided to her. As a result, Ms. Stangel brought only her personal debit card that was linked to an account with minimal funds. Your intentions in controlling Ms. Stangel's finances were clear: to place Ms. Stangel in a powerless and dependent position so that she would acquiesce to your advances. Indeed, you insisted that Mr. Stangel buy a new wardrobe for every trip (consistent with the provision in the Service Agreement providing that you would cover "all expenses associated with the Travel Coordinator position") and specifically directed Ms. Stangel to purchase expensive and provocative clothing, only to then accuse her of stealing when she would not model them or share a room with you.

Jeffery A. Lindsay
December 6, 2024
Page 3 of 7

Over the following days you escalated your intimidation tactics against Ms. Stangel, creating additional pressure for her to acquiesce to your sexual advances. On or around September 11, 2024, you again threatened legal action against Ms. Stangel if she did not pay you $20,000, and you demanded she return the credit card you had provided to her for purchases associated with the Service Agreement. You wondered aloud to Ms. Stangel whether you would remove her from the trip – again, knowing that she was financially reliant upon you – or whether you would forgive her "debt" and let her stay, suggesting she could remedy the situation by cooperating with your advances. The next morning, you forced Ms. Stangel to give you all of the cash in her possession, leaving her without any form of payment in a foreign country except the minimal funds available with her debit card. Mr. Reichert initiated a wire transfer to Ms. Stangel's bank account so that she had the ability to depart the Four Seasons Trip, but she understood that it may take days for the transfer to complete.

Fearful and alone, Ms. Stangel reported your abuse to a member of the Four Seasons staff, Susan Cegavske, and expressed she felt afraid for her safety. Ms. Cegavske loaned Ms. Stangel some cash so that she could make arrangements to escape your coercive control. In the meantime, Ms. Stangel struggled to manage your continued demands, including that she obtain prostitutes and opium for you (both of which were illegal in your location, Thailand). That evening – intoxicated, as you often were – you came to Ms. Stangel's hotel room, forced your way in, and then cornered her, blocking her exit. You then yelled at Ms. Stangel and demanded that she unpack her luggage in front of you. Ms. Stangel told you she felt trapped and unsafe, and begged you to leave. Only after her repeated pleas and increasing visible distress did you relent and leave the room.

Shortly after, in a meeting mediated by Ms. Cegavske and Javier Loureiro, the Four Seasons Director of Guest Experience, you admitted to your inappropriate behavior, making specific reference to Ms. Stangel's physical appearance in a disgusting attempt to justify your actions. You also admitted to forcibly cornering Ms. Stangel in her hotel room and demanding she unpack her luggage, expressed that you felt it was a problem that she was not more afraid of you, and admitted to taking her cash and credit card.

Importantly, you also stated during the meeting that you were cancelling the Service Agreement and no longer intended to perform your obligation under it to convey the Bisbee property. You repudiated the contract in no uncertain terms, stating, "I'm the owner of the fire station now." Ms. Cegavske and Mr. Loureiro have indicated their willingness to testify to these and other events that occurred on the trip.

**Ms. Stangel's Legal Claims Against You**

Your conduct gives rise to liability under several legal theories.

### A. *Trafficking Victims Protection Reauthorization Act ("TVPRA")*

Exploitive work arrangements, particularly those that are sexually exploitive, are illegal and come with significant legal penalties. Here, your abusive behavior towards Ms. Stangel violates the federal Trafficking Victims Protection Reauthorization Act. 18 U.S.C. § 1589 *et. seq.*; *see id.* § 1595(a) (providing civil remedy to victims of violations of the TVPRA). Specifically, Ms. Stangel has civil claims against you under § 1595 for conduct violating the forced labor, trafficking with respect to forced labor, and sex trafficking provisions of the TVPRA. 18 U.S.C. §§ 1589-91.

You are civilly liable to Ms. Stangel under the TVPRA's sex trafficking provision, 18 U.S.C. § 1591(a), which protects employees who are sexually abused under the guise of career advancement or

Jeffery A. Lindsay
December 6, 2024
Page 4 of 7

job-related duties. *Acevedo v. Exp. Realty, LLC,* 713 F.Supp.3d 740, 765 (C.D. Cal. 2024); *see also Canosa v. Ziff,* No. 18 Civ. 4115 (PAE), 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) (declining to dismiss TVPA claims against The Weinstein Company where the complaint alleged that Weinstein met with plaintiff "under the guise of working together on productions," and "t[ook] advantage of the seclusion of those meetings and his power as a well-known producer to sexually assault and intimidate her"). Here, you enticed Ms. Stangel to enter into the Service Agreement with you through the promise that you would convey the Bisbee Property, a property she could not otherwise afford. You then used the contractual agreement with Ms. Stangel to transport her abroad. While traveling abroad, you used coercive measures – stripping Ms. Stangel of financial means, threatening suit, threatening termination, forcible restraint, threatening physical force, and overt hostility – in a knowing attempt to cause Ms. Stangel to submit to your sexual advances. *See United States v. Hornbuckle*, 784 F.3d 549, 553-54 (9th Cir. 2015) (finding a sex act or sexual contact need not occur to establish elements of sex trafficking under 18 U.S.C. § 1591). That your conduct was intentional is evinced by the temporal proximity of these coercive measures following Ms. Stangel's expressions that your sexual advances were unwelcome. Finally, that you conditioned your obligations under the Service Agreement upon Ms. Stangel's submission to your sexual harassment and advances reveals their commercial nature. 18 U.S.C. § 1591(e)(3) (broadly defining "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person.").

Under the TVPRA's forced labor provision, 18 U.S.C. § 1589, you also are civilly liable to Ms. Stangel because you knowingly obtained and retained her services through threat of serious harm, and/or conduct intended to cause her to believe that she would suffer serious harm if she did not provide such services. Specifically, in response to Ms. Stangel's refusal to engage sex workers, obtain opium, model swimwear for you, enter your hotel room while you were undressed, stay in your hotel room and, implicitly, enter a sexual relationship with you, you took Ms. Stangel's cash and credit card and falsely accused her of theft, leaving her without the financial means to safely depart the Four Seasons trip and in fear of legal action. *See Estavilla v. Goodman Grp., LLC*, No. CV 21-68-M-KLD, 2022 U.S. Dist. LEXIS 31751, at *34 (Dist. Mon. Feb. 23, 2022) ("It is well-settled that financial pressure, including the threat of financial harm, may constitute serious harm under the TVP[R]A."); *Mairi Nunag-Tanedo v. E. Baron Rouge Parish School Board*, 790 F.Supp.2d 1134, 1146 (C.D. Cal. 2011) (finding sufficient allegations of serious harm under 18 U.S.C. § 1589 where plaintiffs would owe $5,000 debt to defendants if they left the employment relationship). You also violated Section 1589(a) when you prevented Ms. Stangel from leaving her hotel room until she unpacked her luggage, using and threatening physical force or restraint to cause her to continue working for you. Civil liability also arises due to violations of 18 U.S.C. § 1590(a) because you engaged in this conduct while transporting Ms. Stangel.

Ms. Stangel stands to recover substantial damages from you for her TVPRA claims. 18 U.S.C. § 1595(a) (plaintiffs "may recover damages and reasonable attorneys fees."). The Ninth Circuit has found not only that punitive damages are available, but also that conduct underlying a TVPRA claim "obviously meets the common law standards for award of punitive damages because it is both intentional and outrageous." *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).

### B. *Tort Claims – Assault, False Imprisonment, Intentional Infliction of Emotional Distress*

It is illegal to cause another person to fear imminent physical contact, to subject them to detention without consent, or to cause them severe emotional distress through intentional or reckless conduct. These behaviors give rise to liability under tort theories of assault, false imprisonment, and the intentional infliction of emotional distress ("IIED"), respectively. Under these theories, you are liable to Ms. Stangel for your sexually harassing and coercive conduct, including when you physically restrained Ms. Stangel

Jeffery A. Lindsay
December 6, 2024
Page 5 of 7

in her hotel room such that she feared use of physical force and deprived her of any economic means to escape your threatening presence.[1]

These claims give rise to substantial compensatory damages. *See, e.g., Farsakian v. Kent*, No. CV-20-00141-PHX-MTL, 2020 U.S. Dist. LEXIS 201243, at *15-16 (D. Ariz. Oct. 28, 2020) (finding $200,000 is a reasonable damages award for IIED claim where individual defendant caused plaintiff to fear termination of her employment if she did not acquiesce to his sexual advances); *Leavey v. UNUM/Provident Corp.*, 2006 U.S. Dist. LEXIS 34810, at *31-32 (D. Ariz. May 26, 2006) (finding $1.2 million in non-economic compensatory damages is reasonable even where injury resulted primarily from financial stress) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)).

We also expect Ms. Stangel will recover significant punitive damages against you for her tort claims due to the reprehensible and exploitative nature of your behavior. *See, e.g., Rode v. Credio*, No. CV-14-02354-PHX-SRB, 2016 U.S. Dist. LEXIS 12086, at *20-25 (D. Ariz. Aug. 3, 2016) (awarding $5,000,000 in compensatory damages and $5,000,000 in punitive damages for claims of assault, false imprisonment, and IIED in case involving sexual misconduct); *Kennedy-Burdick v. Czarnecki*, No. CIV 01-898 PCT RCB, 2023 U.S. Dist. LEXIS 28474, at *9 (D. Ariz. Sept. 9, 2003) (awarding damages for lost wages, damages for pain and suffering, and punitive damages for assault claim).

### C.  Breach of Contract

Breach of a contract gives rise to liability under Arizona law. You are liable to Ms. Stangel for breach of the Service Agreement under two theories. First, Ms. Stangel will show that you repudiated the Service Agreement when you expressed to her, in the company of Ms. Cegavske and Mr. Loureiro, that you were cancelling the Service Agreement and no longer intended to perform by conveying the Bisbee Property, stating, "I'm the owner of the fire station now." "An anticipatory repudiation is a breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 283 (1983).

Second, Ms. Stangel can recover from your breach of the implied duty of good faith and fair dealing. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002) (Arizona law "implies a covenant of good faith and fair dealing in every contract."). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* "Among other things, a party breaches this covenant by exercising discretion afforded under the contract for a reason beyond the risks assumed by the other party." *County of La Paz*, 224 Ariz. 590, 604 (Ariz. App. 2010). Conditioning Ms. Stangel's completion of the Services Agreement on her financial and sexual submission to you (in addition to your request that she illicitly obtain opium and prostitutes for you) plainly violates the implied duty of good faith and fair dealing inherent to the Service Agreement.

---

[1] While this conduct occurred abroad, we are confident that the Court's conflict of laws analysis will result in the application of Arizona substantive law for these claims, because (a) the claims arise from the Service Agreement, which you and Ms. Stangel executed in Arizona and which involves the conveyance of Arizona property, (b) Ms. Stangel is domiciled in Arizona, (c) Ms. Stangel suffered injuries in Arizona, and (d) the relationship between yourself and Ms. Stangel is centered in Arizona. *See Bates v. Superior Court*, 156 Ariz. 46 (1988) (applying factors listed in Restatement (Second) of Conflict of Laws, Section 145).

Jeffery A. Lindsay
December 6, 2024
Page 6 of 7

Ms. Stangel will have her choice of remedies to recover for your breach of the Service Agreement. In addition to damages for your breach of contract, Ms. Stangel will seek to recover specific performance of the Service Agreement, *i.e.*, conveyance of the Bisbee property to her. *Daley v. Earven*, 131 Ariz. 182, 187 (Ariz. App. 1981) (specific performance is a remedy available for breach of contract through repudiation). Specific performance is a typical remedy for breach of contracts involving the conveyance of real property "because land is thought to be unique and the remedy of damages is usually considered inadequate." *Canton v. Monaco Partnership*, 156 Ariz. 468, 470 (Ariz. App. 1987).

In addition to contract damages and specific performance, Ms. Stangel may also recover tort damages for your breach of the covenant of good faith and fair dealing because there exists a special relationship between the parties – namely, you leveraged the wealth disparity between yourself and Ms. Stangel by intentionally making Ms. Stangel an offer she could not refuse, and then used the resulting Service Agreement to exploit and sexually harass. *See Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355 (1991) ("Among the special relationships in which such tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage… Also, the assessment of tort damages for breach of contract is a device most often allowed in situations in which the rule restricting recovery to contract damages would promote breach of the contract rather than its performance.") (citations omitted).

***

As described above, Ms. Stangel has experienced significant financial, emotional and reputational harm as a result of your actions. While we estimate Ms. Stangel's damages to be substantial, she is open to settling her claims against you to avoid the time and expense of litigation. If you are interested in pursuing such a conversation, please contact us no later than December 13, 2024.

In the meantime, this letter also serves as notice of your obligations to take immediate steps to preserve all documents and information that may be relevant to this matter, including, but not limited to emails, texts, voicemails, and other communications. As such, you must immediately take action to avoid the destruction and/or deletion of any relevant materials, whether in electronic or paper form, including immediately implementing the following:

- Hold in abeyance any existing document retention and/or destruction policies or practices, including for cloud-based servers or storage, or any other actions that would result in the deletion of any material;

- Stop the automatic deletion of emails and other electronic data, including on cloud-based servers or storage;

- Secure and preserve videotape and audiotape video surveillance;

- Maintain all electronic data in reasonably accessible form, and

- Secure and preserve all computer or electronic hardware, including all hard-drives, laptops, iPhones or other smartphones, or any other similar equipment and devices.

Additionally, please take immediate steps to preserve any relevant documents and information that is contained on your personal devices and the personal devices of relevant employees or other

Jeffery A. Lindsay
December 6, 2024
Page 7 of 7

individuals under your control, including work and personal phones, tablets, laptops, computers, or any other devices.

The foregoing is without prejudice to any and all rights and remedies to which Ms. Stangel may be entitled under all applicable laws, and nothing in this letter shall be deemed a waiver of Ms. Stangel's rights and remedies at law or equity, which are expressly reserved.

Very truly yours,

Gregory S. Chiarello
Hannah C. Meropol

cc:    Cameron Stangel

Tucker Law Group, P.C.
40 N Center, Suite 104
Mesa AZ 85201

CERTIFIED MAIL®



9589 0710 5270 1738 4400 11

$5.82⁰
US POSTAGE
FIRST-CLASS
FROM 85204
05/16/2025
Stamps.com



BURRIS & MACOMBER, PLLC
Attn: Jeremy T. Shorbe
2478 E RIVER RD
TUCSON AZ 85718-6522

*Exhibit "B"*

FILED
Amy Hunley
CLERK, SUPERIOR COURT
12/26/2025  2:56PM
BY: TCAMPBELL
DEPUTY

THE TUCKER LAW GROUP, P.C.
40 N. Center, Suite 104
Mesa AZ 85201
Phone (480) 633-9466
Email: attorney@tuckerlawaz.com

Mark A. Tucker 015338
Attorneys for Defendants

IN THE SUPERIOR COURT
COCHISE COUNTY, ARIZONA

| | |
|---|---|
| JEFF LINDSAY,<br><br>        Plaintiff/Appellant<br><br>vs.<br><br>BEAU REICHERT AND ALL OCCUPANTS<br><br>        Defendants/Appellees | Superior Court Case No. CV202500667<br><br>Bisbee Justice Court Case No.<br>JP1 CV2025000085<br><br>APPELLEE'S ADDITIONAL BRIEFING<br>ON APPEAL AS ORDERED BY THE<br>COURT ON  DECEMBER 19, 2025. |

Defendants Beau Reichert and Cameron Stangel, by and through counsel, submit this Supplemental Memorandum in response to this Court's December 19, 2025, Order requesting additional briefing on the applicability of the Arizona Residential Landlord and Tenant Act ("ARLTA"), A.R.S. §§ 33-1301 et seq., including whether the Bisbee Justice Court lacked subject matter jurisdiction under ARLTA and whether this matter should be dismissed on that basis.

As set forth below, Appellees respectfully submit that ARLTA applies to the lease agreement at issue, the Justice Court had proper subject matter jurisdiction over the underlying eviction action, and the action should not be dismissed for want of jurisdiction. Instead, this Court should affirm the Justice Court's judgment dismissing the eviction

action on the merits, as briefed in Appellees' Answering Memorandum on Appeal.

I. INTRODUCTION AND OVERVIEW OF ISSUES

This appeal arises from Appellant Jeff Lindsay's ("Appellant" or "Mr. Lindsay") eviction action against Appellee Beau Reichert ("Mr. Reichert") under ARLTA for alleged non-compliance with a residential lease agreement dated April 12, 2024 (the "Lease"). The Justice Court dismissed the action after finding Appellant's conduct constituted bad faith under A.R.S. § 33-1311, requiring Appellant to accept Appellees' tender of all sums due (including reimbursement for property taxes and insurance premiums, court costs, and attorney fees) and reinstating the Lease.

This Court's Order identifies a potential jurisdictional issue based on references in the record to a separate agreement between Mr. Lindsay and Cameron Stangel ("Ms. Stangel"), Mr. Reichert's co-occupant, under which Mr. Lindsay allegedly agreed to convey title to the property at 6 Naco Road, Bisbee, Arizona (the "Property") to Ms. Stangel upon her completion of three years of travel coordination services. The Court questions whether this separate agreement renders the occupancy "under a contract of sale" pursuant to A.R.S. § 33-1308(2), thereby excluding the arrangement from ARLTA and depriving the Justice Court of subject matter jurisdiction under ARLTA.

As detailed below, the eviction action concerns only the Lease between Mr. Lindsay (as landlord) and Mr. Reichert (as tenant), which is a residential lease governed by ARLTA. The fact which makes Mr. Lindsey's residential lease with Mr. Reichert stand out, is that

it is a "no rent" lease. Rather it required him only to pay the property taxes and insurance on the property.

The separate agreement in which it was contemplated that Mr. Lindsey would convey title to the property occupied by Mr. Reichert and Ms. Stangel was a separate and independent employment/services contract that is currently the subject of separate litigation in federal court (involving Ms. Stangel's claims against Mr. Lindsey of claims that include breach of contract, assault, and violations of the Trafficking Victims Protection Reauthorization Act).

Ms. Stangel's separate contract with Mr. Lindsey does not transform Mr. Lindsey's separate residential lease with Mr. Reichert into a "contract of sale" under A.R.S. § 33-1308(2), nor does it exclude the Lease from ARLTA.

The Justice Court had jurisdiction to hear the eviction action as a forcible detainer matter under A.R.S. § 22-201 and ARLTA provisions (e.g., A.R.S. § 33-1368), and its judgment should be affirmed on the merits.

II. STATEMENT OF FACTS RELEVANT TO JURISDICTION

The key facts are drawn from the record, including the Lease (attached as Exhibit 1 hereto referenced in the Appellees' pre-eviction response letter, dated May 16, 2025), the eviction complaint, the Motion to Dismiss for Bad Faith, the June 16, 2025 hearing transcript, and the parties' appellate memoranda.

- The Lease Agreement: On April 12, 2024, Mr. Lindsay and Mr. Reichert

entered into a fixed-term residential lease for the Property, running from April 12, 2024, to April 9, 2027. The Lease requires no monetary rent but obligates Mr. Reichert to pay property taxes directly to the Cochise County Treasurer and to maintain comprehensive casualty insurance naming Mr. Lindsay as an additional insured (with Mr. Reichert as the primary insured). Ms. Stangel is not a party to the Lease, though she occupies the Property with Mr. Reichert. The Lease contains no provisions regarding title conveyance, purchase options, or sales. It is a straightforward tenancy agreement governed by ARLTA, as expressly stated in the Lease terms. (See Response to Eviction Notice, Exhibit 1 attached hereto; Appellee/Defendant's Motion to Dismiss, p. 1; and the Trial Transcript, pp. 20-21; See also Appellant's Memorandum, p. 2.)

- The Separate Agreement with Ms. Stangel: References in the record (e.g., *Exhibit 4* to the Motion to Dismiss; Hearing Transcript, pp. 20-21; Appellant's Memorandum, p. 2) indicate a separate agreement between Mr. Lindsay and Ms. Stangel, under which Ms. Stangel would provide travel coordination services for three years in exchange for Mr. Lindsay conveying title to the Property to her upon completion. In the interim, Ms. Stangel (through the written lease with co-occupant and tenant, Mr. Reichert) would cover costs associated with the Property. This agreement between Ms. Stengel and Mr. Lindsey is not integrated into the Lease, does not involve Mr. Reichert as a party, and is conditional on Ms. Stangel's performance of services. It arose from Mr. Lindsay's employment relationship with Ms. Stangel, which allegedly involved international travel

and ended amid claims of sexual assault and breach (now litigated in federal court). (See Motion to Dismiss, pp. 1-2; Appellees' Answering Memorandum, pp. 1-2; Hearing Transcript, p. 21.)

- The Eviction Action: Appellant filed the eviction complaint on or about June 9, 2025, alleging material breaches under A.R.S. § 33-1368(A) in which Mr. Lindsey claimed Mr. Reichert's purportedly failed to pay the 2024 property taxes and provide proof of that he identified Mr. Lindsay as (not just an insured party) but the named *primary* insured party on the premises' insurance policy.  Prior to sending the eviction notice, Mr. Lindsey, the Appellant unilaterally paid the taxes (without notice or demand) on October 31, 2024, and canceled Appellees' insurance premium payment in November 2024, substituting his own policy. Appellees responded in their Motion to Dismiss that these actions were in bad faith and retaliatory, following Ms. Stangel's complaints against Mr. Lindsay. The Justice Court held a hearing on June 16, 2025, found bad faith under ARLTA, and dismissed the action after payment. (See Eviction Complaint, pp. 1-2; Response to Eviction Notice; Motion to Dismiss; Hearing Transcript; Appellees' Answering Memorandum.)

- Separate Federal Action: Ms. Stangel's claims against Mr. Lindsay (breach of the services agreement, assault, and federal trafficking violations) are pending in a separate federal lawsuit. That action addresses title and conveyance issues under the separate agreement, but it does not involve eviction or possession rights under the Lease.

(See Motion to Dismiss, Exhibit A; Appellees' Answering Memorandum, p. 2.)

## III. ANALYSIS OF THE EVICTION ACTION ISSUES, SEPARATED FROM MS. STANGEL'S CLAIMS

The eviction action is narrowly focused on possession under the Lease and should be analyzed independently from Ms. Stangel's separate claims. The core issues in the eviction are:

1. Alleged Breaches of the Lease: Whether Mr. Reichert materially breached the Lease by failing to pay property taxes and maintain insurance (A.R.S. § 33-1368(A)). Appellees argued—and the Justice Court found—that Appellant manufactured these breaches by interfering with performance (e.g., paying taxes without notice and canceling insurance).

2. Bad Faith and Retaliation: Whether Appellant's actions violated ARLTA's good faith obligation (A.R.S. § 33-1311) and constituted retaliation under A.R.S. § 33-1381, following Ms. Stangel's complaints. This was the basis for the Justice Court's dismissal.

3. Cure and Dismissal: Whether the Justice Court properly applied A.R.S. § 33-1368(B) (allowing cure for monetary defaults) or (A) (for material non-compliance), and required acceptance of tender.

These issues pertain solely to the landlord-tenant relationship under the Lease and do not implicate title or ownership. In contrast, Ms. Stangel's federal claims involve:

- Breach of the separate services agreement.

- Assault and tortious conduct during international travel.

- Violations of federal law (Trafficking Victims Protection Reauthorization Act).

- Potential equitable claims to title upon performance (or damages for breach).

The federal action does not seek possession or challenge the Lease; it addresses Mr. Lindsay's alleged misconduct in the employment context. The eviction action references the separate agreement only as context for Appellant's retaliatory motive, not as a basis for possession rights. Thus, the two matters are distinct, and the eviction should be resolved under ARLTA without merging title issues.

## IV. THE JUSTICE COURT HAD SUBJECT MATTER JURISDICTION UNDER ARLTA

Justices of the peace have jurisdiction only as affirmatively conferred on them by law. (A.R.S. § 22-201(A)). Justice courts have concurrent jurisdiction in forcible detainer actions with the superior court in cases where title is not at issue and in which the claim is less (A.R.S. § 22-201(C)). Justices of the peace have jurisdiction to try the right to possession of real property when title or ownership is <u>not</u> a subject of inquiry in the action. (A.R.S. § 22-201(D)).  In a county with a population of more than two million persons, the justice of the peace of each justice precinct shall have original jurisdiction to hear the actions that occur in the respective precinct in which the justice of the peace is elected, such as special detainers and forcible detainers pursuant to title 33, chapters 11 and 19 and forcible detainers pursuant to title 33, chapter 3 if the amount of rent requested is ten thousand dollars or less (A.R.S. § 22-201(E((4)) as the case is here.

1
2
3
4
5

The question posed by this Court, and which is the purpose of this subsequent briefing is whether ARLTA applies or is excluded under A.R.S. § 33-1308(2), which exempts:   Occupancy under a contract of sale of a dwelling unit or the property of which it is a part, if the occupant is the purchaser or a person who succeeds to his interest.

6
7

**This exclusion does not apply here for several reasons:**

8
9
10
11
12
13
14
15
16
17
18

1. <u>The Lease between Mr. Lindsey (Landlord/Appellant) and Beau Reichert (Tenant/Appellee) Is Not a Contract of Sale</u>: The governing agreement for occupancy is the Lease, which creates a landlord-tenant relationship, not a buyer-seller one. It lacks sale elements like a purchase price, closing terms, or title transfer provisions. Mr. Reichert is the tenant, not a purchaser, and pays no rent—only taxes and insurance as lease obligations. Even if the separate agreement with Ms. Stangel qualifies as a "real estate sales contract" under A.R.S. § 32-2101(52) (an agreement to convey title upon satisfaction of conditions), it is not the basis for occupancy. Ms. Stangel is not the named tenant, and her agreement is conditional on services, not a direct sale.

19
20
21
22
23
24

Courts interpret A.R.S. § 33-1308(2) narrowly to protect tenants; it applies to installment sales or land contracts where the occupant holds equitable title as buyer (e.g., *Grady v. Barth*, 233 Ariz. 318 (App. 2013)). Here, no equitable title vests until (if ever) Ms. Stangel completes services, and the Lease controls possession independently, and she is not the identified tenant in the lease agreement.

25
26

2. <u>The Occupant Is Not the Purchaser</u>: Section 33-1308(2) requires the occupant to be the purchaser or successor. Mr. Reichert—the named tenant and primary occupant—is not the purported purchaser; Ms. Stangel is. While Ms. Stangel co-occupies, she is not a Lease party, and the eviction targets Mr. Reichert and "all occupants" under the Lease, not the separate agreement. Ms. Stangel does not "succeed" to a purchaser's interest under the Lease; her claims are separate.

3. <u>The Separate Agreement Is an Employment Contract, Not a Sale</u>: The agreement with Ms. Stangel is for services (travel coordination) in exchange for future conveyance, akin to compensation or sweat equity, not a real estate sale. It lacks traditional sale attributes (e.g., down payment, financing) and is governed by contract/employment law, not real estate statutes. Even under A.R.S. § 32-2101(54) ("sale" includes transfers), the arrangement is too attenuated from the Lease to trigger exclusion. Arizona courts decline to apply § 33-1308(2) where a lease stands alone, even with ancillary agreements (see, e.g., Thomas v. Goudreault, 163 Ariz. 159 (App. 1989), distinguishing leases from sales).

4. <u>Policy Considerations</u>: Excluding this from ARLTA would deprive residential tenants of protections against bad faith evictions, especially where, as here, the landlord's interference created the alleged breaches. The parties treated the Lease as under ARLTA (invoking its notice and cure provisions), and Appellant filed under ARLTA. Waiver or estoppel should preclude recharacterization now.

For these reasons, ARLTA applies, the Justice Court had jurisdiction, and dismissal

for want of jurisdiction is unwarranted. This Court should proceed to the merits and affirm the judgment.

V. CONCLUSION

The eviction action involves a residential lease governed by ARLTA, separate from Ms. Stangel's title-related claims in federal court. The § 33-1308(2) exclusion does not apply, and the Justice Court had jurisdiction. Appellees request this Court deny dismissal on jurisdictional grounds and affirm the dismissal on bad faith grounds.

Respectfully Submitted this 26th day of December 2025.

THE TUCKER LAW GROUP, P.C.

By: /s/ Mark A. Tucker
Attorney for Appellees

Copy of the forgoing mailed and e-mailed
this date: 12/26/2025, to

Burris & Macomber, PLLC
Attn: Jeremy Shorbe
2478 E River Rd
Tucson AZ 85718
jeremy@burrismacomber.com
Attorneys for Plaintiffs

By: MAT

-10-



**TUCKER LAW GROUP P.C.**
40 N Center, Suite 104
Mesa, Arizona 85201
(480)633-9466; tuckerlawaz.com

# EXHIBIT 1

**Mark A. Tucker**
admitted in AZ
**J. McKay Tucker**
admitted in AZ



**Mark A. Tucker, Esq.**
mark@tuckerlawaz.com
480-633-9466
Arizona Office

<u>*Sent Via Certified Mail First-Class Mail and E-mail To:*</u>

May 16, 2025

Jeremy T. Shorbe, Esq.
Burris & Macomber, PLLC
2478 E. River Road
Tucson, Arizona 85718
Email: jeremy@burrismaoomber.coen

     Re:    6 Naco Rd., Bisbee, Arizona 85603 APN: 103-62-273A & 103-62-459A
             Response to Invalid Notice of Termination and Notice to Vacate

This firm represents Beau Reichert and Cameron Stangel, tenants of the property at 6 Naco Road, Bisbee, Arizona 85603 (the "Property"), owned by your client, Jeff Lindsay. We write in response to your letters dated April 23, 2025, and May 13, 2025, which allege a default, purport to terminate the Residential Lease Agreement dated April 12, 2024 (the "Lease") (Exhibit 1), and demand vacation of the premises. For the reasons outlined below, both notices are procedurally and substantively invalid under the Arizona Residential Landlord and Tenant Act, A.R.S. § 33-1301 et seq. (the "Act"), and the Lease. We respectfully request that your client withdraw these notices and refrain from further interference with our clients' tenancy.

The Lease, a fixed-term agreement from April 12, 2024, to April 9, 2027, remains in effect with nearly two years remaining. Your May 13, 2025, notice relies on the April 23, 2025, letter, which alleges breaches for failure to provide proof of insurance and pay property taxes, demanding $6,341.34. The April 23rd notice is defective under A.R.S. § 33-1368(B), which requires a five-day notice for non-payment, specifying the amount and basis for the demand. The ten-day notice provided misapplies A.R.S. § 33-1368(A), which governs material breaches, not monetary defaults, and lacks the specificity and opportunity to cure required by A.R.S. § 33-1368(B). As a result, the May 13th termination notice is invalid, as Arizona law requires proper notice and a court-filed eviction action for termination of the lease.

Our clients fulfilled their Lease obligations to maintain insurance and pay property taxes. Beau Reichert fulfilled his lease obligation by paying for a comprehensive home insurance policy, naming Lindsay as an additional insured. Thereafter, without notice, your client canceled this policy, reversed the our client's payment, and obtained a duplicate insurance policy in its place. Similarly, Mr. Lindsay paid the 2024 property taxes on October 31, 2024 (Exhibit 2), without first providing the tax bill to our client, or requesting reimbursement, despite knowing their obligation under the Lease. The Lease does not authorize Mr. Lindsay to cancel insurance or pay taxes on their behalf. By obstructing their performance and then alleging breach, Mr. Lindsay's actions violate the implied covenant of good faith and fair dealing, which requires parties to act honestly and fairly without undermining the contract's purpose (*Rawlings v. Apodaca*, 151 Ariz. 149 and

the statutory duty of good faith set forth in the Ariona Residential Landlord and Tenant Act, A.R.S. § 33-1310(5) and A.R.S. § 33-1311.

By canceling the insurance policy and paying taxes without notice, Lindsay actively prevented our client from fulfilling his lease obligations. This sabotage constitutes bad faith, as it obstructs their performance *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420. Your clients bad faith is underscored by the timing of your notices and raises concerns about retaliatory intent.

On December 6, 2024, Ms. Stangel, through counsel, sent a demand letter to Mr. Lindsay asserting claims for breach of her employment contract and sexual harassment (Exhibit 4). This contract, dated April 12, 2024, promises Ms. Stangel ownership of the Property upon completing 520 days of travel coordination or by April 10, 2027. Mr. Lindsay's lease termination attempt, following Ms. Stangel's lawful refusal to engage in illegal activities he requested, may be an effort to evade this obligation, violating A.R.S. § 33-1381(A), which prohibits retaliatory actions against tenants pursuing legal remedies.

The April 23rd demand for payment and inspection lacks the five-day notice required by A.R.S. § 33-1368(B) for payment and the specific timing mandated by A.R.S. § 33-1343 for inspections. The May 13th demand for immediate vacation and surrender of keys contravenes A.R.S. § 33-1375, which protects tenants' quiet enjoyment.

To resolve this matter, our clients are prepared to:

1.  Obtain a new insurance policy compliant with the Lease, provided Mr. Lindsay does not interfere further

2.  Reimburse the 2024 property taxes upon receipt of the tax bill and a proper demand.

We respectfully request written confirmation by May 31, 2025, that the April 23rd and May 13th notices are withdrawn and that no further action will be taken to disrupt our clients' tenancy. Please direct all future communications to this office. Thank you.

Yours truly,

Mark A. Tucker
Attorney for Beau Reichert and Cameron Stangel

cc: Clients

Enclosures:    Exhibit 1 (Lease),
              Exhibit 2 (Tax Receipts)
              Exhibit 3 (State Farm Insurance)
              Exhibit 4 (Stangel Demand Letter)



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

**Lease**

# EXHIBIT 1

**Residential Lease Agreement**

**Parties:** This Lease Agreement is entered into on April 12, 2024, between Jeff Lindsay, hereinafter referred to as "Landlord," and Beau Reichert, hereinafter referred to as "Tenant."

**Property:** The Landlord hereby leases to the Tenant the property located at 6 Naco Rd. Bisbee, AZ, including all fixtures and furnishings, for a period of three (3) years, commencing on 4/12/2024 and ending on 4/9/2027.

**Utilities:**

- The Tenant shall be responsible for paying all utility bills, including but not limited to electricity, water, gas, and internet, for the duration of the lease term.
- The Tenant shall also be responsible for maintaining utility accounts in their name and ensuring timely payment of all utility bills.

**Insurance and Taxes:**

- The Tenant shall obtain and maintain comprehensive home insurance throughout the lease term, with coverage for personal property and liability, with the Landlord named as an additional insured party.
- The Tenant shall be responsible for paying any property taxes associated with the leased premises during the lease term, directly to the relevant tax authority.

**Maintenance and Repairs:**

- The Tenant shall be responsible for routine maintenance and minor repairs to the leased premises, including but not limited to lawn care, cleaning, and replacing light bulbs.

**Governing Law:** This Lease Agreement shall be governed by and construed in accordance with the laws of Arizona.

**Entire Agreement:** This Lease Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures:** The parties hereto have executed this Lease Agreement as of the date first above written.

[Landlord's Signature]                              [Tenant's Signature]

[Landlord's Name]                                   [Tenant's Name]

Jeff Lindsay                                        Beau Reichert

[Date]                                              [Date]

4/15/2024                                           4/15/2024

## Residential Lease Agreement

**Parties:** This Lease Agreement is entered into on April 12, 2024, between Jud Lindsay, hereinafter referred to as "Landlord," and Beau Reichert, hereinafter referred to as "Tenant."

**Property:** The Landlord hereby leases to the Tenant the property located at 6 Nacis Rd, Bisbee, AZ, including all fixtures and furnishings, for a period of three (3) years, commencing on 4/12/2024 and ending on 4/9/2027.

### Utilities:

- The Tenant shall be responsible for paying all utility bills, including but not limited to electricity, water, gas, and internet, for the duration of the lease term.
- The Tenant shall also be responsible for maintaining utility accounts in their name and ensuring timely payment of all utility bills.

### Insurance and Taxes:

- The Tenant shall obtain and maintain comprehensive home insurance throughout the lease term, with coverage for personal property and liability, with the Landlord named as an additional insured party.
- The Tenant shall be responsible for paying any property taxes associated with the leased premises during the lease term, directly to the relevant tax authority.

### Maintenance and Repairs:

- The Tenant shall be responsible for routine maintenance and minor repairs to the leased premises, including but not limited to lawn care, cleaning, and replacing light bulbs.

**Governing Law:** This Lease Agreement shall be governed by and construed in accordance with the laws of Arizona.

**Entire Agreement:** This Lease Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures:** The parties hereto have executed this Lease Agreement as of the date first above written.

[Landlord's Signature]

[Tenant's Signature]

[Landlord's Name]

[Tenant's Name]



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

**Cochise County Tax Receipts**

# EXHIBIT 2



# Cochise County Treasurer
## Tax Receipt

Paid By: LINDSAY JEFF
PO BOX 133
PECOS , TX 79772

| | |
|---|---|
| Batch: | 7003496 |
| Payment Date: | 10/31/2024 |
| Interest Date: | 10/31/2024 |
| DUPLICATE Printed: | 5/15/2025 |
| As Of Date: | 5/15/2025 |

| Parcel Number | Description | | Amount Paid | Rate | Certificate |
|---|---|---|---|---|---|
| 10362273A8 | 2024 | TAX | $4,938.78 | | |
| | | **Total Paid:** | **$4,938.78** | **2024 Due:** | **$0.00** |
| | SURFACE TO DEPTH OF 40' OF COPPER JACK LODE MINING CLAIM MS#1047 WARREN MNG DIST DESC BY M&B BEG N89DEG 30MIN 58SEC W425.06' FROM COR #2 N35DEG 23MIN 45SEC E60.10' N46DEG 21MIN 16SEC E12.57' THN S41DEG 30MIN 45SEC E10.78' S43DEG 22MIN 14SEC E35.58' THN ALONG CURVE TO RIGHT 9.94' THN S46DEG 30MIN W69.94' N43DEG 50MIN W44.57' TO POB AKA REP OF SURVEY BK6 PG10 PCL I & III .084AC | | | | |
| **Totals** | | **Total Paid:** | **$4,938.78** | | |
| | | **Receipt Balance:** | **$0.00** | | |

Date: 5/15/2025 9:42:43 PM; UTC



# Cochise County Treasurer
### Tax Receipt

Paid By: LINDSAY JEFF
PO BOX 133
PECOS , TX 79772

| Batch: | 7003496 |
|---|---|
| Payment Date: | 10/31/2024 |
| Interest Date: | 10/31/2024 |
| DUPLICATE Printed: | 5/15/2025 |
| As Of Date: | 5/15/2025 |

| Parcel Number | Description | | Amount Paid | Rate | Certificate |
|---|---|---|---|---|---|
| 10362459A2 | 2024 | TAX | $304.76 | | |
| | | Total Paid: | $304.76 | 2024 Due: | $0.00 |
| | REC OF SUB PLAT BK13 PG95 CHIHUAHUA HILL ADDN LOT 10 EXCPT THE FLLWING DESC PCL COMM AT THE NE COR LOT 10 THN N73DEG 06MIN 13SEC W18.40' TO THE POB S27DEG 43MIN 45SEC W6.66' N64DEG 05MIN 44SEC W23.57' N27DEG 43MIN 45SEC E2.90' S73DEG 06MIN 13SEC E23.99' TO THE POB SEC 9-23-24 .079AC | | | | |
| Totals | | Total Paid: | $304.76 | | |
| | | Receipt Balance: | $0.00 | | |

Date: 5/15/2025 9:44:20 PM; UTC



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

**Proof of Insurance Payment**

# EXHIBIT 3

6:54     LTE 

‹    Adv Plus Banking – 3678    🛒    

**5 items found**

Dec 13, 2024
STATE FARM RO 27 DES:CPC-
CLIENT ID:24 J XXXXX81262
INDN:JEFF LINDSAY CO
ID:XXXXX13004 WEB

$1,098.00
$0.00

Nov 13, 2024
STATE FARM BILLG
DES:PAYMENTS ID:DN9UN9K0
INDN:REICHERT BEAU CO
ID:XXXXX00009 TEL

-$284.00
$0.00

Nov 13, 2024
STATE FARM BILLG
DES:PAYMENTS ID:DN9UP8GX
INDN:LINDSAY JEFF CO
ID:XXXXX00009 TEL

-$1,098.00
$0.00

May 29, 2024
STATE FARM RO 08 DES:CPC-
CLIENT ID:24 J XXXXX81262
INDN:JEFF LINDSAY CO
ID:XXXXX13400 TEL

-$1,098.00
$0.00

May 24, 2024
STATE FARM RO 08 DES:CPC-
CLIENT ID:24 J XXXXX73262
INDN:BEAU REICHERT CO
ID:XXXXX13400 TEL

-$284.00
$0.00

Investment, insurance and annuity products:

• Are Not FDIC Insured
• Are Not Bank Guaranteed
• May Lose Value



**TUCKER LAW**

40 N. CENTER, SUITE 104, MESA AZ 85201
PHONE: 480-633-9466
E-MAIL: ATTORNEY@TUCKERLAWAZ.COM

## DECEMBER 5, 2024 DEMAND LETTER

# EXHIBIT 4



Advocates for Workplace Fairness

Gregory S. Chiarello, Esq.
gchiarello@outtengolden.com

December 6, 2024

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

**Via E-mail**
Jeffery A. Lindsay
Angeles Ranch
P.O. Box 133
Pecos, TX 79772
jeff@angelesranch.com

Re:    **Cameron Stangel / Jeffery A. Lindsay and Angeles Ranch**

Dear Mr. Lindsay,

We represent Cameron Stangel regarding her employment relationship with you. Ms. Stangel has described for us a continuing course of alarming predatory and illegal behaviors perpetrated by you, including sexual misconduct, verbal harassment, and repudiation of the employment contract. Your conduct, as detailed below, gives rise to claims of assault and other tortious conduct, breach of contract, and violations of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1989 *et seq.*, all of which carry significant penalties. We write to explore whether you are interested in discussing a pre-suit resolution of Ms. Stangel's legal claims. In any event, all further communication from you or your representative should be directed to our attention.

**Background**

We understand that Ms. Stangel met you in or around October 2023, and that you immediately pursued a personal relationship with her. We have reviewed numerous text messages from you to Ms. Stangel complimenting her appearance, expressing that you miss her, and offering to make her "rich and famous." Ms. Stangel responded politely to those messages, but firmly ignored the flirtations contained therein.

In early 2024, Ms. Stangel and her partner, Beau Reichert, discovered a unique property for sale in Bisbee, Arizona (the "Bisbee Property," located at 6 Naco Rd., Bisbee, AZ 85603) that they sought to purchase. Exploiting Ms. Stangel's interest in the Bisbee Property, you made her an offer she could hardly refuse: you would purchase the Bisbee Property yourself and, in exchange for Ms. Stangel's travel coordination services for a period of up to three years, you would convey the Bisbee Property to her. In the meantime, Ms. Stangel would pay costs associated with the Bisbee Property.

You and Ms. Stangel memorialized this agreement in a contract executed by all parties in Arizona and commencing on April 12, 2024 (the "Service Agreement"). Through a separate residential tenancy

Jeffery A. Lindsay
December 6, 2024
Page 2 of 7

contract, you leased the Bisbee Property to Mr. Reichert for a period of three years beginning on April 12, 2024. Promptly thereafter, Ms. Stangel and Mr. Reichert moved into the Bisbee Property. In doing so, they incurred substantial costs, as they expected the move to be permanent.

**You Exploited the Service Agreement to Compel Ms. Stangel to Accept Your Sexual Advances**

Pursuant to the Service Agreement, Ms. Stangel coordinated your travel throughout the spring and summer of 2024. She planned detailed itineraries and arranged for transportation and accommodations – not only for you, but also for herself, as you insisted that Ms. Stangel accompany you on your travels.

Taking advantage of the unequal power dynamic and exploitive nature of the Service Agreement, you frequently and increasingly placed Ms. Stangel in sexually vulnerable positions. For example, although unrelated to the travel coordination services contemplated by the Service Agreement, you frequently instructed Ms. Stangel to purchase new clothing to wear during these trips. You disapproved of her clothing choices and told her to "slut it up." You attempted to schedule couples' massages with Ms. Stangel and expressed anger when she refused. And more than once, you asked Ms. Stangel to share a hotel room with you, which she firmly refused.

Upon embarking on the Four Seasons Ancient Explorer Trip ("Four Seasons Trip"), an international travel experience spanning multiple countries from August 28 to September 20, 2024, your sexually inappropriate behavior intensified. On the trip, you repeatedly asked Ms. Stangel to privately model swimsuits for you in your hotel room and to share accommodations with you during the trip, despite her unwavering response that she did not want to do so. (You implied to others that Ms. Stangel was in a romantic relationship with you by joking that you did not share a hotel room only because Ms. Stangel snored.) Nevertheless, you required Ms. Stangel to collect you from your hotel room each morning, answering the door in varying states of undress – including shirtless with your pants low and unzipped, or in just your underwear with an open robe. On an almost a daily basis, you demanded that Ms. Stangel wait inside your hotel room while you dressed in front of her. Ms. Stangel averted her gaze and attempted to leave, causing you to anger, accuse her of "making things awkward," and insist that she remain in your room while you dressed. Ms. Stangel, who felt she had no choice but to comply, was deeply traumatized by these experiences.

In response to Ms. Stangel's rebuffs to your advances, you became increasingly hostile towards her and sought to coerce her compliance with your demands for sexual intimacy through more forceful tactics. On or about September 5, 2024, while in Bora Bora, you accused Ms. Stangel of misusing funds you had expressly told her to use for the trip and that she had documented through daily expense reports she duly provided to your secretary, Crystal Slade. You then claimed that Ms. Stangel owed you $20,000 and demanded repayment under explicit threat of legal action.

Your unfounded demands and needless yelling threatened Ms. Stangel's physical, financial, and emotional safety. This was by your design, as you ensured Ms. Stangel would be financially dependent upon you during the Four Seasons Trip by insisting that she rely only upon the cash and credit card you provided to her. As a result, Ms. Stangel brought only her personal debit card that was linked to an account with minimal funds. Your intentions in controlling Ms. Stangel's finances were clear: to place Ms. Stangel in a powerless and dependent position so that she would acquiesce to your advances. Indeed, you insisted that Mr. Stangel buy a new wardrobe for every trip (consistent with the provision in the Service Agreement providing that you would cover "all expenses associated with the Travel Coordinator position") and specifically directed Ms. Stangel to purchase expensive and provocative clothing, only to then accuse her of stealing when she would not model them or share a room with you.

Jeffery A. Lindsay
December 6, 2024
Page 3 of 7

Over the following days you escalated your intimidation tactics against Ms. Stangel, creating additional pressure for her to acquiesce to your sexual advances. On or around September 11, 2024, you again threatened legal action against Ms. Stangel if she did not pay you $20,000, and you demanded she return the credit card you had provided to her for purchases associated with the Service Agreement. You wondered aloud to Ms. Stangel whether you would remove her from the trip – again, knowing that she was financially reliant upon you – or whether you would forgive her "debt" and let her stay, suggesting she could remedy the situation by cooperating with your advances. The next morning, you forced Ms. Stangel to give you all of the cash in her possession, leaving her without any form of payment in a foreign country except the minimal funds available with her debit card. Mr. Reichert initiated a wire transfer to Ms. Stangel's bank account so that she had the ability to depart the Four Seasons Trip, but she understood that it may take days for the transfer to complete.

Fearful and alone, Ms. Stangel reported your abuse to a member of the Four Seasons staff, Susan Cegavske, and expressed she felt afraid for her safety. Ms. Cegavske loaned Ms. Stangel some cash so that she could make arrangements to escape your coercive control. In the meantime, Ms. Stangel struggled to manage your continued demands, including that she obtain prostitutes and opium for you (both of which were illegal in your location, Thailand). That evening – intoxicated, as you often were – you came to Ms. Stangel's hotel room, forced your way in, and then cornered her, blocking her exit. You then yelled at Ms. Stangel and demanded that she unpack her luggage in front of you. Ms. Stangel told you she felt trapped and unsafe, and begged you to leave. Only after her repeated pleas and increasing visible distress did you relent and leave the room.

Shortly after, in a meeting mediated by Ms. Cegavske and Javier Loureiro, the Four Seasons Director of Guest Experience, you admitted to your inappropriate behavior, making specific reference to Ms. Stangel's physical appearance in a disgusting attempt to justify your actions. You also admitted to forcibly cornering Ms. Stangel in her hotel room and demanding she unpack her luggage, expressed that you felt it was a problem that she was not more afraid of you, and admitted to taking her cash and credit card.

Importantly, you also stated during the meeting that you were cancelling the Service Agreement and no longer intended to perform your obligation under it to convey the Bisbee property. You repudiated the contract in no uncertain terms, stating, "I'm the owner of the fire station now." Ms. Cegavske and Mr. Loureiro have indicated their willingness to testify to these and other events that occurred on the trip.

**<u>Ms. Stangel's Legal Claims Against You</u>**

Your conduct gives rise to liability under several legal theories.

**A.   *Trafficking Victims Protection Reauthorization Act ("TVPRA")***

Exploitive work arrangements, particularly those that are sexually exploitive, are illegal and come with significant legal penalties. Here, your abusive behavior towards Ms. Stangel violates the federal Trafficking Victims Protection Reauthorization Act. 18 U.S.C. § 1589 *et. seq.*; *see id.* § 1595(a) (providing civil remedy to victims of violations of the TVPRA). Specifically, Ms. Stangel has civil claims against you under § 1595 for conduct violating the forced labor, trafficking with respect to forced labor, and sex trafficking provisions of the TVPRA. 18 U.S.C. §§ 1589-91.

You are civilly liable to Ms. Stangel under the TVPRA's sex trafficking provision, 18 U.S.C. § 1591(a), which protects employees who are sexually abused under the guise of career advancement or

Jeffery A. Lindsay
December 6, 2024
Page 4 of 7

job-related duties. *Acevedo v. Exp. Realty, LLC,* 713 F.Supp.3d 740, 765 (C.D. Cal. 2024); *see also Canosa v. Ziff,* No. 18 Civ. 4115 (PAE), 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) (declining to dismiss TVPA claims against The Weinstein Company where the complaint alleged that Weinstein met with plaintiff "under the guise of working together on productions," and "t[ook] advantage of the seclusion of those meetings and his power as a well-known producer to sexually assault and intimidate her"). Here, you enticed Ms. Stangel to enter into the Service Agreement with you through the promise that you would convey the Bisbee Property, a property she could not otherwise afford. You then used the contractual agreement with Ms. Stangel to transport her abroad. While traveling abroad, you used coercive measures – stripping Ms. Stangel of financial means, threatening suit, threatening termination, forcible restraint, threatening physical force, and overt hostility – in a knowing attempt to cause Ms. Stangel to submit to your sexual advances. *See United States v. Hornbuckle*, 784 F.3d 549, 553-54 (9th Cir. 2015) (finding a sex act or sexual contact need not occur to establish elements of sex trafficking under 18 U.S.C. § 1591). That your conduct was intentional is evinced by the temporal proximity of these coercive measures following Ms. Stangel's expressions that your sexual advances were unwelcome. Finally, that you conditioned your obligations under the Service Agreement upon Ms. Stangel's submission to your sexual harassment and advances reveals their commercial nature. 18 U.S.C. § 1591(e)(3) (broadly defining "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person.").

Under the TVPRA's forced labor provision, 18 U.S.C. § 1589, you also are civilly liable to Ms. Stangel because you knowingly obtained and retained her services through threat of serious harm, and/or conduct intended to cause her to believe that she would suffer serious harm if she did not provide such services. Specifically, in response to Ms. Stangel's refusal to engage sex workers, obtain opium, model swimwear for you, enter your hotel room while you were undressed, stay in your hotel room and, implicitly, enter a sexual relationship with you, you took Ms. Stangel's cash and credit card and falsely accused her of theft, leaving her without the financial means to safely depart the Four Seasons trip and in fear of legal action. *See Estavilla v. Goodman Grp., LLC*, No. CV 21-68-M-KLD, 2022 U.S. Dist. LEXIS 31751, at *34 (Dist. Mon. Feb. 23, 2022) ("It is well-settled that financial pressure, including the threat of financial harm, may constitute serious harm under the TVP[R]A."); *Mairi Nunag-Tanedo v. E. Baron Rouge Parish School Board*, 790 F.Supp.2d 1134, 1146 (C.D. Cal. 2011) (finding sufficient allegations of serious harm under 18 U.S.C. § 1589 where plaintiffs would owe $5,000 debt to defendants if they left the employment relationship). You also violated Section 1589(a) when you prevented Ms. Stangel from leaving her hotel room until she unpacked her luggage, using and threatening physical force or restraint to cause her to continue working for you. Civil liability also arises due to violations of 18 U.S.C. § 1590(a) because you engaged in this conduct while transporting Ms. Stangel.

Ms. Stangel stands to recover substantial damages from you for her TVPRA claims. 18 U.S.C. § 1595(a) (plaintiffs "may recover damages and reasonable attorneys fees."). The Ninth Circuit has found not only that punitive damages are available, but also that conduct underlying a TVPRA claim "obviously meets the common law standards for award of punitive damages because it is both intentional and outrageous." *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).

### B. Tort Claims – Assault, False Imprisonment, Intentional Infliction of Emotional Distress

It is illegal to cause another person to fear imminent physical contact, to subject them to detention without consent, or to cause them severe emotional distress through intentional or reckless conduct. These behaviors give rise to liability under tort theories of assault, false imprisonment, and the intentional infliction of emotional distress ("IIED"), respectively. Under these theories, you are liable to Ms. Stangel for your sexually harassing and coercive conduct, including when you physically restrained Ms. Stangel

Jeffery A. Lindsay
December 6, 2024
Page 5 of 7

in her hotel room such that she feared use of physical force and deprived her of any economic means to escape your threatening presence.[1]

These claims give rise to substantial compensatory damages. *See, e.g.*, *Farsakian v. Kent*, No. CV-20-00141-PHX-MTL, 2020 U.S. Dist. LEXIS 201243, at *15-16 (D. Ariz. Oct. 28, 2020) (finding $200,000 is a reasonable damages award for IIED claim where individual defendant caused plaintiff to fear termination of her employment if she did not acquiesce to his sexual advances); *Leavey v. UNUM/Provident Corp.*, 2006 U.S. Dist. LEXIS 34810, at *31-32 (D. Ariz. May 26, 2006) (finding $1.2 million in non-economic compensatory damages is reasonable even where injury resulted primarily from financial stress) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)).

We also expect Ms. Stangel will recover significant punitive damages against you for her tort claims due to the reprehensible and exploitative nature of your behavior. *See, e.g., Rode v. Credio*, No. CV-14-02354-PHX-SRB, 2016 U.S. Dist. LEXIS 12086, at *20-25 (D. Ariz. Aug. 3, 2016) (awarding $5,000,000 in compensatory damages and $5,000,000 in punitive damages for claims of assault, false imprisonment, and IIED in case involving sexual misconduct); *Kennedy-Burdick v. Czarnecki*, No. CIV 01-898 PCT RCB, 2023 U.S. Dist. LEXIS 28474, at *9 (D. Ariz. Sept. 9, 2003) (awarding damages for lost wages, damages for pain and suffering, and punitive damages for assault claim).

### C. Breach of Contract

Breach of a contract gives rise to liability under Arizona law. You are liable to Ms. Stangel for breach of the Service Agreement under two theories. First, Ms. Stangel will show that you repudiated the Service Agreement when you expressed to her, in the company of Ms. Cegavske and Mr. Loureiro, that you were cancelling the Service Agreement and no longer intended to perform by conveying the Bisbee Property, stating, "I'm the owner of the fire station now." "An anticipatory repudiation is a breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 283 (1983).

Second, Ms. Stangel can recover from your breach of the implied duty of good faith and fair dealing. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002) (Arizona law "implies a covenant of good faith and fair dealing in every contract."). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* "Among other things, a party breaches this covenant by exercising discretion afforded under the contract for a reason beyond the risks assumed by the other party." *County of La Paz*, 224 Ariz. 590, 604 (Ariz. App. 2010). Conditioning Ms. Stangel's completion of the Services Agreement on her financial and sexual submission to you (in addition to your request that she illicitly obtain opium and prostitutes for you) plainly violates the implied duty of good faith and fair dealing inherent to the Service Agreement.

---

[1] While this conduct occurred abroad, we are confident that the Court's conflict of laws analysis will result in the application of Arizona substantive law for these claims, because (a) the claims arise from the Service Agreement, which you and Ms. Stangel executed in Arizona and which involves the conveyance of Arizona property, (b) Ms. Stangel is domiciled in Arizona, (c) Ms. Stangel suffered injuries in Arizona, and (d) the relationship between yourself and Ms. Stangel is centered in Arizona. *See Bates v. Superior Court*, 156 Ariz. 46 (1988) (applying factors listed in Restatement (Second) of Conflict of Laws, Section 145).

Jeffery A. Lindsay
December 6, 2024
Page 6 of 7

Ms. Stangel will have her choice of remedies to recover for your breach of the Service Agreement. In addition to damages for your breach of contract, Ms. Stangel will seek to recover specific performance of the Service Agreement, *i.e.*, conveyance of the Bisbee property to her. *Daley v. Earven*, 131 Ariz. 182, 187 (Ariz. App. 1981) (specific performance is a remedy available for breach of contract through repudiation). Specific performance is a typical remedy for breach of contracts involving the conveyance of real property "because land is thought to be unique and the remedy of damages is usually considered inadequate." *Canton v. Monaco Partnership*, 156 Ariz. 468, 470 (Ariz. App. 1987).

In addition to contract damages and specific performance, Ms. Stangel may also recover tort damages for your breach of the covenant of good faith and fair dealing because there exists a special relationship between the parties – namely, you leveraged the wealth disparity between yourself and Ms. Stangel by intentionally making Ms. Stangel an offer she could not refuse, and then used the resulting Service Agreement to exploit and sexually harass. *See Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355 (1991) ("Among the special relationships in which such tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage... Also, the assessment of tort damages for breach of contract is a device most often allowed in situations in which the rule restricting recovery to contract damages would promote breach of the contract rather than its performance.") (citations omitted).

\*\*\*

As described above, Ms. Stangel has experienced significant financial, emotional and reputational harm as a result of your actions. While we estimate Ms. Stangel's damages to be substantial, she is open to settling her claims against you to avoid the time and expense of litigation. If you are interested in pursuing such a conversation, please contact us no later than December 13, 2024.

In the meantime, this letter also serves as notice of your obligations to take immediate steps to preserve all documents and information that may be relevant to this matter, including, but not limited to emails, texts, voicemails, and other communications. As such, you must immediately take action to avoid the destruction and/or deletion of any relevant materials, whether in electronic or paper form, including immediately implementing the following:

- Hold in abeyance any existing document retention and/or destruction policies or practices, including for cloud-based servers or storage, or any other actions that would result in the deletion of any material;

- Stop the automatic deletion of emails and other electronic data, including on cloud-based servers or storage;

- Secure and preserve videotape and audiotape video surveillance;

- Maintain all electronic data in reasonably accessible form, and

- Secure and preserve all computer or electronic hardware, including all hard-drives, laptops, iPhones or other smartphones, or any other similar equipment and devices.

Additionally, please take immediate steps to preserve any relevant documents and information that is contained on your personal devices and the personal devices of relevant employees or other

Jeffery A. Lindsay
December 6, 2024
Page 7 of 7

individuals under your control, including work and personal phones, tablets, laptops, computers, or any other devices.

The foregoing is without prejudice to any and all rights and remedies to which Ms. Stangel may be entitled under all applicable laws, and nothing in this letter shall be deemed a waiver of Ms. Stangel's rights and remedies at law or equity, which are expressly reserved.

Very truly yours,

Gregory S. Chiarello
Hannah C. Meropol

cc:    Cameron Stangel

Tucker Law Group, P.C.
40 N Center, Suite 104
Mesa AZ 85201



CERTIFIED MAIL®

9589 0710 5270 1738 4400 11





$5.82⁰
US POSTAGE
FIRST-CLASS
FROM 85204
05/16/2025
Stamps.com

BURRIS & MACOMBER, PLLC
Attn: Jeremy T. Shorbe
2478 E RIVER RD
TUCSON AZ 85718-6522

*Exhibit "C"*

# BURRIS & MACOMBER, PLLC

### ATTORNEYS AT LAW

Jeremy T. Shorbe, Esq.                          2478 E. River Road                          Telephone: (520) 775-2000
Attorney at Law                                     Tucson, Arizona 85718                    Facsimile: (520) 775-2001
                                                                                                        Email: jeremy@burrismacomber.com

April 23, 2025

***SENT VIA FIRST CLASS AND CERTIFIED MAIL***

Beau Reichert
6 Naco Road
Bisbee, AZ 85603

**Re:**     ***6 Naco Rd., Bisbee, Arizona 85603***
            ***Lease Agreement - Notice of Default; Notice of Breach***
            ***APN: 103-62-273A & 103-62-459A***

Dear Mr. Reichert:

Please be advised that this firm has been retained by Mr. Jeff Lindsay in regards to the above referenced matter.  Please direct all future communications and correspondence regarding this matter to me and this firm.

As you know, on April 12, 2024, you contracted with my client to lease the real property located at 6 Naco Road, in Bisbee, Arizona (the "Property"). Pursuant to the material terms of the lease (a copy of which is attached hereto and incorporated herein as Exhibit A; the "Lease"), you were required to pay, among other things, insurance and taxes as consideration for your lease of the Property. You have materially breached the terms of the Lease via, *inter alia*, your failure to provide proof of insurance on the Property which names my client as an insured party. Moreover, you have failed to pay the Property taxes assessed by Cochise County. My client has incurred the expense for the necessary insurance coverage, and has paid the Property taxes; a total sum of $6,341.34, as evidenced by the proofs of payment attached hereto and incorporated herein as Exhibit B.

As a result of your failure to procure insurance and pay the Property taxes, you have breached the material terms of the Lease. As such, notice is hereby given pursuant to A.R.S. § 33-1368(A) that the total sum of **$6,341.34** is due to my client within ten (10) calendar days from the date of delivery of this notice, pursuant to A.R.S. § 33-1313(B). You must, within this same timeframe, provide proof of insurance on the Property – on a going forward basis – which names Jeffery Lindsay as an additional insured party and that fully complies with the terms of the Lease.

Furthermore, you are hereby notified pursuant A.R.S. § 33-1343 of my client's right to inspect the Property. My client anticipates that he or his appointed agent will conduct an inspection of the Property within ten (10) calendar days from the date of delivery of this notice.

At this point, you have two options:

**OPTION ONE – COME INTO COMPLIANCE WITH THE LEASE**: Pay the outstanding amounts due, provide proof of insurance as instructed above, and fully comply with the terms of the Lease on a going forward basis. Failure to pay all sums due and owing, to produce proof of insurance of the Property listing Mr. Lindsay as an additional insured, and/or failure to provide access to the Property within the above stated time frames will result in immediate termination of the Lease and legal action against you to retake possession of the Property. As the Lease makes you responsible for "routine maintenance" of the Property, full compliance with the Lease further requires that such maintenance be completed within ten (10) days of this Notice.

**OPTION TWO – VOLUNTARY TERMINATION AND PAYMENT OF AMOUNTS DUE AND OWING UNDER THE LEASE**: In the alternative, you do also have the option to remit the $6,341.34 owed to Mr. Lindsay to this law firm, move out/relinquish possession, and return the keys to the Property within ten (10) business days of receipt of this Notice. Mr. Lindsay reserves the right to claims for any additional amounts that may be due and owing to address or repair any damage to the Property incurred during your tenancy that become known through a future inspection of the Property.

Be advised that any further actions taken as necessary for Mr. Lindsay to recover all sums owed, and/or to lawfully recover possession of the Property for failure to come into compliance with the Lease, will include but not be limited to all outstanding amounts owed, amounts for any damage to the Property, as well as legal fees and costs my client incurs to enforce the terms of the Lease.

Your immediate attention to this matter is appreciated in advance.

Sincerely,

**BURRIS & MACOMBER, PLLC**

Jeremy T. Shorbe, Esq.

JTS/jlg
Encl.
CC: Client

2

*Exhibit "A"*

**Residential Lease Agreement**

**Parties:** This Lease Agreement is entered into on April 12, 2024, between Jeff Lindsay, hereinafter referred to as "Landlord," and Beau Reichert, hereinafter referred to as "Tenant."

**Property:** The Landlord hereby leases to the Tenant the property located at 6 Naco Rd. Bisbee, AZ, including all fixtures and furnishings, for a period of three (3) years, commencing on 4/12/2024 and ending on 4/9/2027.

**Utilities:**

- The Tenant shall be responsible for paying all utility bills, including but not limited to electricity, water, gas, and internet, for the duration of the lease term.
- The Tenant shall also be responsible for maintaining utility accounts in their name and ensuring timely payment of all utility bills.

**Insurance and Taxes:**

- The Tenant shall obtain and maintain comprehensive home insurance throughout the lease term, with coverage for personal property and liability, with the Landlord named as an additional insured party.
- The Tenant shall be responsible for paying any property taxes associated with the leased premises during the lease term, directly to the relevant tax authority.

**Maintenance and Repairs:**

- The Tenant shall be responsible for routine maintenance and minor repairs to the leased premises, including but not limited to lawn care, cleaning, and replacing light bulbs.

**Governing Law:** This Lease Agreement shall be governed by and construed in accordance with the laws of Arizona.

**Entire Agreement:** This Lease Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures:** The parties hereto have executed this Lease Agreement as of the date first above written.

[Landlord's Signature]                                    [Tenant's Signature]

[Landlord's Name]                                         [Tenant's Name]

Jeff Lindsay                                              Beau Reichert

[Date]                                                   [Date]

4/15/2024                                                4/15/2024

*Exhibit "B"*

## Image Report



| | |
|---|---|
| ABA Number | |
| Account Number | |
| Serial Number | 4038 |
| Amount | $1,098.00 |
| Paid Date | 11/29/2024 |

**Front**



4038

**WTNB™**
877-493-7862 | WTNB.com
WEST TEXAS NATIONAL BANK
88-467/1123

Angeles Ranch
P.O. Box 133
Pecos, TX 79772

11/22/2024

PAY TO THE
ORDER OF    State Farm Insurance Companies                    $ **1,098.00

One Thousand Ninety-Eight and 00/100************************************************    DOLLARS

State Farm Insurance Companies
P.O. Box 68001
Dallas, TX 75368-0001

AUTHORIZED SIGNATURE

MEMO    2024- Annual Insurance Renewal; 6 Naco Rd; Bisbe

**Back**

I2D8 246881 11/27/24 48

0920387781
2024-11-29

FOR DEPOSIT ONLY
State Farm Insurance Companies
JPMORGAN CHASE BANK, N.A. 699281499
NAME OF FINANCIAL INSTITUTION

## Image Report


**West Texas National Bank**

| | |
|---|---|
| **ABA Number** | |
| **Account Number** | |
| **Serial Number** | 3991 |
| **Amount** | $5,243.54 |
| **Paid Date** | 11/01/2024 |

**Front**

HOLD TO LIGHT TO VIEW TRUE WATERMARK IN PAPER · HEAT SENSITIVE RED LOCK DISAPPEARS WHEN HEATED

3991

**Angeles Ranch**
P.O. Box 133
Pecos, TX 79772

WTNB™
877-493-7862 | WTNB.com
WEST TEXAS NATIONAL BANK
88-467/1123

10/1/2024

PAY TO THE
ORDER OF     Cochise County Treasurer                                    $  **5,243.54

Five Thousand Two Hundred Forty-Three and 54/100************************************     DOLLARS

Cochise County Treasurer
P.O. Box 1778
Bisbee, AZ 85603-2778

MEMO   103-62-459A2   (24)
       103-62-273A8

AUTHORIZED SIGNATURE

**Back**

CHECK HERE FOR MOBILE OR REMOTE DEPOSIT ONLY

NAME OF FINANCIAL INSTITUTION
DATE

0920959737
2024-11-01

For Deposit Only
Wells Fargo Bank
Cochise County Treasurer
>48773529714<



# Cochise County Treasurer
## Tax Receipt

Paid By:  LINDSAY JEFF

         PO BOX 133

         PECOS , TX 79772

Batch:               7003496
Payment Date:     10/31/2024
Interest Date:      10/31/2024
DUPLICATE Printed: 1/17/2025
As Of Date:       1/17/2025

| Parcel Number | Description | | Amount Paid | Rate | Certificate |
|---|---|---|---|---|---|
| 10362273A8 | 2024 | TAX | $4,938.78 | | |
| | | **Total Paid:** | **$4,938.78** | **2024 Due:** | **$0.00** |
| | SURFACE TO DEPTH OF 40' OF COPPER JACK LODE MINING CLAIM MS#1047 WARREN MNG DIST DESC BY M&B BEG N89DEG 30MIN 58SEC W425.06' FROM COR #2 N35DEG 23MIN 45SEC E60.10' N46DEG 21MIN 16SEC E12.57' THN S41DEG 30MIN 45SEC E10.78' S43DEG 22MIN 14SEC E35.58' THN ALONG CURVE TO RIGHT 9.94' THN S46DEG 30MIN W69.94' N43DEG 50MIN W44.57' TO POB AKA REP OF SURVEY BK6 PG10 PCL I & III .084AC | | | | |

| Totals | | Total Paid: | $4,938.78 | | |
|---|---|---|---|---|---|
| | | Receipt Balance: | $0.00 | | |

Date: 1/17/2025 8:58:42 PM; UTC



# Cochise County Treasurer
## Tax Receipt

Paid By: LINDSAY JEFF

PO BOX 133

PECOS , TX 79772

| | |
|---|---|
| Batch: | 7003496 |
| Payment Date: | 10/31/2024 |
| Interest Date: | 10/31/2024 |
| DUPLICATE Printed: | 1/17/2025 |
| As Of Date: | 1/17/2025 |

| Parcel Number | Description | | Amount Paid | Rate | Certificate |
|---|---|---|---|---|---|
| 10362459A2 | 2024 | TAX | $304.76 | | |
| | | **Total Paid:** | **$304.76** | **2024 Due:** | **$0.00** |
| | REC OF SUB PLAT BK13 PG95 CHIHUAHUA HILL ADDN LOT 10 EXCPT THE FLLWING DESC PCL COMM AT THE NE COR LOT 10 THN N73DEG 06MIN 13SEC W18.40' TO THE POB S27DEG 43MIN 45SEC W6.66' N64DEG 05MIN 44SEC W23.57' N27DEG 43MIN 45SEC E2.90' S73DEG 06MIN 13SEC E23.99' TO THE POB SEC 9-23-24 .079AC | | | | |

| Totals | | Total Paid: | $304.76 | | |
|---|---|---|---|---|---|
| | | Receipt Balance: | $0.00 | | |

Date: 1/17/2025 9:00:07 PM; UTC

*Exhibit "D"*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Beau Reichert
Le Naco Road
Bisbee, AZ 85603

9590 9402 6974 1225 7734 78

2. Article Number *(Transfer from service label)*

1 0710 5270 2452 3423 22

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☒ Agent  ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

Cameron Strange   4/29/25

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt



**USPS TRACKING #**

9590 9402 6974 1225 7734 78

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

BURRIS & MACOMBER, PLLC
2478 E. RIVER ROAD
TUCSON, AZ 85718

Lindsay

*Exhibit "E"*

# BURRIS & MACOMBER, PLLC

## ATTORNEYS AT LAW

Jeremy T. Shorbe, Esq.
Attorney at Law

2478 E. River Road
Tucson, Arizona 85718

Telephone: (520) 775-2000
Facsimile: (520) 775-2001
Email: jeremy@burrismacomber.com

May 13, 2025

***SENT VIA FIRST CLASS AND CERTIFIED MAIL***

Beau Reichert
6 Naco Road
Bisbee, AZ 85603

*Re:*     ***6 Naco Rd., Bisbee, Arizona 85603***
          ***APN: 103-62-273A & 103-62-459A***

## NOTICE OF TERMINATION OF LEASE AND NOTICE TO VACATE

Dear Mr. Reichert:

Pursuant to my letter of April 23, 2025, and your failure to timely comply therewith you are hereby notified that your lease of the real property located at 6 Naco Road, in Bisbee, Arizona (the "Property") is immediately terminated, and all persons residing at the Property are instructed to immediately vacate the Property. An employee of this law firm will perform an inspection of the Property at approximately 11:00 o'clock a.m. on Thursday, May 22, 2025. You may either provide access to the Property and relinquish all keys at that time, or otherwise ship or hand-deliver all keys for the Property to this law firm no later than 12:00 o'clock pm on Wednesday, May 21st.

You must leave the Property in as good or better a condition as you received the Property at the start of the tenancy. Be advised that should you (and all other residents) (i) fail to vacate the Property before May 22nd, (ii) fail to relinquish all keys to the Property, (iii) and/or fail to leave the Property in good condition, my client will pursue further legal action against you, including but not limited to recovery of his legal fees and costs incurred in retaking possession and protecting his rights to the Property.

Your immediate attention to this matter is appreciated in advance. Please reach out to this law firm with any questions or further matters requiring attention to effectuate the complete surrender of the Property.

Sincerely,

**BURRIS & MACOMBER, PLLC**

Jeremy T. Shorbe, Esq.

JTS/jlg
Encl.
CC: Client

**BURRIS & MacOMBER, PLLC**

· ATTORNEYS AT LAW ·

2478 E. River Road • Tucson, Arizona 85718




US POSTAGE
$009.64⁰
First-Class - IMI
ZIP 85718
05/13/2025
036B 0011812785



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**®

9589 0710 5270 2452 3424 69

Beau Reichert
6 Naco Road
Bisbee, AZ 85603

---

**BURRIS & MacOMBER, PLLC**

ATTORNEYS AT LAW

2478 E. River Road • Tucson, Arizona 85718




US POSTAGE
$000.69⁰
First-Class - IMI
ZIP 85718
05/13/2025
036B 0011812785

Beau Reichert
6 Naco Road
Bisbee, AZ 85603

*Exhibit "F"*

**Jeremy Shorbe**

---

| | |
|---|---|
| **From:** | rob@burrismacomber.com |
| **Sent:** | Wednesday, May 21, 2025 3:12 PM |
| **To:** | Mark Tucker; Jeremy Shorbe |
| **Cc:** | jolynn@burrismacomber.com |
| **Subject:** | RE: Jeff Lindsey v Beau Reichert - 6 Naco Rd Bisbee Arizona 85603 |

Mark:

As described in previous communications, the lease has been terminated and my client will not agree to reinstate it.

Since your clients refuse to vacate, we will be filing an eviction action.  Please confirm if you will accept service on behalf of your clients.

Also, considering your clients' refusal to vacate, we will forgo the inspection tomorrow and will complete it at a later date.

Thanks.

D. Rob Burris | Attorney

**BURRIS & MACOMBER, PLLC**
ATTORNEYS AT LAW

2478 E. River Road |  Tucson, Arizona 85718
T: (520) 775 2000   |  F: (520) 775 2001

 www.burrismacomber.com

 rob@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

*NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.*

---

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Wednesday, May 21, 2025 3:05 PM
**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>

**Cc:** jolynn@burrismacomber.com; rob@burrismacomber.com
**Subject:** Re: Jeff Lindsey v Beau Reichert - 6 Naco Rd Bisbee Arizona 85603

Jeremy

This is a residential lease. Not a commercial lease.

Your firm representative is welcome to inspect the property if that is what also is intended to take place. My clients will be available for that.

However, my clients will not be vacating the property. They will not be surrendering the keys.

Your client's claim is for non-payment. Confirm your client will accept payment.

Thank you.


**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com


This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.


On Wed, May 21, 2025 at 1:51 PM Jeremy Shorbe <Jeremy@burrismacomber.com> wrote:

> Hello Mr. Tucker,
>
>
> As detailed in our prior correspondence, Mr. Rob Burris of Burris & MaComber, P.L.L.C. will be at the property for inspection tomorrow.

Our client is still demanding that Beau and Cameron turn the keys over at that time amicably.

We're looking into your claims, but the bottom line is: When we duly gave the 10-day notice to cure (regardless of what preceded it) that was the time within which the law required Mr. Reichert and Ms. Stangel to comply: They did not cure the fully noticed default – even inasmuch as they admitted the need to come into compliance.

Mr. Lindsay is only interested in an amicable delivery of possession of the Property back to this Firm on his behalf.

Please respond to this message as soon as possible if your client will be delivering the keys to Mr. Burris tomorrow. Otherwise, he will conduct the inspection as announced weeks ago and in our most recent correspondence.

Thank You,

Jeremy Shorbe | Associate Attorney



2478 E. River Road |  Tucson, Arizona 85718
T: (520) 775 2000   |  F: (520) 775 2001

  www.burrismacomber.com

  jeremy@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Monday, May 19, 2025 2:35 PM
**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Subject:** RE: Jeff Lindsey v Beau Reichert - 6 Naco Rd Bisbee Arizona 85603

Mr. Shorbe:

Thank you for your response.

My clients would like nothing more than to remedy the situation, which has been _manufactured_ by your client.

As an attorney, I am sure you appreciate that the remedies you are seeking on behalf of your client are pursuant to a special action set forth in the Arizona Residential Landlord and Tenant Act, which requires strict compliance and good faith as a condition precedent.

The purpose of my letter delivered to you on May 16, 2025, was to inform you

1. My clients would like to remedy this situation.
2. Inform you that your prior notices failed to comply with the law.
3. Your client manufactured this situation, it what is at first blush, bad faith.

Rather than be litigious, I am confident a resolution can be reached. However, if your client is fixed on terminating the lease regardless of the facts, all appropriate defenses and claims shall follow.

If your client is willing to solve a problem, rather than create problems, please contact me.

**Mark A. Tucker | Attorney**

480-633-9466
mark@tuckerlawaz.com

www.tuckerlawaz.com

*Tucker Law Group, P.C.*

**NEW ADDRESS**

**40 N. Center, Suite 104**

**Mesa AZ 85201**

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachments is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

**From:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Sent:** Monday, May 19, 2025 11:02 AM
**To:** Mark Tucker <mark@tuckerlawaz.com>
**Cc:** jolynn@burrismacomber.com
**Subject:** RE: Jeff Lindsey v Beau Reichert - 6 Naco Rd Bisbee Arizona 85603

Hello Mr. Tucker,

We received your letter of May 16, 2024. Be advised that <u>**a representative from our law firm will still be inspecting the Property on May 22, 2025**</u>.

I will speak with my client on some of the further points you raised in your letter for clarification. But at first blush: your argument seems to be that we gave your client ***too much time*** to cure—this is absurd, especially because your client failed to cure within the ***extended*** time as is and now says that he understands what he must do and will cure outside of the time already given.

First, A.R.S. s 33-1310(12) (Definitions) defines "rent" as "payments to be ***made to the landlord*** in full consideration for the rented premises." The Lease obligations were not to be paid directly to Mr. Lindsay (as landlord) and the effect of our compliance with the law here was to give your client ***double*** the amount of time in which to cure. Do you really propose standing in front of the judge and arguing that our opting - in an abundance of caution - to give your client ***more*** time in which to cure was somehow prejudicial to your client?

Second, the notices are valid, and your letter proves that Beau sufficiently understood that he had to pay the $6,341.34 and produce proof of insurance naming Mr. Lindsay as an additional insured within ten (10) days. You letter establishes that Mr. Reichert had actual notice of the requirements to cure. Mr. Reichert failed to do ***either*** of the actions you now admit need to be done ("[O]ur clients are prepared to: 1. Obtain a new insurance policy compliant with the Lease ... [and] 2. Reimburse the 2024 property taxes..."). Our client already notified your clients of the need to obtain compliant insurance within the ten (10) day period ***and*** provided copies of the tax receipts with canceled checks as proof of Mr. Lindsay's payment. Your clients failed to cure ***both*** within the statutory ten (10) days given and are, therefore, in violation of the Lease, the statute, and need to vacate the premises as the Lease has been terminated. Even if a court astonishingly agreed that there was some problem with the insurance situation, the failure to timely reimburse the property taxes within the extended ten (10) day cure period – ***alone*** – is sufficient to terminate the Lease: as we are doing.

Your clients cannot (1) agree that they needed to reimburse the property taxes, (2) agree that they needed to get another proof of compliant insurance, (3) agree that they were made fully aware of these obligations and applicable time-frame (offering ten, instead of five, days to cure) by the April 23, 2025 Demand Letter, but (4) argue that they were not obligated to satisfy these obligations within the extended ten (10) day cure period outlined in the Demand Letter & the statute. In short, your clients were on actual notice of the cure obligations and extended time-period within which they needed to comply, they failed to timely comply, and their offer to ***un***timely comply in the future is hereby rejected. (*see 4/29/2025 Demand Letter Return Receipt attached*).

If your clients force Mr. Lindsay to continue at court in a forcible detainer action, he will seek reimbursement for all attorney's fees and costs. This will very likely mean that your clients will have to pay your fees/costs (it takes about 3 hours and 36 **_ONE WAY_** for someone to drive from where you're at in Mesa, AZ to the Justice Court in Bisbee. I don't know what your hourly rate is, but even if you're working pro-bono, it's going to take me 1 hour and 39 minutes travel each way), they'll likely have to pay Mr. Lindsay's fees/costs, **_and_** still be removed from the Property. It is in everyone's interest to facilitate a smooth and least-cost-inducing solution here.

We reiterate the factual assertions, demands made, and plans to proceed as outlined in the May 13, 2025, Notice of Termination.

Please discuss this matter with your client as soon as conveniently possible and let us know how they wish to proceed as soon as possible.

Thank You,

Jeremy Shorbe | Associate Attorney

2478 E. River Road |  Tucson, Arizona 85718
T: (520) 775 2000   |  F: (520) 775 2001

 www.burrismacomber.com

 jeremy@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Friday, May 16, 2025 2:45 PM
**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Subject:** Jeff Lindsey v Beau Reichert - 6 Naco Rd Bisbee Arizona 85603

Dear Mr. Shorbe:

This firm represents Beau Reichert and Cameron Stangel, tenants of the property at 6 Naco Road, Bisbee, Arizona 85603 (the "Property"), owned by your client, Jeff Lindsay. We write in response to your letters dated April 23, 2025, and May 13, 2025. Please review and respond to the attached letter in writing to our office by or before May 31, 2025.

Thank you.



**Mark A. Tucker | Attorney**

480-633-9466
mark@tuckerlawaz.com

www.tuckerlawaz.com

*Tucker Law Group, P.C.*

**NEW ADDRESS**

**40 N. Center, Suite 104**

**Mesa AZ 85201**

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachments is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

*Exhibit "G"*

Mark A. Tucker
admitted in AZ
J. McKay Tucker
admitted in AZ



Mark A. Tucker, Esq.
mark@tuckerlawaz.com
480-633-9466
Arizona Office

September 3, 2025

***Sent Via Certified Mail First-Class Mail and E-mail To:***

9589 0710 5270 2377 7236 26

Burris & Macomber, PLLC
Attn: Jeremy Shorbe
2478 E. River Road
Tucson, AZ 85718

Re:    Jeff Lindsey/ Beau Reichert
       Demand for Immediate Repair of HVAC – 6 Naco Road, Bisbee, AZ 85603

Dear Mr. Shorbe:

As you know, I represent Beau Reichert, the residential tenant of your client, Jeff Lindsey, concerning the property at 6 Naco Road, Bisbee, Arizona 85603.

The lower HVAC unit at the premises has failed, and a reputable local HVAC company, Air Flow Systems LLC, has confirmed it is inoperable and requires replacement. The upper HVAC unit, while functional, is at the end of its lifespan. Given the property's historic nature and its unique construction into the mountainside, repairs and replacements involve complex engineering, building permits, and the rental of a crane. Experts advise replacing both units simultaneously to optimize costs, as crane rental is necessary regardless.

Attached is an estimate from Air Flow Systems LLC, dated August 18, 2025, outlining the required repairs. Replacing the lower unit alone costs $15,500, while replacing both units, as recommended, is quoted at $31,500.

Under A.R.S. § 33-1324, your client is obligated to maintain fit premises, including ensuring that essential services like heating, ventilation, and air conditioning remain in good and safe working order. The current condition of the HVAC system materially impacts the tenant's health and safety.

While our clients have had prior disputes, we expect this matter to be addressed promptly and in good faith as required by law. We hereby demand that your client immediately authorize and undertake the repair or replacement of the HVAC systems per the attached estimate, with replacement of both units being the recommended course of action. At a minimum, the lower unit must be replaced.

Failure to comply within the statutory timeframe will compel the tenant to pursue all remedies under the Arizona Residential Landlord and Tenant Act, including:

- Procuring reasonable substitute services and deducting costs from rent;
- Recovering damages for diminution in fair rental value;
- Seeking injunctive relief; and
- Recovering attorney's fees and costs.

Please confirm in writing within five (5) days of this letter whether your client will proceed with the

necessary repairs. Failure to act promptly will leave the tenant no choice but to enforce his rights under Arizona law.

Thank you,

Mark A. Tucker
Attorney for Beau Reichert

Enclosure: Air Flow Systems LLC Estimate (No. 2927, dated August 18, 2025)

# ESTIMATE

**AIR FLOW SYSTEMS LLC**
1525 S Rio Vista Rd.
Bisbee, AZ 85603

airfs1@aol.com
+1 (520) 366-5412
https://www.airflowsystemsllc.com/



**Bill to**
Beau Reicherd
Beau Reichert
6 Naco Road Bisbee AZ 85603

**Estimate details**
Estimate no.: 2927
Estimate date: 08/18/2025

| # | Date | Product or service | Description | Qty | Rate | Amount |
|---|------|--------------------|-------------|-----|------|--------|
| 1. | | **15 HVAC** | Remove existing equipment from premises. Install New Rheem 15.2 SEER2 split system. New 100,000 BTU 92% Efficiency natural gas furnace, new high efficiency cooling coil Horizontal installation kit Modify existing ductwork to accommodate new location, add round spiral 12" pipe to south side of room, trim back ductwork to S.W. corner of room City of Bisbee Design and review board application City permit New refrigerant pipes to rooftop location New electrical circuit to rooftop unit Service disconnect New control wiring and Thermostat New condensate drain Metal Secondary drain pan New intake and exhaust vents from furnace Crane lift equipment to rooftop 10 year compressor warranty 10 year parts warranty 5 year labor warranty | 1 | $15,500.00 | $15,500.00 |
| 2. | | **15 HVAC** | Remove existing gas package units from premises Install new Rheem 4 ton 14.3 SEER Gas package units | 2 | $8,000.00 | $16,000.00 |

Crane lift equipment
Seal duct connections
Complete system startup and
calibration

10 year compressor warranty
10 year parts warranty
5 year labor warranty

**Total**                                   **$31,500.00**

**Accepted date**                 **Accepted by**

*Exhibit "H"*

**Jeremy Shorbe**

---

| | |
|---|---|
| **From:** | Mark Tucker <mark@tuckerlawaz.com> |
| **Sent:** | Tuesday, November 4, 2025 10:10 AM |
| **To:** | Jeremy Shorbe |
| **Subject:** | Re: Lindsey v. Riechert, Bisbee Justice Court - Access Notice Request |

Jeremy,

I acknowledge your points regarding the legal framework. My primary concern is to ensure that proper notice is not only sent to my office but is also effectively communicated to my clients.

Last week, we narrowly avoided an issue by resolving the access matter an hour before the first vendor's arrival. Direct communication with my clients for these types of repair-related access requests, which they initiated, would significantly improve the process.

Please remember that your client's legal obligation was to complete the requested repairs within five days of receiving notice from the tenants. Dispatching multiple vendors over several weeks without actual repairs being completed does not satisfy this requirement.

Therefore, I request that when your clients dispatch vendors in response to a tenant repair request, direct notice of the visit be sent to my clients, with a copy to my office.

Thank you for your cooperation.

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

On Thu, Oct 30, 2025 at 12:01 PM Jeremy Shorbe <Jeremy@burrismacomber.com> wrote:

Hi Mark,

We can agree only to email notices to Cameron, Beau, and your office but Arizona law does not require 48-hour notice/certified mail once your client requests repairs as they did under A.R.S. 33-1324. (*See your 9/3/2025 Demand for Repairs*).

A.R.S. 33-1341(8) makes it your client's responsibility to notify the Landlord of repair requests under A.R.S. 33-1324, which Beau/Cameron did in the Demand for Repairs.

A.R.S. 33-1343(B) waives Beau/Cameron's formal notice rights for entry related to such requested repairs under 33-1341(8). ("[A] request for maintenance as prescribed in section 33-1341, paragraph 8, ... constitutes permission from the tenant to enter the dwelling unit pursuant to subsection D of this section for the sole purpose of acting on the service maintenance request and ***the tenant waives receipt of any separate or additional notice that may be required pursuant to subsection [33-1343(D)] of this section***.").

A.R.S. 33-1313(B) also just requires notice "reasonably calculated to inform" and includes many other non-certified methods. But, at any rate, emailing Beau/Cameron directly and copying your office is reasonably calculated to notify—especially in light of their waiver of formal notice triggered by ***their request*** for repairs.

We're trying to get the HVAC repaired in an efficient manner and formal imposition of 48-hours every time we try to help your clients, and preserve the property, is an unnecessary impediment to that goal. So, we'll be emailing all the parties involved as soon as we are aware of a potential HVAC site visit, and we will give the bid-winning contractor Beau and Cameron's phone numbers to coordinate times that work for them as well.

Jeff/Crystal did not initiate these visits for their own purposes; Cameron/beau invited repairs. No one is trying to pull anything here other than getting the headache of the HVAC repair completed. Jeff has bent over backward to give as much notice as possible and we will continue to do so through email only.


Regards,

Jeremy Shorbe | Associate Attorney



2478 E. River Road |  Tucson, Arizona 85718
T: (520) 775 2000   |  F: (520) 775 2001

  [www.burrismacomber.com](http://www.burrismacomber.com)

  [jeremy@burrismacomber.com](mailto:jeremy@burrismacomber.com)


CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

*NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.*


---

**From:** Mark Tucker <[mark@tuckerlawaz.com](mailto:mark@tuckerlawaz.com)>
**Sent:** Thursday, October 30, 2025 10:42 AM
**To:** [jolynn@burrismacomber.com](mailto:jolynn@burrismacomber.com)
**Cc:** Karyn@TuckerLawAZ.Com; Jeremy Shorbe <[Jeremy@burrismacomber.com](mailto:Jeremy@burrismacomber.com)>
**Subject:** Re: Lindsey v. Riechert, Bisbee Justice Court - Access Notice Request


Jeremy:

I appreciate your assistant Jolynn notifying me on 10/28 that HVAC inspections arranged by your client, landlord Jeff Lindsey, at the property for today, October 30, 2025 at 11 a.m. and noon.

I am just emerging from a heavy litigation calendar, and so was just able to notify our clients. Fortunately, even on short notice, our clients, Beau Reichert and Cameron Stengel, are able to be present and will provide access to the vendors (Rite Way Heating & Cooling Plumbing at 11 a.m. and Vista Pros Heating & Cooling at noon) as scheduled.

That said, to ensure full compliance with A.R.S. § 33-1343(D), which requires at least two days' notice of intent to enter the rental unit (except in emergencies), and A.R.S. § 33-1313(B), which outlines proper delivery methods such as certified mail, we kindly request that all future access notices be provided in writing and sent via certified mail to my clients Beau Reichert and Cameron Stengal at the rental property, 6 Naco Rd., Bisbee, Arizona 85603. This will hopefully not only satisfy your clients statutory duty regarding the method and delivery of notice, but also may help avoid any potential disputes and guarantee proper receipt.

Also, to help ensure compliance, please provide digital copies of any such notices to my self, my assistant, Karyn Crowley and to our clients directly. You have permission to contact my clients directly in this matter when notices and communications required by the Arizona Residential Landlord and Tenant Act are necessary.  Please use the following email addresses for my clients:

cameronstangels@gmail.com

beaureichert@gmail.com

mark@tuckerlawaz.com

karyn@tuckerlawaz.com

For your convenience, I have attached a suggested form for such notices.

If you have any questions or need further clarification, please let me know.

I have just emerged from trial

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

On Tue, Oct 28, 2025 at 10:48 AM jolynn@burrismacomber.com <JoLynn@burrismacomber.com> wrote:

Mr. Tucker,

Please advise your client's that our client has arranged the following inspections for quotes:

Rite Way Heating & Cooling Plumbing will be there on Thursday, October 30 at 11 a.m.

Vista Pros Heating & Cooling will be there on Thursday, October 30 at Noon.

Please let us know right away if your clients have a conflict with this date/times.



Jo Lynn Goldener | Paralegal



ATTORNEYS AT LAW

2478 E. River Road | Tucson, Arizona 85718
T: (520) 775 2000  |  F: (520) 775 2001

🌐  www.burrismacomber.com

📇  jolynn@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and r

*NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.*

---

**From:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Sent:** Wednesday, October 22, 2025 10:17 AM
**To:** Mark Tucker <mark@tuckerlawaz.com>
**Cc:** jolynn@burrismacomber.com; Karyn@TuckerLawAZ.Com
**Subject:** RE: Lindsey v. Riechert, Bisbee Justice Court - Access Notice Request

Mark,

This has become a repeated issue, and I don't appreciate the insinuation that we or our client are somehow *failing* to give proper notice when we are bending over backward, to do all we can, to notify you/your client and in writing days prior to Property visits.

To be clear, did you NOT include Cameron and Beau's emails because you do NOT want us to copy them on the notices we send to your office for HVAC visits? As of right now, we do not have their email addresses and so we cannot comply with your request until you send them. Until you send

your clients' email addresses, we will continue to email only you and Karyn. But if you want us to include Beau and Cameron on such notices, then please provide their email addresses.

Sincerely,

Jeremy Shorbe | Associate Attorney



2478 E. River Road |  Tucson, Arizona 85718
T: (520) 775 2000   |  F: (520) 775 2001

 www.burrismacomber.com
jeremy@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Wednesday, October 22, 2025 10:10 AM
**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Cc:** jolynn@burrismacomber.com
**Subject:** Re: Lindsey v. Riechert, Bisbee Justice Court - Access Notice Request

Jeremy

I was in Texas for the past few days and this morning I was working through my email and came across my clients email first which I received this morning, and afterwards I came upon your firms email from days before. Thank you for having already done what I asked you to dodo today

Instead of castigating me, please include my assistant Karyn Crowley on future email too.

Karyn@tuckerlawaz.com

That should improve the flow of communication

Thanks in advance for your cooperation

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

On Wed, Oct 22, 2025 at 10:03 AM Jeremy Shorbe <Jeremy@burrismacomber.com> wrote:

Hello Mark,


Please be sure to copy my paralegal Jo Lynn Goldener on communications to me and me on emails to her (Jolynn@BurrisMacOmber.Com). You sent the email below to only me. But the second email attached only went to Jo Lynn.


The first email attached is the email Jo Lynn sent to your email address on Friday that Airflow would be out to the Property today at 8am. Your out of office notice said you would be back in the office this past Monday (See attached 10/17 email to Crystal Slade with your out of office below it). We also notified our client to have the company call your clients.


This appears to be **another** failure of your office to pass our email—we sent to you at the same email address reaching you here—on to your client or otherwise notify them. Last time you found our notice (we sent days in advance) in your spam folder, and you apologized for it getting hung up at your email box. Maybe try letting your spam filter know that my email and Jo Lynn's emails are not spam (if it turns out that that is the real issue).


We're doing all that we can to give all the notice necessary and to keep your office/client apprised of HVAC related activity. In the future, ***per your instructions, we will copy your clients on our notices of Property visits for HVAC repair purposes, but we need you to provide your clients' current email addresses for these purposes*** (I believe we only have their phone numbers right now).


Regards,

Jeremy Shorbe | Associate Attorney

2478 E. River Road | Tucson, Arizona 85718
T: (520) 775 2000  | F: (520) 775 2001



www.burrismacomber.com

jeremy@burrismacomber.com



CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Wednesday, October 22, 2025 8:54 AM

**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Subject:** Lindsey v. Riechert, Bisbee Justice Court - Access Notice Request

Good morning Jeremy,

This morning, my clients informed me that Air Flow Systems arrived at the property at 8 AM to inspect the AC, without any prior notice to them.

Air Flow Systems stated that this appointment was scheduled with your client's assistant, Crystal. However, my clients were not notified of this visit.

This is the same company that provided the original quote my clients obtained in August.

**To ensure proper access and to allow my clients to secure their expensive and delicate professional equipment, please ensure that we receive prior notice for any future scheduled visits.**

Thank you.

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

---------- Forwarded message ----------
From: "jolynn@burrismacomber.com" <JoLynn@burrismacomber.com>
To: Jeremy Shorbe <Jeremy@burrismacomber.com>
Cc:
Bcc:
Date: Wed, 22 Oct 2025 16:47:57 +0000
Subject: FW: Lindsay v. Stangel: HVAC Repair Issue.

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Wednesday, October 22, 2025 8:58 AM
**To:** jolynn@burrismacomber.com
**Subject:** Re: Lindsay v. Stangel: HVAC Repair Issue.

Jeremy:

I have been out of the office since Ocdtober 15, 2025.

If access is needed, to ensure you have permission to copy my clients to ensure there is compliance with ARS Section 33-1313(b).

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

On Fri, Oct 17, 2025 at 12:03 PM jolynn@burrismacomber.com <JoLynn@burrismacomber.com> wrote:

Hello Mr. Tucker,

Air flow systems HVAC company has scheduled an inspection next Wednesday at 8:00 a.m. at the Naco property to give a quote on the unit replacement. Will you please advise your clients and, if there is a scheduling issue, notify us right away? Thank you.

## Jo Lynn Goldener | Paralegal

## BURRIS & MACOMBER, PLLC
### ATTORNEYS AT LAW

2478 E. River Road | Tucson, Arizona 85718
T: (520) 775 2000  | F: (520) 775 2001

 www.burrismacomber.com

 jolynn@burrismacomber.com

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privil

NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privil

---------- Forwarded message ----------
From: "jolynn@burrismacomber.com" <JoLynn@burrismacomber.com>
To: Jeremy Shorbe <Jeremy@burrismacomber.com>
Cc:
Bcc:
Date: Wed, 22 Oct 2025 16:48:14 +0000
Subject: FW: Out of office Re: Lindsay v. Stangel: HVAC Repair Issue.
-----Original Message-----
From: jolynn@burrismacomber.com
Sent: Friday, October 17, 2025 12:07 PM
To: 'Crystal Slade' <crystal@angelesranch.com>
Subject: FW: Out of office Re: Lindsay v. Stangel: HVAC Repair Issue.

Hi Crystal,

It looks like Mr. Tucker is out of the office for a few days. Do you want to give Air Flow Systems the contact information for the tenants so they can talk directly to make sure scheduling is good?

Beau Reichert: 415-350-2774 (Mobile)
Cameron Stangel: 415-350-2774 (Mobile)


-----Original Message-----
From: Mark Tucker <mark@tuckerlawaz.com>
Sent: Friday, October 17, 2025 12:04 PM
To: jolynn@burrismacomber.com
Subject: Out of office Re: Lindsay v. Stangel: HVAC Repair Issue.

I will be out of the office  October 15-19. I will be back on Monday October 20th . If you need immediate assistance please contact my assistant Karyn Crowley at 480-633-9466

Thank you

Mark Tucker

--


*Mark A. Tucker **| Attorney*

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

*Exhibit "I"*

# BURRIS & MACOMBER, PLLC

### ATTORNEYS AT LAW

Jeremy T. Shorbe, Esq.
Attorney at Law

2478 E. River Road
Tucson, Arizona 85718

Telephone: (520) 775-2000
Facsimile: (520) 775-2001
Email: jeremy@burrismacomber.com

November 20, 2025

*Sent via first class, certified mail, and via email to: beaureichert@gmail.com,
cameronstangels@gmail.com, mark@tuckerlawaz.com and karyn@tuckerlawaz.com*

Beau Reichert
6 Naco Road
Bisbee, AZ 85603

**Re:**     *6 Naco Rd., Bisbee, Arizona 85603
APN: 103-62-273A & 103-62-459A*

### NOTICE OF INSPECTION

Dear Mr. Reichert:

PURSUANT TO A.R.S §§33-1343, 33-1376 and 33-1313(B), the property located at 6 Naco Rd., Bisbee, Arizona 85603 (the "Property") will be entered and inspected by this firm on behalf of Landlord on the following date of your choosing, between the hours of 9:00 A.M. and 5:00 P.M., which is at least 48 hours from notice date and time:

— December 9, 2025
— December 10, 2025
— December 16, 2025, or
— December 17, 2025

Please notify this office in writing no later than ***Wednesday, December 3, 2025***, of your preferred inspection date. Failure to contact our office will result in an inspection date of our choosing. Your immediate attention to this matter is appreciated in advance.

Sincerely,

**BURRIS & MACOMBER, PLLC**

Jeremy T. Shorbe, Esq.

JTS/jlg
CC: Client

*Exhibit "J"*

**Jeremy Shorbe**

---

| | |
|---|---|
| **From:** | Jeremy Shorbe |
| **Sent:** | Friday, November 21, 2025 1:40 PM |
| **To:** | 'Mark Tucker' |
| **Cc:** | rob@burrismacomber.com; jolynn@burrismacomber.com; Karyn@TuckerLawAZ.Com |
| **Subject:** | RE: Insepction notice |

Hello Mark,

Mr. Lindsay, as the Landlord, has the right to inspect the Property upon 48-hours' notice: we're giving weeks of notice. Due to the nature of the ongoing proceedings, Mr. Lindsay's representatives (likely Crystal Slade and Rob Burris of this office) will attend in his stead so as to have the visit occur in as smooth and peaceable a manner as possible. Tenants cannot unreasonably stop Landlords in Arizona from inspecting the Landlord's Property once the landlord gives the statutory notice of an inspection; we are trying to work with your clients so as to have the inspection take place at a time that accommodates your clients as well.

While you're not entitled to object to any such duly noticed inspection:
1. Your clients have asked for thousands of dollars of work to be done;
2. We noticed an inspection back in the summer that we stated we would postpone;
3. No one on Mr. Lindsay's behalf has seen his Property or what your clients have done to it since Spring of 2024; and
4. The landlord doesn't need prior approval to ensure the state of the property so long as he complies with the notice requirements.

We're trying, in good faith, to accommodate your clients, but Mr. Lindsay's landlord and ownership rights are not waived or otherwise contingent upon your client's allegations. So, as the letter stated, please provide dates and times that will work for your client, or we will be forced to select dates and appear on the duly noticed day without your client's input or presence. This is not some subversive attempt afoot: Mr. Lindsay's representative will be in Arizona those dates and Mr. Lindsay is entitled to know of the status of the Property (especially given the amount of work your clients are asking him to pay to complete).

So, please, let's just handle this amicably as that's in the best interest of all the parties involved.

Regards,
Jeremy Shorbe | Associate Attorney

**BURRIS & MACOMBER, PLLC**
ATTORNEYS AT LAW
2478 E. River Road | Tucson, Arizona 85718
**T:** (520) 775 2000   | **F:** (520) 775 2001

 [www.burrismacomber.com](www.burrismacomber.com)

 [jeremy@burrismacomber.com](jeremy@burrismacomber.com)

CONFIDENTIALITY NOTICE:  This transmission is intended to be confidential and may be subject to attorney-client privilege.  If you receive this transmission in error, please click on reply and notify the sender.  Thank you.

*NOTE:  If you are a client, do not forward this email to anyone. Doing so may cause you to waive the attorney-client privilege.*

**From:** Mark Tucker <mark@tuckerlawaz.com>
**Sent:** Thursday, November 20, 2025 3:54 PM
**To:** Jeremy Shorbe <Jeremy@burrismacomber.com>
**Subject:** Insepction notice

Jeremy:

What is the purpose of this inspection? Does it have anything to do with the HVAC that needs to be replaced?

From the face of this notice, it appears a member of your firm intends to conduct a personal inspection of my client's home, which may be ethically inappropriate.

I called to discuss this with you, but you were "not available."

Please advise.

Thank you.


**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; [www.tuckerlawaz.com](www.tuckerlawaz.com)

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.

*Exhibit "K"*

**Jeremy Shorbe**

---

| | |
|---|---|
| **From:** | Mark Tucker <mark@tuckerlawaz.com> |
| **Sent:** | Friday, November 21, 2025 5:17 PM |
| **To:** | Jeremy Shorbe; Jeffrey Silence; trevor@silencelaw.com; burr@shieldspetitti.com |
| **Subject:** | Stangel v. Lindsey, response to request for access |
| **Attachments:** | 11212025 Response to Access Notice.pdf |

Dear Jeremy,

My clients have indicated that December 17, 2025, is the most suitable date for the inspection among those you proposed. Could you please provide a more specific time frame, as the requested inspection window of 9:00 a.m. to 5:00 p.m. is unduly broad?

To prevent any misunderstandings, I would also appreciate receiving written clarification regarding the specific purpose of the requested entry, the reason the inspection is necessary at this time, the specified scope and expected duration of the inspection, and the identities and roles of all persons who intend to enter the home.

Thank you for your attention to these matters.

Sincerely,

**Mark A. Tucker | Attorney**

*Tucker Law Group, P.C.*

40 N Center, Suite 104, Mesa AZ 85201

480-633-9466; www.tuckerlawaz.com

This email and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this email or any attachments is prohibited. If you have received this email in error, please notify us immediately by returning it to the sender and deleting this copy from your system. Thank you for your cooperation.