**Ross P. Meyer (028473)**
Ross@EnaraLaw.com
**Morgan E. Silva (039166)**
Morgan@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
Filings@EnaraLaw.com
*Attorneys for Defendant Jeffery Lindsay*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Stangel,<br><br>              Plaintiff,<br><br>v.<br><br>Jeffery Lindsay,<br><br>              Defendant. | Case No.  CV-25-471-JCH<br><br>**SUPPLEMENTAL MOTION TO DISMISS**<br><br>(Assigned to the Hon.<br>John C. Hinderaker) |

1

Defendant Jeffery Lindsay ("Mr. Lindsay"), by and through undersigned counsel, hereby files his supplemental briefing to his Motion to Dismiss (Doc. 8). This Supplement is supported by the following Memorandum of Points and Authorities, and the entire record before the court.

**I.    Introduction**

Mr. Lindsay submits this Supplemental Brief to address Plaintiff's Second Amended Complaint (Doc. 19) ("SAC") arguing: (1) the absence of personal jurisdiction over the newly pleaded retaliation claims (Counts 8 and 9); (2) the continued inapplicability of Arizona law to Plaintiff's claims; (3) the landlord's statutory right to inspect the Property that Plaintiff improperly characterizes as "retaliation," (4) conclusory pleadings that defeat multiple of Plaintiff's claims; and (5) the fatal deficiencies in Plaintiff's federal sex-trafficking claim under 18. U.S.C. § 1591.

**II.    The Court Lacks Personal Jurisdiction Over the Retaliation Claims**

In Plaintiff's SAC, she adds two new claims under A.R.S. § 23-264.B claiming retaliation following her minimum wage (Count 2) and sick time claims (Count 3). Plaintiff's retaliation claims rest on two alleged acts: (1) a December 17, 2025 property inspection (the "Property Inspection"); and (2) Mr. Linday's continued prosecution of a wholly separate eviction appeal in Cochise county (the "Eviction Action"). (Doc. 19, at ¶¶ 246-247 and Count Nine 23, ¶¶ 2-3). Neither action provides a basis for this Court to exercise personal jurisdiction over Mr. Lindsay.

**a.  The Property Inspection Provides no Jurisdictional Hook**

In order for a court to exercise personal jurisdiction over a nonresident defendant, the defendant's suit-related conduct must (1) arise out of contacts he himself created with the forum state; and (2) be "contacts with the forum State itself, not the defendant's contacts with persons who reside there." *See Walden v. Fiore*, 134 S.Ct. 1115, 1122, 571 U.S. 277,

284-85, 188 L.Ed.2d 12, 20 (2014); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017). A landlord's inspection of Arizona real property cannot convert an otherwise Texas-centered employment dispute into Arizona-targeted retaliatory conduct aimed at the Plaintiff. Mr. Lindsay was authorized as a matter of law to conduct the Property Inspection under A.R.S. § 33-1343(B), which allows a landlord the right to enter their leased property within 48 hours' notice. Further, the Property Inspection was after the lessee requested maintenance on the Property. Based on Ninth Circuit precedent, the mere fact that Plaintiff resides at the inspected property does not make Mr. Lindsay's conduct expressly aimed at Arizona for purposes of the disputed employment claims. *Morrill*, 873 F.3d at 1146 ("[T]he forum state was only implicated by the happenstance of Plaintiffs' residence.").

### b.  Mr. Lindsay's Eviction Appeal Does Not Provide Jurisdiction

Plaintiff acknowledges that the eviction action involves only Beau Reichert ("Mr. Reichert"), not Plaintiff, and is pending in the Cochise County Superior Court. (Doc. 19, at ¶¶ 148-154). The prosecution of a separately pending state-court action against a different party cannot constitute the "challenged conduct" for purposes of establishing personal jurisdiction over Lindsay in this federal proceeding. Any retaliatory intent attributed to the eviction appeal would be "aimed at" state-court litigation in Cochise County, not at this federal forum and not at Plaintiff's assertion of rights in this case. Moreover, the claims arising from Mr. Lindsay's alleged employment-law violations still occurred exclusively in Texas, other states, or in foreign countries, and adding retaliation claims does not cure that fundamental defect. (Doc. 8, at §§ III(a)(3)-(4)).

### c.  This Court Does Not Have Personal Jurisdiction

A single real-estate purchase is insufficient to establish the "substantial" or "continuous and systematic" contacts required for general jurisdiction. *See Shaffer v.*

3

*Heitner*, 433 U.S. 186, 207-08, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683, 700 (1977); *see also Burnham v. Superior Court of Cal.*, 495 U.S. 604, 620, 110 S.Ct. 2105, 2115, 109 L.Ed.2d 631, 645 (1990) ("Shaffer, like International Shoe, involved jurisdiction over an absent defendant, and it stands for nothing more than the proposition that when the 'minimum contact' that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation."); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (explaining the fairly high standard courts have imposed to find "substantial" contacts). The litigation-relatedness requirement is not met here because the subject property bears no direct connection to the underlying dispute, as it was merely designated as the form of compensation Plaintiff would have received had services been fully rendered. That contingency never materialized. Plaintiff did not complete the services for which the property was to serve as payment, and therefore never acquired any legally cognizable interest in the property, possessory or otherwise. The Plaintiff has also failed to establish that Mr. Lindsay purposefully availed himself of the laws of Arizona. *Walden*, 571 U.S. at 278.

As detailed in the SAC, Plaintiff was a resident of Texas when she negotiated and executed the Agreement in Texas and did not move to Arizona until June 4, 2024. (Doc. 13, at 2:23-26); (Doc. 19, at ¶¶ 23 and 32); (Doc. 19-1). Ms. Stangel even continually holds herself out to the Texas Secretary of State as being a current resident of Texas by representing that she is an individual acting as a registered agent for the Reichert Foundation of Photographic Art, Inc. *See* Reichert Foundation of Photographic Art, Inc. (Apr. 3, 2026), attached hereto as **Exhibit 1**; *see also* TX Business Ord. Code § 5.201 (requiring individuals serving as registered agents to be "a resident of this state [Texas]"). Importantly, the nexus of Plaintiff's claims surrounding Mr. Lindsay's alleged bad conduct occurred everywhere other than Arizona. (Doc. 19, at ¶¶ 58-130); *Walden*, 571 U.S. at 278

("[N]one of petitioner's challenged conduct had anything to do with [the forum state of] Nevada itself."). Furthermore, Plaintiff's newly added retaliation claims were not acts aimed at Plaintiff because the Agreement did not give Plaintiff any possessory or equitable ownership rights to the Property. (Doc. 19-1). Instead, Mr. Reichert was the only party with possessory rights of the Property under the Lease.

### III.    Arizona Law is Inapplicable to Plaintiff's Claims

The SAC's new retaliation counts are expressly predicated on Arizona statutes, A.R.S. §§ 23-364(B) and 23-374(B). However, as established in the original Motion to Dismiss (Doc. 8), Texas law governs this contract and any torts arising from it. (Doc. 8, at § III(c)). Where a contract has no choice of law provision, "the law of the jurisdiction with the most significant contacts to the transaction, such as where the contract was negotiated and where it was performed, applies." Restatement (Second) of Conflict of Laws § 188. The Restatement (Second) of Conflict of Laws § 188 factors overwhelmingly point to Texas: the Texas Contract was negotiated in Texas, signed by Texas residents in their capacity as Texans, performed in Texas and internationally (never in Arizona), paid for from Texas, and directed at a Texas employer. (Doc. 8, at §§ III(a)(3), III(c)).

Plaintiff's minimum-wage and sick-time claims under Arizona law fail under this choice of law analysis because the employment relationship, if one existed, arose from a Texas contract for services owed to a Texas employer. Texas does not impose minimum-wage obligations equivalent to those Plaintiff asserts, and no Arizona employment statute can be grafted onto a Texas employment relationship simply because the property serving as compensation happens to be in Arizona. *Cardon v. Cotton Lane Holdings Inc.,* 173 Ariz. 203, 207 (1992) (applying "most significant relationship" test). Since Arizona law does not govern this dispute, the Arizona-specific retaliation claims (Counts 8 and 9) and all other

5

Arizona-statute claims (Counts 2, 3, and 4) fail to state a claim upon which relief can be granted and must be dismissed under FRCP 12(b)(6).

### IV.    The Property Inspection was Lawful as a Matter of Law

#### a.  Arizona Law Expressly Authorizes Landlord Inspection

Arizona's Residential Landlord and Tenant Act grants a landlord the right to enter rental property with two days' notice to "inspect the premises." A.R.S. § 33-1343(B); *see also Lundvall v. Hughes*, 49 Ariz. 264, 267-68 (Ariz. 1937) (finding that duress claims cannot be brought where the action was lawful). The SAC's own allegations confirm that Lindsay's counsel provided written notice of the proposed inspection dates, the parties coordinated and confirmed a date, and two representatives entered and conducted a walkthrough. (Doc. 19, at ¶¶ 161-177). A landlord who exercises a right expressly granted by statute does not thereby commit an unlawful act, much less an act of employment retaliation. The SAC acknowledges that Lindsay's counsel cited, among the reasons for inspection, the fact that "[y]our clients have asked for thousands of dollars of work to be done." (Doc. 8, at ¶ 164). A landlord who receives maintenance requests has an independent obligation to inspect the premises to assess and address those requests. *See* A.R.S. § 33-1324 ("If the tenant notifies the landlord of a service request or a request for maintenance . . . the notice from the tenant constitutes permission from the tenant for the landlord to enter the dwelling unit . . . and the tenant waives receipt of any separate or additional access notice that may be required"). Plaintiff cannot simultaneously demand maintenance and then characterize the resulting inspection as unlawful retaliation. The inspection is affirmatively justified by Plaintiff's own conduct and cannot sustain a retaliation theory.

#### b.  Plaintiff's Retaliation Allegations are Conclusory

The SAC's retaliation allegations amount to: (1) Lindsay held an inspection, and (2) Lindsay is pursuing an eviction appeal. (Doc. 8, at ¶¶ 246-250 and 23, ¶¶ 2-6). The SAC contains no factual allegations showing that Lindsay's subjective motivation in conducting the inspection was to punish Plaintiff for filing this lawsuit, as opposed to the objectively obvious alternative explanations: the lease authorized it, tenants had requested repairs, and no one from Mr. Lindsay's side had inspected the property since 2024. (Doc. 19, at ¶ 164). For both of her claims, the Plaintiff claims the Property Inspection was arranged to "harass, intimidate, and drain the physical and mental resources of Stangel," however, does not allege what conduct performed at the Property Inspection constituted such harassment, intimidation, and drainage of physical and mental resources. Under *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), courts "are not bound to accept as true a legal conclusion couched as a factual allegation." The bare assertion that Lindsay acted with retaliatory motive is a legal conclusion, not a fact, and does not survive dismissal. Therefore, Plaintiff respectfully requests this Court dismiss Counts 8 and 9 of the SAC.

### V.    Multiple Claims Rest on Conclusory Allegations

Under prior precedents, a complaint must allege "enough facts to state a claim to relief that is plausible on its face," and "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Iqbal,* 556 U.S. at 678-679. Several counts of the SAC fail this standard.

#### a.   Breach of Implied Covenant of Good Faith and Fair Dealing

The SAC alleges Lindsay breached the implied covenant by "purporting to arbitrarily change the nature of Stangel's expenditures" and by "creating an intolerable work environment." (Doc. 19, at ¶¶ 186-188). These are legal conclusions, not facts. The SAC does not identify which specific expenditures were arbitrarily reclassified, the

7

amounts at issue, the timeline of reclassification, or any objective standard against which Mr. Lindsay's conduct can be measured as 'arbitrary.' Similarly, "intolerable work environment" is a legal conclusion. The SAC does not plead facts connecting Mr. Lindsay's conduct to a specific breach of a contractual term or to the deprivation of Plaintiff's "benefit of the bargain" with the particularity required by *Iqbal.* Therefore, Plaintiff respectfully requests this Court dismiss Count 1 of the SAC.

### b. Failure to Pay Arizona Sick Time

Count 3 alleges that Lindsay "did not track Stangel's accrued sick time" and "did not provide Stangel any notice of her accrued or used sick time." (Doc. ¶¶ 206-207). The SAC, however, does not allege that Plaintiff ever requested sick time, ever was denied sick time, or ever suffered any actual loss attributable to the alleged tracking failure. *See* A.R.S. § 23-364(B). Arizona's earned paid sick time statute requires that an employee be harmed by the employer's failure. Absent an allegation that Plaintiff sought or needed to use sick time, or that Lindsay's alleged non-compliance resulted in any cognizable injury, Count 3 pleads only a technical statutory violation separate from any actual damages, which is insufficient to state a claim. Therefore, Plaintiff respectfully requests this Court dismiss Count 3 of the SAC.

### c. Intentional Infliction of Emotional Distress

Count 6 recites the elements of intentional infliction of emotional distress ("IIED") in conclusory fashion: "Lindsay's conduct was extreme and outrageous," it "caused Stangel to suffer severe emotional distress," and "Lindsay intended through his behavior to cause severe emotional distress." (Doc. 19, at ¶¶ 234-236). The IIED standard requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43 (1987) (citing Restatement (Second) or Torts § 46 cmt. b (1965)); *see also Madrueno v. Homecomings Fin. Co., LLC*, 2010 U.S.

Dist. LEXIS 39758, at *10 (D. Ariz. Apr. 20, 2010) (dismissing an IIED claim where the complaint failed to explain what intentional acts each Defendant committed). Importantly, the SAC contains no allegations as to Lindsay's *specific conduct* or the *severity* of the emotional distress suffered, no treatment sought, no diagnosis, no duration, no impact on daily functioning. Alleging "severe emotional distress" without supporting facts is precisely the kind of conclusory pleading *Iqbal* prohibits. Therefore, Plaintiff respectfully requests this Court dismiss Count 6 of the SAC.

### d.  Unjust enrichment

Count 7 is pled as an alternative to the contract claims. (Doc. 19, at ¶ 240). To the extent the Court finds a valid contract governs the parties' relationship, as the SAC primarily asserts, the unjust enrichment claim fails as a matter of law because a party cannot recover on both a contract and on a theory of unjust enrichment. *Trustmark Ins. Co. v. Bank One, Ariz., N.A.,* 202 Ariz. 535, 541 (Ariz. App. 2002); *see also Madrueno*, 2010 U.S. Dist. LEXIS 39758, at *10 (dismissing unjust enrichment claim where the complaint failed to allege facts showing the acts each defendant committed that caused unjust enrichment). Moreover, the SAC does not allege the absence of a legal remedy, a required element of unjust enrichment. The conclusory statement that "there is no justification for the enrichment of Lindsay," is not a factual allegation. (Doc. 19, at ¶ 243). Therefore, Plaintiff respectfully requests this Court dismiss Count 7 of the SAC.

### VI.    Plaintiff has Failed to Allege a Claim under 18 U.S.C. § 1591

### a.  The Statutory Framework

Section 1591(a) of the Trafficking Victims Protection Act makes it unlawful to "recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person" knowing that "means of force, threats of force, fraud, coercion ... or any combination of such means will be used to cause the person to engage in a

9

*commercial sex act.*" 18 U.S.C. § 1591(a)(1) (emphasis added). A "commercial sex act" is defined as "any ***sex act***, on account of which ***anything of value is given to or received*** by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). Two elements are thus essential to any § 1591 claim: (1) the defendant must have caused, or attempted to cause, the victim to *perform* a commercial sex act, meaning the victim provides the sex in exchange for something of value, and (2) the defendant must have used a qualifying means, such as force, fraud, or coercion, to obtain that act. Neither element is met here.

### b. No Commercial Sex Act was Solicited, Caused, or Obtained

The statute's definition of "commercial sex act," a sex act *given to or received by any person* in exchange for value, necessarily contemplates that the victim is the *provider* of the sex act, not merely the target of unwanted sexual overtures. *United States v. Afyare*, 632 F. Appx. 272, 284-85 (6th Cir. 2016) (§ 1591 requires proof that defendant caused victim to engage in commercial sex acts, not merely that defendant committed related criminal conduct); *see also* 22 U.S.C. § 7102(4) (defining "commercial sex act" in identical terms and targeting conduct where victims are compelled to provide sexual services for money or other consideration). Where no sex act was performed or provided by the alleged victim, there is nothing for the statute to remedy. The SAC does not allege, because it cannot, that Plaintiff ever performed, agreed to perform, or was forced to perform any sex act in exchange for anything of value. The SAC's own allegations affirmatively foreclose this element: Plaintiff repeatedly rebuffed Lindsay's advances, and the complaint elsewhere acknowledges that "Lindsay repeatedly told Stangel that she would not have to repay him through 'sex'... because he was a 'gentleman.'" (Doc. 19, at ¶¶ 67-69, 79-80). No sex act occurred, was completed, or was even explicitly demanded in the transactional sense the statute contemplates.

### c. No Causal Element is Adequately Pled

10

Section 1591(a) requires that the defendant "cause" the person to engage in a commercial sex act. The SAC alleges no causal connection because the alleged commercial sex act never occurred. In *U.S. v. Bazar*, the court made clear that the government had to prove the defendant was aware of an established modus operandi of fraud that could cause his victims to engage in commercial sex acts. *Bazar*, 747 Fed. Appx. 454, 457 (9th Cir. 2018). This was met where the government showed that the defendant enticed his victims with promises of lucrative employment and told the victims they could choose whether and when to perform happy ending massages; and once they were under his control, took all the earnings and told the victims they had to perform happy ending messages, and went so far as to provide the victims with pre-printed instructions dictating answers to potential clients. *Id.* The defendant even told one of the victims that he would take the money, break or ruin her life if she left, and she was "not the first one" and was "not going to be the last one." *Id.* The SAC's theory is instead that Lindsay *attempted* to coerce Plaintiff into sex by conditioning her continued employment and the property transfer on compliance with his advances. Even where there has been no sex act, there still needs to be sufficient evidence to support a future commercial sex act. *See U.S. v. Brooks*, 610 F.3d 1186, 1197 (9th Cir. 2010) (finding that there was sufficient evidence to support the § 1591 claim because the defendants had plans for the victim *to be caused to engage* in prostitution in the future.) Plaintiff's pleading therefore fails on the causation element. Therefore, Plaintiff respectfully requests this court dismiss Count 5 of the SAC.

## VII.    Conclusion

For the foregoing reasons, Mr. Lindsay requests this Court dismiss the Second Amended Complaint based on (1) lack of personal jurisdiction under Fed. R. Civ. P. Rule 12(b)(2) or (2) failure to state a claim, for the above referenced Counts, upon which relief can be granted under Fed. R. Civ. P. Rule 12(b)(6).

11

**RESPECTFULLY SUBMITTED** this 3rd day of April 2026.

**ENARA LAW, PLLC**

By: /s/ *Ross P. Meyer*
Ross P. Meyer
Morgan E. Silva
*Attorneys for Defendant*
*Jeffery Lindsay*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April 2026, the foregoing document described herein above was sent via CM/ECF to Plaintiff and Defendant, delineated herein below:

James Burr Shields, Esq.
Shields Petitti & Zoldan, PLC
5090 N. 40th Street | Suite 207
Phoenix, AZ  85018
burr@shieldspetitti.com
*Attorneys for Plaintiff*

Jeffrey Silence, Esq. | Trevor Cook, Esq.
Silence Law Group, PLLC
20235 N. Cave Creek Road | Suite 104 | #460
Phoenix, AZ  85204
jeff@silencelaw.com | trevor@silencelaw.com
*Attorneys for Plaintiff*

D. Rob Burris, Esq. | Jeremy T. Shorbe
**Burris & Macomber, PLLC**
2478 East River Road
Tucson, AZ  85718
rob@burrismacomber.com | jeremy@burrismacomber.com
*Previous Counsel for Defendant Jeffery Lindsay*

By:*/s/ Tammy S. Spears*

13