**Silence Law Group PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com

**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com

**Shields Petitti & Zoldan, PLC**
**James Burr Shields**
Direct Dial : (602) 718-3331

Email: burr@shieldspetitti.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Stangel,<br><br>                    Plaintiff,<br><br>     v.<br><br>Jeffery Lindsay,<br><br>                    Defendant. | Case No.  4:25-cv-00471-JCH<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF ON MOTION TO DISMISS**<br><br>(Hon. John C. Hinderaker) |

The Court should deny Defendant's Motion to Dismiss ("Motion") in full.

## I.    Introduction – Standard and New Allegations

Because Lindsay's Motion to Dismiss was based on written materials rather than an evidentiary hearing, Stangel only needs to make a prima facie showing of this Court's personal jurisdiction over Lindsay through her pleadings and supporting evidence. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). All "uncontroverted allegations in the [Second Amended Complaint ("SAC")] must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in [Stangel's] favor." *See id.* (quotations omitted).

SILENCE LAW GROUP

Stangel's allegations in the First Amended Complaint—which she again alleges in the SAC—and the evidence she submitted with her Response to Lindsay's Motion to Dismiss, "by affidavit or otherwise," *see Amba Marketing Systems, Inc. v. Jobar Internat'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), alone make the required prima facie showing of this Court's personal jurisdiction over Lindsay. *See* Resp. Mot. Dismiss, Doc. 13 at 2:10–4 (summarizing factual allegations and key pieces of evidence in exhibits) and Doc. 13-1 (exhibits). But Stangel summarizes some of the new jurisdictional facts alleged in the SAC for the convenience of the Court.

Lindsay and Stangel structured the Employment Agreement[1] and Lease Agreement such that the two agreements' terms would overlap and Stangel and her partner would be responsible for the utilities, taxes, and insurance on the Property during that period. SAC, Doc. 19 at 4–5 ¶¶ 33–39. Lindsay and Stangel intended that Stangel would live in the Property during the term of the agreements and that Stangel would perform some of her employment duties from the Property. *Id.* at 5 ¶¶ 40–42. Lindsay knew when Stangel moved into the Property and knows Stangel has resided there continually since. *Id.* ¶¶ 45–47.

After Stangel asserted some of her claims against Lindsay, Lindsay engaged Arizona counsel, responded through counsel to deny Stangel's claims, and sought through the same counsel to evict Stangel and her partner Beau Reichert from the Property in retaliation against Stangel for asserting those claims. *Id.* at 12–13 ¶¶ 139–154, 16 ¶ 181. After Stangel filed her complaint in this Court and Lindsay filed his Motion to Dismiss, members of Lindsay's former law firm conducted a property inspection on Stangel and Reichert that neither served nor was intended to serve any legitimate purpose to fulfill his duties or exercise his rights as a landlord. *Id.* at 13–16 ¶¶ 155–179. Lindsay caused the performance of the Property inspection to harass and intimidate Stangel in retaliation for her filing her claims against him. *Id.* at 16 ¶ 180.

---

[1] Stangel uses the same defined terms she used in her Response to Plaintiff's Motion to Dismiss.

SILENCE LAW GROUP

**II.    The Court Has Personal Jurisdiction Over the Retaliation Claims.**

By conducting the retaliatory Property inspection and pursuing the eviction appeal, Lindsay both availed himself of the rights and privileges of conducting business in Arizona and directed his retaliatory acts at his Arizona employee in Arizona. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). And the Court's exercise of jurisdiction over both claims is reasonable for the same reasons as for its exercise of jurisdiction over all Stangel's claims, as argued in Section III.E of Stangel's Response to Plaintiff's Motion to Dismiss. *See id.*; Doc. 13 at 11:16–14.

**A.    Lindsay Availed Himself of Arizona Law to Aim the Retaliatory Inspection at Stangel in Arizona.**

Lindsay asserts he was authorized by Arizona statute, A.R.S. § 33-1343.B, to conduct the Property inspection as landlord of the Arizona Property. Supplemental Brief ("Supp."), Doc. 26 at 3:4–6. This is a purposeful availment of the privilege of conducting activities as a landlord in the forum invoking the benefits and protection of Arizona's laws. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The retaliation claim arises out of and relates to that forum-related activity. *See id.* And, since the Court's exercise of that jurisdiction is reasonable, the Court has personal jurisdiction over Lindsay for the claim.

**B.    Lindsay Availed Himself of Arizona Law to Aim the Retaliatory Eviction Appeal at Stangel in Arizona.**

Lindsay sought the eviction of both Stangel and her partner Beau Reichert from the Arizona Property. He engaged Arizona counsel and filed a complaint in Arizona Justice Court to evict Stangel and Reichert and continues to pursue their eviction from his Arizona Property through the Arizona justice system. This is another purposeful availment of the privilege of conducting activities as a landlord in the forum invoking the benefits and protection of Arizona's laws. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The retaliation claim arises out of and relates to that forum-related activity. *See id.* And, since the Court's exercise of that jurisdiction is reasonable, the Court has personal jurisdiction over Lindsay for the claim.

SILENCE LAW GROUP

SILENCE LAW GROUP

### C.    This Court Has Personal Jurisdiction.

Stangel has never argued that this Court has general personal jurisdiction over Lindsay and so does not respond to pages 3:23–4:15 of Lindsay's Supplemental Brief.

To the extent the registration record Lindsay submitted as Exhibit 1 to his Supplemental Brief, Doc. 26-1, contradicts the evidence presented by Stangel with her Response, Doc. 13-1, the Court must resolve that contradiction in Stangel's favor. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) ("[W]e resolve factual disputes in the plaintiff's favor." (Citation omitted.))

Regardless of where Lindsay's "bad conduct occurred," *see* Supp. Doc. 26 at 4:24–5:2, Lindsay did not just know Stangel would suffer harm in Arizona; he caused her to move to and reside in Arizona in his Property. Stangel's living in Lindsay's Property was not "happenstance." *Walden* and *Morrill* do not apply here in the way Lindsay argues. *See* Resp. Doc. 13 at 9:12–11:6. Furthermore, Stangel did not need a "possessory or equitable ownership right to the Property" for Lindsay to aim his retaliatory inspection and eviction action at her. He knew she lived there and knew and intended she would feel the effects of those retaliatory acts both directly and through her loved one, Reichert.

## III.    Arizona Law Applies to Stangel's Claims.

In his Supplemental Brief, Lindsay argues that Stangel's retaliation claims fail because they arise from the Employment Agreement and, "as established in the original Motion to Dismiss (Doc. 8), Texas Law governs this contract and any torts arising from it. (Doc. 8, at § III(c))." Supp. Doc. 26 at 5:8–10. Stangel disagrees and already addressed this argument in her Response. *See* Resp. Doc. 13 at 7:3–8:16. The facts recited there citing to Stangel's pleadings and evidence make a prima facie showing that Lindsay and Stangel negotiated and entered into an agreement under the laws of Arizona not just because Stangel happened to reside there, but because Lindsay purchased the Property in Arizona deliberately to induce Stangel to move there and work for him there. And Stangel did perform her planning work in Arizona while living in the Arizona property as known and intended by Lindsay.

4

SILENCE LAW GROUP

**IV.    The Property Inspection Was Retaliatory Regardless of Its Lawfulness.**

**A.    Arizona Law Forbids Retaliatory Landlord Inspection.**

An action may be both retaliatory and otherwise lawful. This common-sense fact is written into the statute out of which Stangel's retaliation claims arise. An employer can lawfully fire, suspend, demote, reduce the hours of, or take any other number of "adverse actions" against an employee. However, Arizona statute recognizes these otherwise lawful actions can be retaliatory and forbids employers from taking them against employees in retaliation for the employees' exercising certain statutory rights. *See* A.R.S. §§ 23-364.A (defining retaliation) and .B (forbidding retaliation by otherwise lawful actions).

An invasive and pointless inspection of an employee's home easily fits within the universe of otherwise-lawful "adverse actions" forbidden when taken in retaliation for the employee's exercise of statutory rights.

**B.    Sufficient Factual Allegations Support Stangel's Retaliation Claims.**

Factual allegations in the SAC sufficiently allege the inspection as retaliatory. Lindsay did not bother to inspect or even visit the Property after he purchased it, but he finally sent a "Notice of Inspection" through his then-counsel in this matter three days after filing his motion to dismiss. SAC, Doc. 19 at 13 ¶¶ 160–161 (motion and notice), 14 ¶ 164 (no previous visit). Despite repeated requests, Lindsay's counsel never gave a reason for the inspection beyond allusions to Lindsay's right to inspect as landlord and Reichert's and Stangel's requests for work to be done on the Property. SAC at 13–14 ¶¶ 161–66 (no conclusive reasoning given; note ¶ 164 "Your clients [plural] have asked").

The SAC then alleges numerous details about the inspection supporting the conclusion it was a sham, that it did not and was not intended to "help Lindsay fulfill his duties or exercise his rights as a landlord." *Id.* at 14–15 ¶¶ 167–77. Those alleged facts support a reasonable inference that "Lindsay's subjective motivation in conducting the inspection was to punish Plaintiff for filing this lawsuit," Supp. Doc. 26 at 7:2–4. They also undermine "the objectively obvious alternative explanations" centering around the tenants' (plural) requested repairs, *id.* at 7:4–6. The inspectors were employees of the firm

representing Lindsay in this litigation. SAC Doc. 19 at 14 ¶ 167–68. They did not seem to know what to do until Stangel and Reichert's own real estate lawyer suggested Reichert take them on a "guided tour." *Id.* at 15 ¶ 169. They did not engage with Reichert's detailed descriptions of issues with the Property or take any notes. *Id.* at 15 ¶¶ 171–174. One of them spent the inspection time taking photographs and video mostly unconnected to Reichert's conversation with the other. *Id.* at 15 ¶¶ 176–77.

A sham inspection in which two employees of the law firm defending Lindsay in this action took free reign of movement within Stangel's and Reichert's home and took photos and video their home and possessions for no apparent legitimate purpose, as alleged, is an "adverse action" under A.R.S. § 23-364, which also defines "retaliation" under A.R.S. § 23-374, *see* A.R.S. § 23-371 (incorporating definition).

The facts alleged about the timing, basis, and nature of the eviction action and its appeal also support the reasonable inference that it is an "adverse action" under the retaliation claim statutes. The original eviction action was based on a breach manufactured by Lindsay, and Lindsay ignored Reichert's and Stangel's attempts to cure. *See* SAC Doc. 19 at 12–3 ¶¶ 137–154. Lindsay appealed the dismissed eviction action. *Id.* at 16 ¶ 181. The factual allegations support the reasonable inference that the grounds for the eviction are baseless and only in retaliation for Stangel's bringing her claims.

**V.    Sufficient Factual Allegations Support All Claims.**

Neither Lindsay's previous nor current counsel conferred with Stangel's counsel about their Rule 12(b)(6) arguments for dismissal of the FAC or SAC before filing the Motion to Dismiss or the Supplemental Brief. Stangel addresses their arguments but requests leave to amend should the Court find any of Stangel's claims insufficiently pleaded.

**A.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Stangel alleges sufficient facts to support her claim that Lindsay acted to "impair [her] right . . . to receive the benefits which flow from" the Employment Agreement. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153–54 (1986). Lindsay directed Stangel to buy

6

SILENCE LAW GROUP

luxury items and accommodations. SAC Doc. 19 at 6 ¶¶ 52–54. Stangel submitted weekly expense reports to Lindsay's assistant. *Id.* ¶ 56. Lindsay then retroactively reclassified those same approved expenses as "unauthorized" only after Stangel rejected his sexual advances. *Id.* at 7 ¶¶ 69–72. And then Lindsay used the fabricated "debt" to coerce Stangel. *Id.* at 7–8 ¶¶ 76–81. He threatened her with lawsuits and criminal charges if she would not have sex with him. *Id.* He made embarrassing sexual comments about Stangel in front of others on a work trip. *Id.* at 7 ¶ 64. Lindsay made constant unwelcome verbal and physical sexual advances at Stangel on a work trip. *Id.* at 7 ¶¶ 65–69. Lindsay threatened to abandon Stangel in a foreign country on a work trip. *Id.* at 8–9 ¶¶ 85–92. Lindsay made Stangel try to procure illegal drugs and prostitution for him, forced his way into Stangel's room, blocked her exit, and made demands of her. *Id.* at 9–10 ¶¶ 94–119. Stangel alleged sufficient supporting facts to support her claim that her work environment was hostile.

### B.    Failure to Pay Arizona Sick Time

Arizona statute imposes an affirmative obligation on employers to notify employees of their entitlement to earned paid sick time and to document its accrual. A.R.S. §§ 23-375.A, .C. Stangel alleges Lindsay did not track Stangel's sick time, give Stangel notice of accrued sick time, or maintain a sick time policy. SAC at 18 ¶¶ 205–207. Stangel could not request what she did not know about and what Lindsay did not offer. To the extent the Court finds this claim insufficiently pleaded, Stangel requests leave to amend to add allegations that she would have sought to use sick time had she known about it.

### C.    Intentional Infliction of Emotional Distress

The SAC contains numerous allegations of Lindsay's extreme and outrageous conduct on the Work Trip that caused Stangel severe emotional distress: for example, the allegations summarized and cited to in Section V.A above.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement showing entitlement to relief, not a pleading of evidence like Lindsay suggests is required. *See* Supp. Doc. 26 at 9:2–5. To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is

SILENCE LAW GROUP

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And Arizona follows the Restatement (Second) of Torts § 46 formulation of liability for IIED. *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987). Comment j. to that section explains that, "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." That is a standard of proof, not pleading, but the conduct described in the complaint, *see, e.g.*, Section V.A above, is sufficient alone to state a *plausible* claim that Stangel suffered severe emotional distress from Lindsay's actions.

### D.    Unjust Enrichment

Federal Rule of Civil Procedure 8(d)(2) permits Stangel to set out multiple statements of claims alternatively or hypothetically. She specifically pleaded unjust enrichment as an alternative claim in case no contract was found between the parties and therefore no legal relief available through her contract-centered claims One through Four. SAC at 21 ¶ 240. The facts alleged in the SAC adequately support the inference of no justification for Lindsay's enrichment; for example, Stangel was paid no wages for her work. Id. at 17 ¶ 197. Lindsay's alleged treatment of Stangel, as summarized and cited to in Section V.A, above, also supports the inference.

## VI.    Plaintiff Alleged a Claim Under 18 U.S.C. § 1591.

Section 1591(a) of the Trafficking Victims Protection Act (TVPA) does not require the completion of a sex act for the perpetrator to be liable.

In *United States v. Brooks*, 610 F.3d 1186 (9th Cir. 2010), the Ninth Circuit affirmed the conviction of a defendant for sex trafficking under Section 1591 for trafficking a young woman who did *not* perform a sex act. There, the court found sufficient evidence to prove the defendant transported and harbored her. *Brooks*, 610 F.3d at 1197. The court also found sufficient evidence that the defendant "acted 'knowing . . . that [the victim] . . . [would] be caused to engage in a commercial sex act,' 18 U.S.C. § 1591(a)," including evidence "suggesting that [the defendant] had plans for [the victim who did not

perform a sex act] to engage in prostitution in the future." *Id.* The Court explained that the *Todd* standard was satisfied, which it quoted:

> When an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act. What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution.

*Brooks*, 610 F.3d at 1197 n.4 (quoting text reproduced in amended opinion *Todd*, 627 F.3d at 334).

Stangel alleges facts supporting the inference that Lindsay knew his "modus operandi"—or his purpose for purchasing the Property, offering Stangel employment, inducing her to move to Arizona, and as her employer placing her in situations of physical dependence on him—was to coerce Stangel to have sex with him in exchange for things of value: good treatment on work trips, continued employment, the Property.

Stangel alleges that Lindsay recruited, enticed, harbored, transported, and solicited her, knowing that he himself would coerce her to cause her to engage in commercial sex acts with him.

## VII.    Conclusion

The Court should deny Lindsay's Motion to dismiss in full. To the extent it finds Stangel failed to state a claim, the Court should grant Stangel leave to amend the SAC to remedy those deficiencies.

RESPECTFULLY SUBMITTED this 10th day of April, 2026.

**Silence Law Group PLLC**

*/s/ Trevor Cook*
Jeffrey Silence
Trevor Cook
*Attorneys for Plaintiff*

SILENCE LAW GROUP

9